**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| **JAMES OBERGEFELL, et al.,** | : | |
| | : | |
| **Plaintiffs,** | : | **Case No. 13-CV-501** |
| | : | |
| **v.** | : | |
| | : | **Judge Timothy S. Black** |
| **DR. THEODORE E. WYMYSLO, M.D., et al** | : | |
| | : | |
| **Defendant.** | : | |

---

### DEFENDANT DR. THEODORE WYMYSLO'S MOTION TO DISMISS

---

Defendant Dr. Theodore Wymyslo, Director of the Ohio Department of Health, moves to dismiss Plaintiff Robert Grunn's claim. Pursuant to the federal Constitution and under well-established Supreme Court precedent, this Court lacks jurisdiction over Mr. Grunn's claim. Mr. Grunn lacks standing, in his own right or on behalf of any third party, to sue Dr. Wymyslo, and his claim is not ripe for review. Moreover, even if Mr. Grunn had standing and his claim were ripe—neither of which is true—the relief he seeks is limited to a (broad) declaratory judgment, and the law and alleged facts militate against this Court exercising discretion over his claim. Finally, leaving aside the jurisdictional issues, Mr. Grunn fails to allege a violation of *his* constitutional rights as is required to state a cognizable claim under 42 U.S.C. § 1983, and his claim must be dismissed pursuant to Civ. R. 12(b)(6). Therefore, Defendant Dr. Wymyslo

respectfully requests that Mr. Grunn's claim be dismissed.   A memorandum in support is attached hereto.

Respectfully submitted,

MICHAEL DeWINE
Ohio Attorney General


/s/ *Bridget E. Coontz*
BRIDGET E. COONTZ (0072919)*
        *Lead and Trial Counsel
ZACHERY P. KELLER (0086930)
Assistant Attorneys General
Constitutional Offices Section
30 East Broad Street, 16th Floor
Columbus, Ohio 43215
Tel: (614) 466-2872; Fax: (614) 728-7592
bridget.coontz@ohioattorneygeneral.gov
zachery.keller@ohioattorneygeneral.gov

*Counsel for Dr. Wymyslo*

# TABLE OF CONTENTS

MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS........................1

I.       BACKGROUND ....................................................................................................3

Plaintiffs Obergefell, Arthur, and Michener brought this action as a narrow, as applied challenge to Ohio's marriage laws, relating to the issuance of two death certificates.  The Second Amended Complaint adds the claim of Robert Grunn, an Ohio funeral director.  Mr. Grunn brings a separate claim seeking declaratory relief concerning an entire class of his unidentified future clients.

II.      LAW AND ARGUMENT ........................................................................................5

     A.      Mr. Grunn lacks standing and cannot rest on the standing of others. .....................5

Mr. Grunn must demonstrate standing and plead its components with specificity. *Coal Operators & Assocs. v. Babbitt*, 291 F.3d 912, 915-16 (6th Cir. 2002).  To establish Article III standing, a plaintiff must demonstrate an injury that is "concrete, particularized, and actual or imminent . . . ."  *Clapper v. Amnesty Int'l USA*, 133 S.Ct. 1138, 1147 (2013).  Mr. Grunn cannot rest on the standing of the other Plaintiffs, as he brings a separate claim and seeks different relief.  *See NRA of Am. v. Magaw*, 132 F.3d 272, 278 (6th Cir. 1997) ("[W]e deem it necessary to inquire about the standing of each category of plaintiffs because their positions are not identical. The injury-in-fact pled by [one group of] plaintiffs is very different from that of [other plaintiffs].").

          1.      Mr. Grunn lacks standing to sue on his own behalf....................................6

It is well settled that injury-in-fact cannot be premised on an attenuated chain of events.  See, e.g., Feiger v. Michigan Supreme Court, 553 F.3d 955, 967 (6th Cir. 2009); COAST Candidates PAC v. Ohio Elections Comm'n, No. 12-4158, 2013 U.S. App. LEXIS 18953, at *24 (6th Cir. Sept. 11, 2013).  Here, Mr. Grunn's theory of harm relies on an extensive and extremely speculative chain of events. The hypothetical scenario Mr. Grunn envisions is too attenuated to confer standing.

          2.      Mr. Grunn lacks standing to sue on behalf of third parties........................10

Mr. Grunn attempts to sue on the behalf of third parties: future clients that happen to be same-sex couples married in other jurisdictions.  Any third-party action fails because Mr. Grunn cannot establish that he has Article III standing.  See Metz v. Supreme Court of Ohio, 46 F. App'x 228, 234 (6th Cir. 2002) ("[T]o bring [an] action[] on behalf of third parties . . . [t]he litigant must have suffered an injury-

in-fact, thus giving him or her a sufficiently concrete interest in the outcome of the issue in dispute.") (internal citation omitted).  Moreover, to bring a third-party claim, Mr. Grunn must establish (1) "a close relationship with the person who possesses the right" and (2) "a hindrance to the possessor's ability to protect his own interests . . . ."  Boland v. Holder, 682 F.3d 531, 537 (6th Cir. 2012). He demonstrates neither here.

a.   Mr. Grunn does not have a close relationship with unknown future clients.................................................................12

The Supreme Court has determined that a hypothetical relationship with future clients does not meet the "close relationship" requirement of third-party standing.  Kowalski v. Tesmer, 543 U.S. 125, 130-31 (2004) (holding that attorneys did not have a close relationship with unascertained defendants based on a hypothetical attorney-client relationship).  Following this precedent, Mr. Grunn does not have a close relationship with hypothetical future clients.

b.   Mr. Grunn fails to plead any hindrance to third parties............................................................................13

Mr. Grunn also fails to establish any obstacle to third parties pursuing their own rights.  *See Boland*, 682, F.3d at 536-37 (holding that "hypothetical future defendants" faced no hindrance in their ability to raise Sixth Amendment rights). Mr. Grunn fails to plead any obstacle facing the third party.  Moreover, this lawsuit demonstrates that members of the classification in question are capable of litigating their own rights.

B.   Mr. Grunn's claim is not ripe for adjudication. ....................................................14

The ripeness analysis focuses on "two basic questions: (1) is the claim fit for judicial decision in the sense that it arises in a concrete factual context and concerns a dispute that is likely to come to pass? and (2) what is the hardship to the parties of withholding court consideration?"  *Warshak v. United States*, 532 F.3d 521, 525 (6th Cir. 2008).  In this case, Mr. Grunn's claimed harm is based on speculation regarding theoretical future events.  Accordingly, Mr. Grunn's claim lacks the requisite factual context to render the dispute ripe

C.   Even if Mr. Grunn's claim were justiciable, the Court should decline jurisdiction over his declaratory judgment action. ...................................15

The Declaratory Judgment Act allows the discretion to decline to "entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites."  Travelers Indem. Co. v. Bowling Green Prof'l Assoc., PLC, 495 F.3d 266, 273 (6th Cir. 2007).  In exercising this

discretion, the Court should consider a number of factors including potential friction between federal and state courts. Grand T.W.R. Co. v. Consolidated Rail Corp., 746 F.2d 323, 326 (6th Cir. 1994). Here, Mr. Grunn asks the Court for advice regarding a hypothetical future situation. There is no existing controversy and such advice would encroach upon matters of state law and policy.

D.     Mr. Grunn fails to state a claim based on his own rights.......................................18

Mr. Grunn indicates that he is bringing a claim on his own behalf. Nevertheless, Mr. Grunn cannot base his claim on "a generalized grievance against illegal governmental conduct . . . ." *United States v. Hayes*, 515 U.S. 737, 743 (1995). Rather, to state an equal protection claim, Mr. Grunn must allege that he was treated differently from others. *See LaFountain v. Harry*, 716 F.3d 944, 950 (6th Cir. 2013). Mr. Grunn is not a member of the classification at issue in this case: same-sex couples married in other jurisdictions. Consequently, he fails to set forth any equal protection claim based on his own rights.

E.     Mr. Grunn's declaration is procedurally improper and does not cure defects relating to his standing.......................................................20

Mr. Grunn's October 8, 2013 declaration is not a part of the pleadings in this case. Because this motion is a facial challenge to the sufficiency of the pleadings, the Court should disregard the declaration. Even considering the factual assertions within the document, Mr. Grunn still lacks standing. To meet pre-enforcement standing requirements, Mr. Grunn must establish "a credible threat of prosecution" not a "subjective apprehension . . . ." *Coast*, 2013 U.S. App. LEXIS 18953 at *23-24; *White v. United States*, 601 F.3d 545, 554 (6th Cir. 2010). The speculative chain of events that constitutes Mr. Grunn's theory of harm does not establish anything more than a subjective fear of prosecution. Moreover, Mr. Grunn's declaration fails to meet the requirements for third-party standing.

III.   CONCLUSION...................................................................................................23

CERTIFICATE OF SERVICE ......................................................................................24

## <u>MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS</u>

The addition of Robert Grunn, an Ohio funeral director, as a putative party plaintiff fundamentally alters the nature and scope of this action. This lawsuit initially presented a focused, as-applied challenge pertaining to the specific circumstances of one, and later two, same-sex couples. Mr. Grunn now requests broad declaratory relief on behalf of an entire class of unidentified, same-sex couples who may at some point in the future become his clients. But he asserts no real connection to this case and the underlying constitutional issue. His allegations of harm are purely hypothetical and speculative. The Court lacks jurisdiction over Mr. Grunn's claim and should reject his attempt to expand this action for declaratory judgment so far beyond its original scope.

Dismissal of Mr. Grunn's claim is appropriate for several reasons. First, Mr. Grunn lacks standing to sue on his own behalf. To satisfy Article III standing requirements, injury must be concrete and particularized, not hypothetical. Here, Mr. Grunn's purported theory of injury hinges on a highly speculative chain of events: at some unidentified point in the future (1) an as-yet unidentified member of a same-sex couple married in a state that recognizes same-sex marriage; (2) dies in Ohio; (3) the surviving partner engages the services of Mr. Grunn's funeral home; (4) asks Mr. Grunn to report the marital status of the deceased partner as "married" on the death certificate and to list the surviving partner as "spouse"; (5) Mr. Grunn agrees to do so; (6) the local registrar to whom the death certificate is submitted, or the Ohio Department of Health, deems the information to be "false," *and* determines that Mr. Grunn purposely made the false statement in violation of Ohio Rev. Code § 3705.29(A)(1); (7) refers the matter to a county prosecutor with jurisdiction over the offense for prosecution; (8) the county prosecutor exercises his or her discretion and decides to prosecute the case; (9) a grand jury votes to indict Mr. Grunn for the offense; and (10) Mr. Grunn is convicted by a judge or jury for the offense.

1

Plaintiffs' Second Amended Complaint alleges no facts to establish that this chain of events is imminent. Such an attenuated theory of harm does not constitute injury-in-fact under Article III. Accordingly, Mr. Grunn lacks standing on his own behalf.

Additionally, Mr. Grunn lacks standing to sue on behalf of third parties. Mr. Grunn purports to "represent[] the interests of the same-sex couples married in jurisdictions that recognize their marriages and who will be his clients and customers now and in the future." (Second Am. Compl. ¶ 49.) But a plaintiff asserting rights on behalf of third parties must still satisfy the requirements of Article III. Thus, Mr. Grunn's failure to prove his own standing to bring suit similarly dooms his claim to third-party standing. Moreover, Mr. Grunn cannot satisfy the additional prerequisites for pursing third-party claims: he cannot demonstrate a sufficiently close relationship with his as-yet unascertained future clients, and he does not even allege that such future clients would be prevented from asserting their own rights. Indeed, Plaintiffs Obergefell, Arthur, and Michener have appeared through counsel in this very lawsuit to pursue relief on their own.

Further, Mr. Grunn's claim is not ripe. Mr. Grunn's claim, on his own behalf and on behalf of third parties, rests on uncertain events involving future, as-yet unidentified parties and speculative circumstances. Adjudication of his claim now would be improper.

Even apart from the total lack of justiciability, the Court should not exercise discretionary jurisdiction under the Declaratory Judgment Act. The Court must consider a number of factors in determining whether to declare the rights of litigants. Here, Mr. Grunn does not assert any legal dispute that is appropriate for judicial resolution. Despite this fact, Mr. Grunn seeks a declaration that would encroach upon the jurisdiction of Ohio courts.

Mr. Grunn also fails to state any claim based upon his own rights. Specifically, he does not allege that he is being treated differently than any similarly situated person, or that his rights otherwise have been infringed. He therefore fails to plead the necessary facts to allege a claim under 42 U.S.C. § 1983 – the sole claim in the Second Amended Complaint.

Finally, the Court should disregard the "declaration" of Robert Grunn. Mr. Grunn's October 8, 2013 filing is an after-the-fact attempt to alter the Second Amended Complaint without leave of the Court. Because the current motion brings a facial challenge to the pleadings, Mr. Grunn's assertions are irrelevant to the Court's analysis. Regardless, Mr. Grunn's declaration does not begin to cure the various defects of the Second Amended Complaint.

Ultimately, considering all of the above circumstances, dismissal is proper.

## I.     BACKGROUND

Plaintiffs James Obergefell and John Arthur, a same-sex couple married under the laws of Maryland, filed this action on July 19, 2013. (*See generally*, Complaint, Doc. No. 1.) Those Plaintiffs brought an as-applied challenge to Ohio's marriage laws. (*Id.* at VII.) They sought emergency relief, relating to Mr. Arthur's future death certificate, on the basis that Mr. Arthur is terminally ill. (*See id.* at D.) On September 3, 2013, Plaintiffs filed the first Amended Complaint, adding the claim of Plaintiff David Michener. (*See* Am. Compl., Doc. No. 24.) Mr. Michener brought a similar as-applied challenge, concerning the death certificate of William Ives, who died on August 27, 2013. (*Id.* at ¶¶ 17, 33.) Mr. Michener submits that he was married to Mr. Ives in Delaware. (*Id.* at ¶ 15.)

The Second Amended Complaint (Doc. No. 33) now adds Mr. Grunn, a licensed funeral director in the State of Ohio. Mr. Grunn purports to sue Dr. Wymyslo both on his own behalf and on behalf of any unidentified future clients who happen to be same-sex couples married in another state. (Second Am. Compl. ¶ 1.) Mr. Grunn's alleged connection to this case is based

on his role as a funeral director.  (*See id.* at ¶¶ 41−49.)  He states that as a funeral director, he registers deaths and reports decedents' personal information to the State.  (*Id.* at ¶¶ 41, 42, 47.)

Mr. Grunn does not allege that he has provided or intends to provide false information to the State.[1]  (*See* Second Am. Compl.)  He does not allege that anyone has asked him to do so.  Similarly, he does not allege that anyone has prosecuted, or is threatening to prosecute him, for doing so.  (*See id.*)  Nor does he allege specific known circumstances under the scenario he hypothesizes.  Instead, he alleges that at some point in the indefinite future he will "continue to serve" unidentified, hypothetical same-sex couples who have been married in jurisdictions that recognize same-sex marriage.  (*Id.* at ¶ 45.)  "Based on his experience" with unspecified previous clients, Mr. Grunn asserts that he "knows that it is important" that he record his unidentified future clients' marital status as "married" or "widowed" and the surviving partner as "surviving spouse."  (*Id.* at ¶ 46).  He seeks to represent these unknown individuals who "will be" his clients.  (*Id.* at ¶ 49).

Mr. Grunn does not seek injunctive relief.  (*See* Second Am. Compl. VII.)  Rather, he asks the Court to declare that Ohio's same-sex marriage bans violate the constitutional rights of those same-sex couples married outside of Ohio who may happen to become *his* clients.  (*Id.* at VII.B.)  Further, he purports to seek for his business alone a declaration that he may "consistent with the constitution" report any such hypothetical future client as "married" or "widowed" and report the name of a same-sex partner as "surviving spouse."  (*Id.*)

---

[1] Within a later "declaration"—outside of the pleadings at issue—Mr. Grunn does attempt somewhat to clarify his future intent.  Dr. Wymyslo will address the (zero) impact of Mr. Grunn's declaration within Section II.E.

## II.    LAW AND ARGUMENT

### A.    <u>Mr. Grunn lacks standing and cannot rest on the standing of others.</u>

As a threshold matter, Mr. Grunn's claim must be dismissed in its entirety because he lacks Article III standing. Article III of the United States Constitution and the Declaratory Judgment Act, 28 U.S.C. § 2201, limit federal courts' jurisdiction to "cases" and "controversies." *See Clapper v. Amnesty Int'l USA*, 133 S.Ct. 1138, 1146 (2013). "'One element of the 'case-or-controversy' requirement' is that [the] plaintiff[] 'must establish that [he] has standing to sue.'" *Id.* (quoting, *Raines v. Byrd*, 521 U.S. 811, 818 (1997)). Standing is a "bedrock requirement" of federal jurisdiction. *Valley Forge Christian Coll. v. Ams United for Separation of Church & State, Inc*., 454 U.S. 464, 471 (1982).

To establish Article III standing, a plaintiff must show that an injury is "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Clapper*, 133 S.Ct. at 1147 (internal quotation omitted). Plaintiff "bears the burden of demonstrating standing and must plead its components with specificity." *Coal Operators & Assocs. v. Babbitt*, 291 F.3d 912, 915-16 (6th Cir. 2002). "The standing inquiry requires careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted." *NRA of Am. v. Magaw*, 132 F.3d 272, 280 (6th Cir. 1997).

Failure to establish any one of the requirements deprives a federal court of jurisdiction. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). As the Supreme Court recently recognized:

> The doctrine of standing . . . "serves to prevent the judicial process from being used to usurp the powers of the political branches." . . . In light of this "overriding and time-honored concern about keeping the Judiciary's power within its proper constitutional sphere, we must put aside the natural urge to proceed

directly to the merits of an important dispute and to 'settle' it for the sake of convenience-efficiency."

*Hollingsworth v. Perry*, 133 S. Ct. 2652, 2661 (2013) (citations omitted).

Importantly, Mr. Grunn cannot escape dismissal of his claim by arguing the standing of Plaintiffs Obergefell, Arthur, and Michener. The standing inquiry "is both plaintiff- and provision-specific. That one plaintiff has standing to assert a particular claim does not mean that all of them do." *Fednav, Ltd. v. Chester*, 547 F.3d 607, 614 (6th Cir. 2008). "Moreover, that a plaintiff has standing to challenge one of a statute's provisions does not mean the plaintiff has standing to challenge all of them; '[s]tanding is not dispensed in gross.'" *Id.* (quoting *Lewis v. Casey*, 518 U.S. 343, 358 (1996)); *see also DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 353 (2006) ("[S]tanding is not dispensed in gross.").

Mr. Grunn's substantive claim differs significantly from those raised by the other Plaintiffs in this case. He seeks his own relief separate and apart from the relief sought by Plaintiffs Obergefell, Arthur, and Michener. Although "there is no need to address the standing" of every plaintiff "whose position is identical," that rule does not apply where, as here, "the injury-in-fact pled by [one group of plaintiffs] is very different from that of [other plaintiffs]." *NRA*, 132 F.3d at 278 n.4 (internal quotations omitted). Instead, the court must separately "inquire about the standing of each category of plaintiffs . . . ." *Id.* Accordingly, Mr. Grunn's failure to satisfy Article III standing requires dismissal of his claim.

### 1.      Mr. Grunn lacks standing to sue on his own behalf.

Mr. Grunn fails to allege a theory of harm sufficient to constitute injury-in-fact for standing purposes. "The mere existence of a statute, which may or may not ever be applied to plaintiffs, is not sufficient to create a case or controversy within the meaning of Article III." *NRA*, 132 F.3d at 293 (internal quotation and citation omitted). Nor does a Plaintiff's mere

desire to engage in prohibited conduct suffice. *Id.* (citing *Lujan*, 504 U.S. at 564). Rather, the United States Supreme Court and Sixth Circuit have repeatedly reiterated that "threatened injury must be *certainly impending* to constitute injury in fact" and that "[a]llegations of *possible* future injury" are not sufficient. *Sankyo Corp. v. Nakamura Trading Corp.*, 139 F. App'x 648, 651 (6th Cir. 2005) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)).

Here, Mr. Grunn notably fails to allege that he has ever reported or been asked to report on a death certificate the marital status of a same-sex couple married in a jurisdiction recognizing same-sex marriages. He also does not allege that he will face a specific demand about a death certificate in the future. Instead, Mr. Grunn's allegations consist of the following: (1) his clients include same-sex couples, "some of . . . whom . . . have been married in jurisdictions that authorize same-sex marriage"; (2) "[i]n the future he will continue to serve same-sex couples including couples that have been married in jurisdictions that recognize same-sex marriage"; (3) as an Ohio funeral director, he is "prohibited from 'purposely mak[ing] any false statement'" in fulfilling his duty to collect and report personal and statistical information of decedents. (Second Am. Compl. ¶¶ 44, 45, 47.) Yet those allegations do not imply that he will actually receive such a request. In any event, he does not allege that anyone is, or has ever, prosecuted or threatened to prosecute him or anyone else for reporting the marital status of a same-sex couple married in a jurisdiction recognizing same-sex marriage.

Even under the broadest possible reading of these allegations, injury is conceivable only after an extremely speculative chain of events: at some unidentified point in the future (1) an as-yet unidentified member of a same-sex couple married in a state that recognizes same-sex marriage; (2) dies in Ohio; (3) the surviving partner engages Mr. Grunn's services; (4) asks Mr. Grunn to report the marital status of the deceased partner as "married" on the death certificate

7

and to list the surviving partner as "spouse"; (5) Mr. Grunn agrees to do so; (6) the local registrar to whom the death certificate is submitted, or the Ohio Department of Health, deems the information to be "false," *and* determines that Mr. Grunn purposely made the false statement in violation of Ohio Rev. Code § 3705.29(A)(1); (7) refers the matter to a county prosecutor with jurisdiction over the offense for prosecution; (8) the county prosecutor exercises his or her discretion to prosecute the case; (9) a grand jury votes to indict Mr. Grunn for committing the offense; and (10) Mr. Grunn  is convicted by a judge or a jury for the offense.

This "scenario of possible events that could lead to, someday, a possible injury" is "too remote to confer standing."  *See, e.g., All Children Matter, Inc. v. Brunner*, No. 2:08-cv-1036, 2011 U.S. Dist. LEXIS 13866, at *15 (S.D. Ohio Feb. 11, 2011).  The Supreme Court has rejected as insufficient to confer standing a theory of harm like Mr. Grunn's that "relies on a highly attenuated chain of possibilities . . . ."  *Clapper*, 133 S.Ct. at 1148.

Likewise, the Sixth Circuit has rejected such attenuated chains.  In *Feiger v. Michigan Supreme Court*, 553 F.3d 955 (6th Cir. 2009) for example, the Sixth Circuit concluded the plaintiffs lacked standing to challenge the "courtesy and civility" provisions of the Michigan Rules of Professional Conduct where their claim of future injury would require them to establish:

> (1) that they are now, or highly likely to be, speaking about a pending case; (2) that such speech will concern participants in that case and be vulgar, crude, or personally abusive, exposing them to sanctions under MRPC 3.5(c) or MRPC 6.5(a); (3) that the Michigan Supreme Court would, in its discretion, impose such sanctions; and (4) that the imposition of those sanctions would violate plaintiffs First Amendment Rights."

553 F.3d at 967.  According to the Court, this "chain of events is simply too attenuated to establish the injury in fact required to confer standing."  *Id.*

The Sixth Circuit recently reaffirmed this principle in *COAST Candidates PAC v. Ohio Elections Comm'n*, No. 12-4158, 2013 U.S. App. LEXIS 18953 (6th Cir. Sept. 11, 2013).  There,

8

the plaintiffs challenged Ohio statutes prohibiting the dissemination of false speech in connection with a ballot proposition or issue.  *Id.* at *2.  The Court found the alleged threat of future prosecution insufficient to establish standing where such prosecution would occur only if: (1) the plaintiffs made some statement in the future; (2) some group or individual filed a complaint; (3) the Ohio Elections Commission found there was probable cause to believe that the plaintiffs had violated the challenged statute; (4) the Commission made a recommendation to a county prosecutor; and (5) the prosecutor exercised his or her discretion to proceed with prosecution.  *See id.* at *23-24.  The Court called this theory "highly conjectural, resting on a string of actions the occurrence of which is merely speculative," and affirmed dismissal of the plaintiffs' claims.  *Id*. at *24 (citing *Grendell v. Ohio Supreme Court*, 252 F.3d 828, 833 (6th Cir. 2001)).

These cases dictate dismissal here.  The chain of events that would have to unfold before Mr. Grunn could suffer any harm arising from the allegations in the Second Amended Complaint is even more conjectural and attenuated.  At most, Mr. Grunn's allegations can be reduced to a claim that he wishes to engage in conduct that a criminal statute may be read to prohibit.  As the Sixth Circuit has explained, such abstract fears of future criminal sanctions do not confer Article III standing:

> [T]he individual plaintiffs herein allege merely that they would like to engage in conduct which might be prohibited by the statute, without indicating how they are currently harmed by the prohibitions other than their fear of prosecution. Plaintiffs' assertions that they "wish" or "intend" to engage in proscribed conduct is not sufficient to establish an injury in fact under Article III.  The mere "possibility of criminal sanctions applying does not in and of itself create a case or controversy."  The individual plaintiffs have failed to show the high degree of immediacy necessary for standing when fear of prosecution is the only harm alleged.

*NRA*, 132 F.3d at 293 (citations omitted).   This is particularly true where, as here, the would-be plaintiff does not even allege that he intends to violate the statute he fears will be enforced

against him, much less allege any specific circumstances relative to his position. *Glenn v. Holder*, 690 F.3d 417, 421 (6th Cir. 2012) (finding that, to establish standing based on a threat of prosecution, a plaintiff must at a minimum allege "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute," and that there "exists a credible threat of prosecution thereunder"); *see also, e.g.*, *Coast*, 2013 U.S. App. LEXIS 18953, at *24-25); *Johnson v. Turner*, 125 F.3d 324, 337 (6th Cir. 1997); *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)).

**2.      Mr. Grunn lacks standing to sue on behalf of third parties.**

"Ordinarily, one may not claim standing . . . to vindicate the constitutional rights of some third party." *Barrows v. Jackson*, 346 U.S. 249, 255 (1953). In addition to suing on his own behalf, Mr. Grunn attempts to bring a claim on behalf of third parties. Specifically, Mr. Grunn sues on behalf of unknown "same-sex couples married in jurisdictions that recognize their marriages and *who will be* his clients and customers now and in the future." (Second Am. Compl. ¶ 49 (emphasis added).)

Mr. Grunn's third-party claim is insufficient on multiple levels. To begin with, courts— and the Constitution—disfavor third-party standing. *See Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004) ("[A] party generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.") (internal quotations omitted). This is because there is "a healthy concern that if the claim is brought by someone other than one at whom the constitutional protection is aimed . . . the courts might be called upon to decide abstract questions . . . even though judicial intervention may be unnecessary to protect individual rights." *Id.* (internal quotations and citations omitted).

As Justice Brennan explained, this limitation respects and protects the separation of powers:

> This Court, as is the case with all federal courts, has no jurisdiction to pronounce any statute, either of a state or of the United States, void, because irreconcilable with the constitution, except as it is called upon to adjudge the legal rights of litigants in actual controversies. In the exercise of that jurisdiction, it is bound by two rules, to which it has rigidly adhered: one, never to anticipate a question of constitutional law in advance of the necessity of deciding it; the other, never to formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied.

*United States v. Raines*, 362 U.S. 17, 21 (1960) (internal quotations omitted).

Mr. Grunn cannot escape the requirements of Article III standing by suing on behalf of third parties. *See Metz v. Supreme Court of Ohio*, 46 F. App'x 228, 233-34 (6th Cir. 2002) (holding that a lawyer suing on behalf of his former client failed to satisfy Article III's case or controversy requirement). A litigant bringing an action on behalf of third parties "must have suffered an injury-in-fact, thus giving him or her a sufficiently concrete interest in the outcome of the issue in dispute . . . ." *Id.* at 234 (quoting *Powers v. Ohio*, 499 U.S. 400, 410-11 (1991)). As explained above, Mr. Grunn fails to demonstrate that he has suffered any injury-in-fact. Thus, Mr. Grunn lacks standing to raise his claim, whether on his own behalf or on behalf of theoretical future clients.

Even overlooking Mr. Grunn's constitutional-standing deficiencies, Mr. Grunn must meet additional criteria necessary to advance the rights of third parties. To sue on behalf of others, a litigant must establish (1) "a close relationship with the person who possesses the right" and (2) "a hindrance to the possessor's ability to protect his own interests . . . ." *Boland v. Holder*, 682 F.3d 531, 537 (6th Cir. 2012) (internal quotations omitted). Here, Mr. Grunn fails both requirements.

a.   **Mr. Grunn does not have a close relationship with unknown future clients.**

Mr. Grunn's claim is foreclosed by binding Supreme Court precedent. The Supreme Court has held that a litigant's hypothetical relationship with future, unknown clients does not satisfy the "close relationship" requirement of third-party standing. *Kowalski*, 543 U.S. at 130-31; *see also Suciu v. Washington*, No. 12-12316, 2012 U.S. Dist. LEXIS 146432, at *9 (E.D. Mich. Oct. 11, 2012) ("Plaintiffs' relationship with hypothetical future clients is no closer than the relationship of the defense attorneys in *Kowalski*."). In *Kowalski*, attorneys attempted to invoke third-party standing based on their hypothetical relationship with unascertained clients "who will request, but be denied" counsel. *Kowalski*, 543 U.S. at 130-31. The Court acknowledged that an attorney-client relationship with an "existing client" or "known claimants" might satisfy the "close relationship" factor. *Id.* Nevertheless, the attorneys' hypothetical relationship to unascertained clients was wholly inadequate. *Id.* The Court noted that "[t]he attorneys before us do not have a 'close relationship' with their alleged 'clients'; indeed, they have no relationship at all." *Id.* at 131.

Under *Kowalski*, Mr. Grunn does not have a close relationship with hypothetical future clients. Even assuming that a funeral director could have the degree of affiliation with clients required as an initial predicate on which to claim third-party standing, *cf. Fenstermaker v. Obama,* 354 F. App'x 452, 455 (2d Cir. 2009) (plaintiff "contends that he satisfies the 'close relation' prong of third-party standing based on a 'vendor-vendee relationship.' . . . We are not persuaded"), Mr. Grunn lacks such a relationship here. Mr. Grunn does not identify such clients. Rather, he simply speculates that he will have such clients in the future. (*See* Second Am. Compl. ¶ 45.) He sues on behalf of an unidentified and theoretical class of people "who will be his clients . . . ." (Second Am. Compl. ¶ 49.)

12

Like the attorneys in *Kowalski*, Mr. Grunn seeks to manufacture a hypothetical relationship with unspecified future clients. Under these circumstances, Mr. Grunn fails to plead sufficient facts to establish a close relationship. *See Smith v. Jefferson Cnty. Bd of Sch. Comm'rs*, 641 F.3d 197, 226 (6th Cir. 2011) (Batchelder, C.J., concurring in part and dissenting in part) ("Prospective or hypothetical relationships cannot sustain third-party standing."). He does not share a "close relationship" with these potential clients; indeed, he has no relationship at all.

### b.    Mr. Grunn fails to plead any hindrance to third parties.

To satisfy third-party standing, Mr. Grunn must also establish some obstacle to third parties "litigating their right themselves." *Id.* at 207. Like other requirements of standing, a plaintiff must plead hindrance with specificity. *See Wuliger v. Mfrs. Life Ins. Co.*, 567 F.3d 787, 793 (6th Cir. 2009) (indicating that a plaintiff bears the burden of demonstrating prudential standing requirements and "must plead [standing] components with specificity").

The Sixth Circuit has recently addressed the hindrance element of third-party standing. *Boland*, 682 F.3d at 536-37. The Court specifically held that "hypothetical future defendants" faced no hindrance in their ability to raise Sixth Amendment rights. *Id.* The Court reasoned that such defendants had raised challenges in prior cases and, therefore, faced no obstacle in doing so again. *Id.* at 537; *cf. also Kowalski*, 543 U.S. at 527-28 (holding that a litigant's *pro se* status was not the type of hindrance required for third-party standing).

In this case, Mr. Grunn fails to allege that same-sex couples—married in other jurisdictions—are hindered from litigating their own rights. On the most basic level, the Second Amended Complaint lacks specificity. Mr. Grunn pleads no facts suggesting that same-sex couples are unable to pursue their own rights. In fact, the Second Amended Complaint fails even to acknowledge the hindrance requirement.

13

This case confirms that same-sex couples are indeed suing in this context. This Court has ruled on temporary relief regarding same-sex couples litigating the scenario Mr. Grunn contemplates. And the Second Amended Complaint identifies no procedural barrier to future clients raising such claims.

Finally, the speculative nature of Mr. Grunn's claim precludes a finding of hindrance. Mr. Grunn does not allege that members of the inchoate group for whom he purports to speak are barred from advocating their own interests. The Court cannot, therefore, fairly determine that such clients actually face obstacles in pursuing their own rights.

**B.**     **Mr. Grunn's claim is not ripe for adjudication.**

Even if Mr. Grunn could overcome the standing hurdle, and he cannot, this Court lacks jurisdiction over his claim because it is not ripe. The ripeness doctrine is "drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Reno v. Catholic Soc. Servs.*, *Inc.*, 509 U.S. 43, 58 n.18 (1993); *see also Norton v. Ashcroft*, 298 F.3d 547, 554 (6th Cir. 2002). "The ripeness doctrine serves to avoid premature adjudication of legal questions and to prevent courts from entangling themselves in abstract debates that may turn out differently in different settings." *Warshak v. United States*, 532 F.3d 521, 525 (6th Cir. 2008) (internal quotation and punctuation omitted); *see also Nat'l Park Hospitality Ass'n v. Department of Interior*, 538 U.S. 803, 808 (2003). Ripeness is a question of timing designed to "ensure that federal courts decide only existing, substantial controversies, not hypothetical questions or possibilities." *Nat'l Ass'n of Minority Contractors v. Martinez*, 248 F. Supp.2d 679, 687 (S.D. Ohio 2002). A complaint that fails to allege facts sufficient to demonstrate that a claim is ripe for review should be dismissed for lack of subject matter jurisdiction. *Norton*, 298 F.3d at 555.

14

The ripeness analysis focuses on "two basic questions:  (1) is the claim fit for judicial decision in the sense that it arises in a concrete factual context and concerns a dispute that is likely to come to pass? and (2) what is the hardship to the parties of withholding court consideration?"  *Warshak*, 532 F.3d at 525 (internal quotation and alterations omitted); *see also Miles Christi Religious Order v. Twp. of Northville*, 629 F.3d 533, 537 (6th Cir. 2010) (same). Mr. Grunn cannot satisfy either prong.

Mr. Grunn does not now, and does not say when he might, have a client who seeks a death certificate that reflects a same-sex marriage performed out of state.  And where, as here, a plaintiff's claimed harm rests on speculation regarding theoretical future harm, the case lacks the requisite factual context to render the dispute ripe.  *See Norton*, 298 F.3d at 554-55 (holding case unripe where complaint failed to provide a "concrete set of facts," forcing the court to "speculate" how the act might be applied); *Lawrence v. Welch*, 531 F.3d 364, 373 (6th Cir. 2008) (Sutton, J., concurring) (noting that absent "concrete facts regarding the Board's . . . assessment of Lawrence's potential application, any resolution of Lawrence's claim—indeed, even the assumption that Lawrence will be injured—is necessarily premature").  Because Mr. Grunn fails to establish that his claim is ripe, this Court should dismiss his claim in its entirety for lack of subject matter jurisdiction.

### C.    <u>Even if Mr. Grunn's claim were justiciable, the Court should decline jurisdiction over his declaratory judgment action.</u>

Even if Mr. Grunn's claim were justiciable, which it is not, this Court should decline to exercise discretion over Mr. Grunn's request for declaratory relief and dismiss his claim.  The Declaratory Judgment Act provides that a district court "'*may* declare the rights and other legal relations of any interested party seeking such declaration . . .'." *Travelers Indem. Co. v. Bowling Green Professional Assoc.*, *PLC*, 495 F.3d 266, 271 (6th Cir. 2007) (quoting 28 U.S.C. § 2201

(emphasis added by the court)).  The Act gives this Court "unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995).  A court may decline to "entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *Travelers*, 495 F.3d at 271.

> When deciding whether to exercise jurisdiction this Court should consider the following:
>
> (1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of 'procedural fencing' or 'to provide an arena for a race for res judicata;' (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

*Grand T.W.R. Co. v. Consolidated Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1994).

The purely speculative nature of Mr. Grunn's claim disposes of the first two factors.  Mr. Grunn does not allege that he has an existing controversy with Dr. Wymyslo.  As emphasized above, Mr. Grunn does not contend that he has ever reported on a death certificate the marital status or surviving spouse of a decedent member of a same-sex couple married in a state that recognizes same-sex marriage.  Indeed, he does not even allege that he has been asked to do so by any current or former client.  Rather,  he asks the Court to provide advice regarding how he should respond in the event he receives such a request at some unspecified point in the future from an as-yet unidentified future client.

The Declaratory Judgment Act may not be used for this purpose.  Courts have clarified that a declaratory judgment is appropriate "only in cases involving an actual case or controversy . . . where the issue is actual and adversary, and it *may not be made the medium for securing an advisory opinion in a controversy which has not arisen . . . .*"  *Barnes v. Kansas City*

*Office of FBI*, 185 F.2d 409, 411 (8th Cir. 1951) (emphasis added).  "Especially where governmental action is involved, courts should not intervene unless the need for relief is clear, *not remote or speculative*."  *Id*. (emphasis added); *see also Simmonds Aerocessories, Ltd. v. Elastic Stop Nut Corp. of Am*., 257 F.2d 485, 489-90 (3rd Cir. 1958) ("[T]he fundamental test is whether the plaintiff seeks merely advice or whether a real question of conflicting legal interests is presented for judicial determination.").

The fourth factor, whether the use of a declaratory action would increase friction between federal and state courts and improperly encroach upon state jurisdiction, also militates against exercising jurisdiction in this case.  Mr. Grunn's claim raises issues of state law and policy that go far beyond the questions currently before the Court.  Mr. Grunn seeks a declaration that he "may, consistent with the constitution, report that a decedent married in a state authorizing same-sex marriage is 'married' or 'widowed' and report the name of any surviving spouse on an Ohio death certificate he completes in the course of his work as a funeral director in Ohio."  (Second Am. Compl. VII.B.)  Mr. Grunn thus seems to ask the Court to declare that he may report the marital status (and surviving spouse status) for same-sex couples married in states recognizing same-sex marriage without facing prosecution under Ohio's statute prohibiting purposefully false statements in death certificates, Ohio Rev. Code § 3705.29(A)(1).  To grant this relief would require the Court to analyze an Ohio criminal statute that is not challenged in this case.  This Court would then have to attempt to reconcile that statute with Ohio's statutory and constitutional amendment concerning same-sex marriage, substantial portions of which similarly remain unchallenged in this case.

This Court should decline Mr. Grunn's invitation to interfere needlessly in such intricate matters of state law and policy.  As the Sixth Circuit has emphasized, declaratory relief should be

avoided where, as here, "there is a close nexus between the underlying factual and legal issues and state law and/or public policy." *Travelers*, 495 F.3d at 273 (declining to entertain a request for declaratory relief involving questions of insurance contract interpretation stressing that "states regulate insurance companies for the protection of their residents, and state courts are best situated to identify and enforce the public policies that form the foundation of such regulation") (internal quotations omitted).

Finally, as this case confirms, claimed rights regarding death certificates of same-sex couples married in states recognizing same-sex marriage have been asserted by same-sex couples themselves in the context of as-applied challenges arising from concrete circumstances. Thus, this Court need not resort to abstract speculation regarding how the law might apply to Mr. Grunn or his unascertained future clients. *Cf. Warshak v. United States*, 532 F.3d 521, 525 (6th Cir. 2008) (courts should avoid "entangling themselves in abstract debates that may turn out differently in different settings") (internal quotation and punctuation omitted).

In short, this Court should not exercise its discretionary jurisdiction over this matter, and Mr. Grunn's claim should be dismissed.

## D. Mr. Grunn fails to state a claim based on his own rights.

Mr. Grunn also fails to plead any equal protection or other claim on his own behalf. It is well settled that a plaintiff cannot sue based on "a generalized grievance against [assertedly] illegal governmental conduct . . . ." *United States v. Hayes*, 515 U.S. 737, 743 (1995). "The rule against generalized grievances applies with as much force in the equal protection context as in any other." *Id.* at 743-44 (recognizing that the injury from discrimination relates to the person actually denied equal treatment); *cf. also Parker v. Ohio*, 263 F. Supp. 2d 1100, 1103 (S.D. Ohio 2003) (holding that an equal protection claim alleging racial gerrymandering must be brought by a person living within the district).

18

Consequently, Mr. Grunn cannot base a claim on his generalized desire to change Ohio's marriage laws. Instead, to state an equal protection claim, Mr. Grunn must allege that he was actually treated differently from other similarly situated people. *See, e.g.*, *LaFountain v. Harry*, 716 F.3d 944, 950 (6th Cir. 2013) (holding that to state an equal protection claim a white inmate "needed to allege that the defendants treated a similarly situated non-white prisoner differently than they treated him"); *Loesel v. City of Frankenmuth*, 692 F.3d 452, 461 (6th Cir. 2012) ("The Equal Protection Clause prohibits discrimination by government which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference.") (internal quotation omitted).

Here, Mr. Grunn fails to plead an equal protection, or other, claim based on his own rights. Mr. Grunn does not allege that he is being treated differently from any other funeral director under the laws of Ohio. Rather, his purported claim relates to the equal protection rights of same-sex couples married in other jurisdictions. But he is not a member of a same-sex couple married in another jurisdiction. Instead, his purported connection to this case is based on the rights of third parties, his hypothetical future clients. Despite these circumstances, Mr. Grunn still attempts to sue on his own behalf.

That Mr. Grunn is actually asserting the rights of others is further evidenced by the fact that the relief he seeks is tailored to the equal protection rights of third parties. Mr. Grunn is not before this Court asserting that he is being treated differently than other similarly situated funeral director. He is not asking for relief that will remedy any alleged differential treatment *of him*. He instead seeks relief for an entire class of his prospective clients. In fact, he asks the Court to issue a broad declaration that applies to any future client who happens to be a same-sex couple

married in another jurisdiction.  It is apparent that this declaration pursues the equal protection rights of others, not Mr. Grunn.

Mr. Grunn fails to state any claim on his own behalf.  Instead, his claim is on the behalf of third parties and seeks relief for them.  Based on Mr. Grunn's failure to demonstrate that his own equal protection rights are at stake, the Court should dismiss any such claim.

### E.  Mr. Grunn's declaration is procedurally improper and does not cure defects relating to his standing.

Perhaps recognizing the obvious defects in the Second Amended Complaint, Mr. Grunn filed a last minute, "Declaration of Facts Related To Standing To Sue By Robert Grunn"  (Doc. 34-1) designed to bolster his claim to standing.  As an initial matter, this Court should not consider Mr. Gunn's Declaration in evaluating the sufficiency of the pleadings.  A plaintiff is required to plead the components of standing with specificity.  *Wuliger*, 567 F.3d at 793.  Here, Dr. Wymyslo brings a facial attack to Mr. Grunn's standing, "challeng[ing] the sufficiency of the pleading itself."  *List v. Driehaus*, No. 1:10-cv-720, 2011 U.S. Dist. LEXIS 84000, at *4-5 (S.D. Ohio Aug. 1, 2011) (outlining the standard of review for facial attacks to standing).  Moreover, with regard to Mr. Grunn's failure to state a claim in the Second Amended Complaint, it is well established that the Court cannot consider matters outside of the pleadings.  *Hammond v. Baldwin*, 866 F.2d 172, 175 (6th Cir. 1989).

In light of these settled standards, Mr. Grunn's declaration is procedurally improper at this stage in the litigation.  At its core, Mr. Grunn's declaration is an attempt to try somewhat to supplement the factual allegations within the Second Amended Complaint.  Plaintiffs, however, have not moved to file a third amended complaint and the Court has not granted them leave to do so.  Mr. Grunn's statements, therefore, are not a part of the relevant pleadings in this case.

Because the Court must evaluate Dr. Wymyslo's challenges based on the allegations within the Second Amended Complaint alone, it should disregard Mr. Grunn's declaration.

Further, Mr. Gunn's "declaration" does nothing to fix his standing problems. Even if this Court were to consider his declaration, Mr. Grunn would continue to lack standing. First, Mr. Grunn still fails to establish an injury-in-fact. Mr. Grunn describes his purported harm as follows:

> When I next originate a death certificate for a decedent who legally married a same-sex spouse in another state, I intend to list the decedent as married and list the decedent's surviving spouse by name. By doing so, I fear I will be prosecuted by Defendant Wymsylo for purposely making a false statement on a death certificate. I would be relieved to have clear direction on how I should complete information about marital status and surviving spouse when completing death certificates for same sex couples married legally in other states but served by me in Ohio.

(Grunn Decl. ¶ 17.) From this statement, it appears that Mr. Grunn is trying to invoke a pre-enforcement standing framework based on a fear of prosecution from Dr. Wymslo. But as case after case makes clear, a plaintiff seeking pre-enforcement review must still satisfy the injury-in-fact requirement. See *Coast*, 2013 U.S. App. LEXIS 18953 at *23-25 (holding that a "chain of events" was "too attenuated to confer standing" within the pre-enforcement context). Such injury requires a credible threat of prosecution. *Id.* at *24.

Even combining Mr. Grunn's pleadings with his later declaration, Mr. Grunn fails to satisfy pre-enforcement standing requirements. For example, he provides no concrete context in which the allegedly prohibited conduct will occur, still engages in speculation as to unknown future events, and still comes nowhere close to establishing a credible threat of prosecution. "A threatened injury must be certainly impending to constitute injury in fact." *Id.* at *22 (internal quotations omitted). The threat cannot "rest[] on a string of actions the occurrence of which is

merely speculative." *Id.* at \*24.  In other terms, "subjective apprehension of prosecution" is not enough.  *White v. United States*, 601 F.3d 545, 554 (6th Cir. 2010).

Here, Mr. Grunn's declaration fails to establish anything more than a subjective fear of prosecution.  As explained at length above, Mr. Grunn's theory of harm would only come to pass following an extensive chain of hypothetical events premised on pure conjecture.  *See supra* at § II.A.1.  Nothing in Mr. Grunn's declaration suggests that this chain of events is likely or imminent.  Indeed, Mr. Grunn expressly concedes that he "ha[s] no control over when people will need [his] services." (*See* Grunn Decl. ¶ 16.)  Far from helping Mr. Grunn's standing, his "declaration" further points out the lack of imminence.

Moreover, Mr. Grunn's purported fear that he "will be prosecuted by Defendant Wymyslo," rests on a fiction:  Dr. Wymyslo has no authority to prosecute violations of Ohio Rev Code § 3705.29.  Rather, any future decision to prosecute based on this hypothetical scenario would be exclusively in the hands of a county prosecutor.  *See* Ohio Rev. Code § 3701.58 ("The prosecuting attorney shall prosecute all violations of section[] . . . 3705.29 of the Revised Code.").  No such prosecutor is in this case.

Further confirming the lack of immediacy of Mr. Grunn's theorized harm, his new statement contains no assertion that anyone has ever prosecuted or even threatened to prosecute him (or any other funeral director) for the actions in question.  The absence of past sanctions arising from such clients only underscores the purely conjectural nature of any future harm.  *See Glenn*, 690 F.3d at 424 ("And conspicuously absent from Plaintiffs' allegations is any express (or even implied) threat of official enforcement of the Hate Crimes Act against Plaintiffs or any other religious leaders for the type of conduct they seek to practice: there is nothing that objectively supports 'a credible threat of prosecution.'").

Mr. Grunn's declaration also fails to cure, or even acknowledge, defects with respect to third-party standing. Even considering the declaration, it is still apparent that Mr. Grunn is relying on the rights of third parties, his unknown and hypothetical future clients. For the reasons described above, Mr. Grunn cannot have a close relationship with future hypothetical clients sufficient to confer standing consistent with Supreme Court precedent. Moreover, Mr. Grunn's declaration continues to ignore the hindrance requirement for third-party standing.

Finally, in addition to standing defects, Mr. Grunn's declaration does nothing to refute Dr. Wymyslo's remaining positions. As previously addressed, Mr. Grunn's claim is not ripe; the Court should decline declaratory jurisdiction; and the pleadings fail to state any claim based on Mr. Grunn's own rights.

## III.    CONCLUSION

For the above reasons, this Court should dismiss in its entirety the claim of funeral director Robert Grunn and his corresponding request for broad-sweeping declaratory relief.

Respectfully submitted,

MICHAEL DeWINE
Ohio Attorney General

/s/ *Bridget E. Coontz*
BRIDGET E. COONTZ (0072919)*
        *Lead and Trial Counsel
ZACHERY P. KELLER (0086930)
Assistant Attorneys General
Constitutional Offices Section
30 East Broad Street, 16th Floor
Columbus, Ohio 43215
Tel: (614) 466-2872; Fax: (614) 728-7592
bridget.coontz@ohioattorneygeneral.gov
zachery.keller@ohioattorneygeneral.gov

*Counsel for Dr. Wymyslo*

23

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing document was filed electronically on October 11, 2013. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

/s/ *Bridget E. Coontz*
BRIDGET E. COONTZ (0072919)*
Assistant Attorney General

24