**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **JAMES OBERGEFELL** and **JOHN ARTHUR**, | : : | Case No. 1:13-cv-501 |
| | : : | Judge Timothy S. Black |
| Plaintiffs, | : : | |
| vs. | : : : | **MEMEORANDUM IN OPPOSITION TO MOTION TO DISMISS PLAINTIFF ROBERT GRUNN** |
| **DR. THEODORE E. WYMYSLO, M.D., et al,** | : : : | |
| Defendants. | : | |

## I.  INTRODUCTION

Plaintiffs in this civil rights action include John Arthur who is dying of end-stage ALS. John's death is imminent. Plaintiffs also include Robert Grunn who has been retained to provide cremation services and process the application for a death certificate when John dies.  John is married to James Obergefell. Their same-sex marriage was legally performed in Maryland which recognizes same-sex marriage. John wants his death certificate to reflect his marital status as "married" and reflect that his "surviving spouse" is James. Robert Grunn states that he has already provided such services to one similarly situated same-sex couple and that he intends to continue serving married same-sex clients in the future. He seeks declaratory and injunctive relief to protect him from criminal prosecution when he submits death certificate applications on behalf of persons who are legally married in jurisdictions that authorize same-sex marriage but who die in Ohio. He intends to list such decedents as "married" and list their same-sex married partners as their "surviving spouse[s]" on death certificate applications. Defendant Dr. Theodore Wymyslo has moved to dismiss Robert Grunn for lack of standing. He also claims that Robert

1

Grunn's claim is not ripe and that this court should not reach his request for a declaratory injunction. Defendant local registrar Dr. Camille Jones has not joined in the motion.

Litigation is intended to solve problems. Certainly unnecessary or advisory rulings should be avoided. But when the parties have a real controversy – a real problem – courts should act. Dr. Wymyslo is seeking to dodge a real problem. This Court should not let him do it. Funeral directors play the primary role in the application process for death certificates. Plaintiff funeral director Robert Grunn will complete the application when John dies. He must provide accurate information or face penalties. Is it accurate to label John as "married" when he was married to a same-sex partner in a state where such marriage is legal but when he dies in Ohio? Ohio refuses to recognize such marriages. If Robert Grunn fills out John's death certificate application in that manner will he be protected from prosecution? Dr. Wymyslo states that the problem should be avoided by dismissing Robert Grunn from the lawsuit. Plaintiffs say that the problem cannot be avoided. John's death and that of other married same-sex clients is imminent. The problem must be solved now. The arguments of Dr. Wymyslo should be rejected.

## II.  FACTS RELEVANT TO STANDING OF ROBERT GRUNN

The following facts are set out in the second amended complaint (Doc. 29-1) as well as in the declarations of Robert Grunn (Doc. 34-1) and James Obergefell (Doc. 48-1).

1. Robert Grunn has been a licensed funeral director in the State of Ohio for over 22 years.
2. As a funeral director, one of his responsibilities is to originate death certificates. To do this, he collects personal information from the next of kin of the deceased, including whether the deceased was married, single, widowed, or divorced; and if married he collects the surviving spouse's name. Then, he enters the information into the Electronic Death Registration System

(EDRS) maintained by the Ohio Department of Health. That is accomplished through special software availed to Mr. Grunn and other funeral directors by the Department of Health.

3. After entering the personal information, Mr. Grunn signs the death certificate and sends it to the certifying physician or coroner to certify the cause of death. The death certificate is then returned to him, and he physically takes it to the local registrar of vital statistics to file it and receive certified copies for his clients.

4. The certified copies are used by his clients to receive life insurance payouts, deed automobiles, real estate, and other property to survivors, claim social security survivors benefits, and execute wills, among other things.

5. Due to grief and inexperience with death, his clients often do not realize the importance of death certificates until after he has filed them and returned certified copies.

6. He signs every death certificate he originates, and he knows that if he purposely makes a false statement within a death certificate he may face criminal penalties.

7. Mr. Grunn's business is growing. It has recently opened a new location in Dayton.

8. Mr. Grunn files approximately forty death certificates per month.

9. Mr. Grunn has already served at least one gay client who was married to his partner in another state.

10. Mr. Grunn has been retained by Plaintiff James Obergefell to provide funeral services upon Plaintiff John Arthur's death. Specifically, he will secure the death certificate and provide cremation services.

11. Mr. Obergefell will request that Mr. Grunn list Mr. Arthur as married and Mr. Obergefell as his surviving spouse.

12. Mr. Grunn is gay.

13.     His business is located in the old Carol's On Main, a gay-friendly bar that is fondly remembered by many gay people in Cincinnati.

14.     Mr. Grunn knows many same-sex couples who reside in Ohio and were legally married in other states.

15.     Plaintiff Obergefell will be referring same sex clients who have been married in other states to Mr. Grunn for funeral, cremation and related services.

16.     Mr. Grunn is certain that he will be serving a growing number of same sex couples who have been legally married in other states.

17.     The next time Mr. Grunn originates a death certificate for a decedent who was legally married a same-sex spouse in another state, he intends to list the decedent as married and list the decedent's surviving spouse by name. By doing so, he fears Defendant Wymyslo will initiate a prosecution of him for purposely making a false statement on a death certificate.

18.     Defendant Camille Jones also recognizes that as the local registrar of vital records if she were to knowingly permit a death certificate to indicate that two same-sex people were lawfully married she could be subjected to criminal prosecution under the same laws as Mr. Grunn. (Jones Response to Motion for TRO, Doc. 10, ¶¶ 11,7).

     This Court should consider the facts within the declarations of Mr. Grunn and Mr. Obergefell when ruling on this motion. Defendant Wymyslo claims that this court is limited to the text of the second amended complaint when deciding this motion to dismiss. On the contrary, consideration of the facts set out in the declarations directed to the issue of standing is completely appropriate. Moreover, if Defendant Wymyslo wants clarification of any fact set out in these declarations any and all of the declarants is available at any time for deposition.

To rule on a motion to dismiss for want of standing, a trial court "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Warth v. Seldin*, 422 U.S. 490, 501 (1975). Further, "it is within the trial court's power to allow or to require that plaintiff to supply, by amendment to the complaint or by affidavits, further particularized allegations of fact deemed supportive of plaintiff's standing." *Id*.

Defendant Wymyslo has asked this Court to declare that a litigant seeking its protection is outside the Court's jurisdiction. In anticipation of the defendant's motion, Mr. Grunn wrote and filed a declaration of facts to assist the defendant and the court in making this determination. Defendant Wymyslo had time to consider the declaration before submitting his motion and will have further time to consider it when responding to this brief. He has also asserted that Mr. Grunn's declaration "does nothing to fix his standing problems;" so he has in fact considered the declaration. (Wymyslo Motion to Dismiss, Doc. 38, p. 21). Plaintiff Obergefell's recently filed declaration should also be considered by the Court and Defendant Wymyslo. The facts within his declaration were impossible to file earlier for they had not yet occurred.

### III.  ARGUMENT

A. **Mr. Grunn has first party standing because he fears criminal prosecution for conforming his actions to the Fourteenth Amendment.**

Article III of the United States Constitution only confers on federal courts jurisdiction over various types of "cases" or "controversies." The controversy between Robert Grunn and Theodore Wymyslo is palpable. Mr. Grunn has already served a surviving spouse who was in a same sex marriage. He has also agreed to provide services to John Arthur and James Obergefell. His services include providing death certificates and listing the decedent as married and the survivor as the surviving spouse.  He intends to continue that practice into the future. As a gay funeral director running a rapidly-expanding business out of a location that hosted a former gay

5

bar, he holds a reasonable expectation that opportunities to serve same-sex couples married in other states will continue to present themselves. Theodore Wymyslo is currently defending the State of Ohio's belief that Mr. Grunn's recorded statements – that two people of the same gender were married - are wrong, false, and illegal under Ohio law. If this case does not proceed to the merits, Mr. Grunn will continue originating death certificates seeking recognition for same-sex marriages, and Defendant Wymyslo will have the power to enforce his interpretation of Ohio law by initiating a prosecution against Grunn that could result in $10,000 in fines and 5 years in prison.

"The doctrine of standing serves to identify those disputes which are appropriately resolved through the judicial process." *Whitmore v. Arkansas*, 495 U.S. 149, 154 (1990). More specifically, the standing doctrine helps identify the plaintiffs properly before a court. The standing doctrine is an evolving body of law with its "core component" being "the case-or-controversy requirement of Article III," but "some of its elements express merely prudential considerations that are part of judicial self-government." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (1992).

Justice Scalia distilled the standing case law into a one-paragraph description that has been accepted as a clear statement of the doctrine:

> Over the years, our cases have established that the irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan*, 504 U.S. at 560-61 (internal quotations and citations omitted). Mr. Grunn satisfies each of these three elements.

### 1. Mr. Grunn's fear of a criminal prosecution is a sufficient injury for standing purposes.

Mr. Grunn has brought a constitutional challenge to Ohio laws that, as applied, expose him to criminal penalties. It is not necessary that he actually be arrested or prosecuted to establish an "injury" for standing purposes. There are many categories of injuries recognized under the standing doctrine, including the fear of criminal prosecution. In this context, "one does not have to await the consummation of threatened injury to obtain preventive relief." *Babbit v. United Farm Workers Nat. Union*, 442 U.S. 289, 298 (1979) (internal citation omitted). "It is not necessary that the plaintiff first expose himself to actual arrest or prosecution to be entitled to challenge the statute that he claims deters the exercise of his constitutional rights." *Id*. at 298 (internal citation omitted). Under the prosecution theory of injury, the plaintiff must show that he was threatened with prosecution, a prosecution is likely, or that it is at least remotely possible. *Id*. at 298-299. Perhaps because criminal prosecutions are such a serious injury, the bar to achieve standing appears to have been set quite low.

The farm worker plaintiffs in *Babbit* were found to have standing to challenge a state statute criminalizing the use of false statements to dissuade consumers from buying products. *Id*. at 301-302. The Court found that the plaintiffs had no intention of making such false statements, but that they had actively engaged in consumer publicity campaigns in the past and that they intend to continue boycott activities in the future. *Id*. The Court granted standing to the plaintiffs on the theory that potential prosecution may impede full exercise of their First Amendment rights. They granted standing despite the State's insistence that the "criminal penalty provision ha[d] not yet been applied and may never be." *Id*. at 302. The court countered that the criminal

7

prosecution was "not imaginary or wholly speculative" and that "the State ha[d] not disavowed any intention of invoking the criminal penalty provision." *Id*.

Mr. Grunn, much like the farm workers, fears prosecution for a crime that may not be regularly enforced. However, the State has not disavowed its intention of prosecuting funeral directors who recognize same sex marriage on death certificates. Mr. Grunn's need for relief is even more immediate than the farm workers. He has already engaged in conduct that could trigger a prosecution and he has expressed his intent to continue his practice. Mr. Grunn's potential prosecution is less remote, less speculative, and more likely than was the prosecution of the farm workers in *Babbit*, who were found to have standing based on their fear of prosecution. Importantly, Mr. Grunn's fear is so real that it is shared by others. Defendant Camille Jones has raised the identical fear of being prosecuted under the same laws cited by Mr. Grunn and for the same reasons. (Jones Response to Motion for TRO, Doc. 10, ¶¶ 11,7).

Mr. Grunn's injury is also like pre-enforcement challenges brought by abortion providers. A newly enacted Ohio law allowing prosecution for performing medical abortions was challenged by an abortion provider who had previously performed such abortions. *Planned Parenthood Cincinnati Region v. Taft*, 337 F.Supp.2d 1040 (S.D. Ohio 2004), order vacated in part on other grounds, 439 F.3d 304 (6th Cir. 2006). Even though the law was yet to take effect, the court found the abortion provider had standing because if she continued in her practice the "[d]efendants would have authority to prosecute her under the Act, and Dr. Kade has attested that she fears such prosecution." *Id*. at 1044. Like Dr. Kade, Mr. Grunn's injury is based on a fear of prosecution under a law that is yet to be enforced against him, but which the Defendant has the authority to use to prosecute him, and Mr. Grunn fears such prosecution.

The cases relied upon by Defendant Wymyslo are examples of the types of potential prosecutions that cross the line into "imaginary or wholly speculative." Those plaintiffs are not considered injured for standing purposes. Those cases include the gun enthusiasts who wanted to buy banned weapons. *NRA of Am. V. Magaw*, 132 F.3d 272, 293 (6th Cir. 1997). Standing was denied because their alleged harm was "no more than a generalized grievance shared in substantially equal measure by a large class of citizens." *Id*. at 294 (internal citations omitted). Also, A Michigan corporation involved in issue-oriented political advocacy claimed they were fearful of being prosecuted under Ohio's campaign-finance laws before doing any campaigning in Ohio or taking any discernable steps to do so. *All Children Matter, Inc. v. Brunner*, No. 2:08-cv-1036, 2011 WL 665356 (S.D. Ohio Feb. 11, 2011). Standing was denied because the corporation did not submit "affidavits or other evidence" to make the required "factual showing of perceptible harm." *Id*. at *5 (citations omitted). Defendant Wymyslo also cites a case brought by homophobic ministers who wanted the Hate Crimes Act declared unconstitutional but had no intention of battering gay people, they just wanted to continue bad-mouthing them. *Glenn v. Holder*, 690 F.3d 417 (6th Cir. 2012). The court denied standing because the ministers were not even asserting a desire to do anything the Hate Crimes Act made illegal – their suit was an "unnecessary effort" to ensure the law would continue not "prohibit[ing] them from publicly denouncing others." *Id*. at 419. Finally, when a Political Action Committee sought to invalidate a statute criminalizing false advertising in political campaigns, standing was denied because the PAC "[did] not claim that they intended to violate the statute by disseminating false statements." *Coast Candidates PAC v. Ohio Elections Com'n*, 2013 WL 4829216, *6 (6th Cir. Sept. 11, 2013).

The plaintiffs did not have standing in these cases because the penalizing statute had no particular applicability to them, they submitted no evidence of perceptible harm, there was no possibility of prosecution under the penalizing statute, or because the plaintiff had no intent of violating the penalizing statute. Mr. Grunn establishes standing on all four counts – the statute giving rise to his injury specifically targets funeral directors, he has submitted evidence showing perceptible harm, his prosecution is possible given the facts before the court, and he has expressed the intent to continuously engage in conduct that could be prosecuted. His fear of prosecution is not imaginary or wholly speculative. It is grounded in fact and is quite possible. Defendant Wymyslo admits as much by spelling out a ten-step process (the first five of which have already happened) leading to Mr. Grunn's prosecution.

The remainder of the cases relied upon by Defendant Wymyslo are cases where the injury was not a fear of future criminal prosecution. These cases are inapposite. Among the class of future fears, criminal prosecution is among the most serious, and as a result courts have set the standing bar quite low. Consequently, cases based on other future fears have little bearing on this case. *See Sankyo Corp. v. Nakamura Trading Corp.*, 139 F. App'x 648 (6th Cir. 2005) (fear of potential civil litigation); *Clapper v. Amnesty Int'l USA*, 133 S.Ct. 1138 (fear future communications will be intercepted by the Federal Government); *Feiger v. Michigan Supreme Court*, 553 F.3d 955 (6th Cir. 2009) (fear of professional discipline); *Johnson v. Turner*, 125 F.3d 324 (6th Cir. 1997) (prior prosecutions were finally adjudicated and sentences served at time of institution of litigation and no fear of future prosecution was alleged).

Distinguishing these cases is critical, because where a plaintiff fears possible criminal prosecution the Supreme Court has found that as long as the fear is not "imaginary or wholly speculative a plaintiff need not 'first expose himself to actual arrest or prosecution to be entitled

10

to challenge [the statute].' " *Babbitt*, 442 U.S. at 302 (quoting *Steffel v. Thompson*, 415 U.S. 452, 459 (1974)). Defendant Wymyslo's ten-step "extremely speculative chain of events" (Wymyslo Motion to Dismiss, Doc. 38, p. 7) leading to Mr. Grunn's prosecution may illustrate a prosecution that is not "*certainly impending*," *Id.*, but the existence of a step-by-step chain of events leading to Mr. Grunn's prosecution, as well as Defendant Jones' similar fear, is evidence that Mr. Grunn's prosecution is not imaginary or wholly speculative - and that is the standard this court must apply.

### 2. Mr. Grunn's fear of prosecution is caused by Defendant Wymyslo and Ohio's unconstitutional marriage laws.

For Mr. Grunn to have standing, "there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560 (quotations omitted). Mr. Grunn's injury is fairly traceable to the laws he challenges and the Defendant challenging his standing.

First, Mr. Grunn's fear of prosecution is fairly traceable to the defendant. Mr. Grunn has a duty to originate death certificates by collecting the personal information of decedents and then registering that information with the Ohio Department of Health. Ohio Rev. Code § 3705.16(B). If he "purposely make[s] any false statement" on a death certificate he could be criminally prosecuted and fined up to ten thousand dollars and incarcerated up to five years. Ohio Rev. Code §§ 3705.29(A)(1), 3705.99(A). The sole power to decide whether to initiate a prosecution of Mr. Grunn rests with the director of health, Defendant Wymyslo. Ohio Rev. Code § 3701.57. Mr. Grunn's fear of prosecution – his injury - is fairly traceable to Defendant Wymyslo, not some third party.

Second, by joining this lawsuit, Mr. Grunn's fear of prosecution is fairly traceable to Ohio's marriage laws. Mr. Grunn challenges the laws of Ohio that make it illegal to recognize a same sex marriage in Ohio. *See* Ohio Rev. Code § 3101.01(C)(3) and (4); Art. XV, § 11, of the Ohio Constitution. He believes these laws are unconstitutional, has filled out a death certificate for a same sex married couple in the past and plans to do so in the future, listing the decedent as married and the survivor as his surviving spouse. . He fears that Defendant Wymyslo will see his actions as purposefully making false statements on death certificates and initiate a prosecution of him. This fear is well-founded and shared by Defendant Camille Jones.

Mr. Grunn's fear of prosecution – his injury for standing purposes - is fairly traceable to Defendant Wymyslo and the laws Mr. Grunn challenges.

### 3. Mr. Grunn's fear of prosecution can be permanently relieved by this court.

The final requirement for standing is that the plaintiff's injury is capable of being redressed by the court. *Lujan*, 504 U.S. at 561. Here, the requirement is easily met. If the Court were to make its temporary injunction permanent and issue a declaratory judgment setting out Mr. Grunn's rights, the threat of Mr. Grunn's prosecution would evaporate. Not only would his statements on death certificates not be "false" they would be protected by the United States Constitution.

### B. Mr. Grunn has third-party standing to assert the rights of his clients.

In addition to having standing himself, Mr. Grunn has standing to assert the constitutional rights of the legally married same-sex couples who rely on him to originate death certificates. "Ordinarily, one may not claim standing … to vindicate the constitutional rights of some third party." *Singleton v. Wulff*, 428 U.S. 106 (1976). However, this disfavor can be overcome where a plaintiff (1) "shows that he himself is injured by its operation," *Barrows v. Jackson*, 346 U.S.

249, 255 (1953), (2) "has a close relationship with the person who possesses the right," and (3) where "there is a hindrance to the possessor's ability to protect his own interests." *Kowalski v. Tesmer*, 543 U.S. 125, 129-130 (2004). Mr. Grunn's injury was shown above, and it is incorporated here; and Mr. Grunn satisfies the two other elements.

1. **Mr. Grunn has a sufficiently close relationship to same-sex couples legally married in other states to competently advocate their interest in having their marriage recognized on death certificates.**

Mr. Grunn's relationship with legally married same-sex couples wishing their death certificates to reflect their marriages is sufficiently close for third-party standing. Courts require a close relationship to ensure that the challenger has the "appropriate incentive to challenge (or not challenge) governmental action and to do so with the necessary zeal and appropriate presentation." *Id*. at 129.

The most closely analogous Supreme Court case to this challenge of Mr. Grunn's standing dealt with the relationship between a licensed vendor of 3.2% beer and a 21 year-old male who brought an equal protection challenge to Oklahoma's laws allowing the sale of 3.2% beer to 18 year-old women but only 21 year-old men. *Craig v. Boren*, 429 U.S. 190 (1976). The Supreme Court found the vendor to have third-party standing because, much like Mr. Grunn, she was "obliged either to heed the statutory discrimination … or to disobey the statutory command and suffer … sanctions." *Id*. at 454-455. This type of relationship has presented itself to the Court multiple times and it has found that such challengers are "entitled to assert those concomitant rights of third parties that would be diluted or adversely affected should [the challenger's] constitutional challenge fail and the statutes remain in force." *Id.* at 195.The Court makes it clear: "vendors and those in like positions have been uniformly permitted to resist

efforts at restricting their operations by acting as advocates of the rights of third parties who seek access to their market or function." *Id.*

Mr. Grunn's clients rely on him to originate and register death certificates. They do not have access to the state Electronic Death Registration System, nor do they have the statutory authority to register deaths with the local registrar of vital statistics. *See* Ohio Department of Health, EDRS User Support Document, http://vitalsupport.odh.ohio.gov/GD/Document Management/DocumentDownload.aspx?DocumentID=5552 (last visited Oct. 16, 2013) (user accounts for EDRS only available to funeral directors, coroners, body donation clerks, or other death clerks); Ohio Rev. Code § 3705.16(A). Mr. Grunn's clients are one-hundred percent reliant on Mr. Grunn to fulfill that function, and like the 3.2% beer vendor he ought to be permitted to act as their advocate.

Defendant Wymyslo relies on a line of cases concerning attorney-client relationships to assert that Mr. Grunn is seeking to represent the rights of "hypothetical future clients." (Wymyslo Motion to Dismiss, Doc. 38, p. 12) This reliance is misplaced, and even were it not the record before the court shows that Mr. Grunn satisfies the relationship requirement raised in those cases. The Supreme Court has allowed lawyers third party standing to represent current clients but not "hypothetical" future clients. *Compare Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617 (1989) *with Kowalski*, 543 U.S. 125. The difference is between having a close relationship and "hav[ing] no relationship at all." *Id*. at 131. Defendant Wymyslo also relies on the unpublished Second Circuit case of *Fenstermaker v. Obama*, 354 Fed.Appx 452 (2d Cir. 2009), which he mischaracterized as being a vendor-vendee relationship when in fact "Fenstermaker alleged only that he might establish an attorney-client relationship with

14

[Gauntanamo] detainees in the future." *Id*. at 455. The relationship in that case was the same as in *Kowalski*.

Mr. Grunn has an extremely close relationship with same-sex couples legally married in other states who wish to have their Ohio death certificates reflect their marriages. This relationship is not hypothetical, nor in the future. He has already worked with at least one such client, he is currently retained to work with John Arthur and James Obergefell, and as a gay man running a successful funeral home out of a former gay bar he has a realistic expectation that similarly situated future clients are inevitable. Further, while Mr. Grunn is not yet married, nor burying his husband, as a gay funeral director he can surely muster the "necessary zeal" to appropriately advocate the rights of those that are.

> **2. Mr. Grunn's clients legally married to same-sex spouses in other states are significantly hindered from ensuring their death certificates reflect their marriages.**

Mr. Grunn's clients face serious obstacles in asserting their constitutional rights to equal protection. For Mr. Grunn to have third-party standing, his clients must be hindered in some way from "litigating their rights themselves." *Smith v. Jefferson Cnty. Bd of Sch. Comm'rs*, 641 F.3d 197, 207 (6th Cir. 2011). If there is some "genuine obstacle" to a third party's own standing, "the third party's absence from court loses its tendency to suggest that his right is not truly at stake, or truly important to him, and the party who is in court becomes by default the right's best available proponent." *Singleton v. Wulff*, 428 U.S. 106, 116 (1976).

This is a prudential limitation imposed by courts and can be overcome in a multitude of situations. *Smith*, 641 F.3d 209. In *Craig*, the beer vendor case, the obstacle faced by the affected class was their fluid membership – males lost their live claims upon turning twenty-one. 429 U.S. at 194. Thus, "if the assertion of the right is to be representative … there seems little loss in

15

terms of effective advocacy from allowing its assertion by [the licensed vendor]." *Id*. In later cases, this "obstacle" would be succinctly stated as the first-party claims being "imminently moot." *Smith*, 641 F.3d at 209.

Mr. Grunn entered this case asserting that "[b]y approaching the issue through his perspective, there will be no potential mootness argument that could stop the litigation upon the death of John Arthur." (Plaintiff's Second Motion to Amend Complaint, Doc. 29, p. 2). This is a recognized obstacle to a third-party vindicating their constitutional rights and consequently Mr. Grunn has third-party standing.

Furthermore, considering there is no precedent raising this exact factual situation, it is worthwhile to note the precise obstacles faced by the third-party same-sex couples in this case. The prudence of granting Mr. Grunn standing is nicely illustrated by the plaintiffs he joins. John Arthur is exceptional in his ability to bring this suit. He is dying of a terminal illness. His slow decline into death has allowed him, and his husband, to forecast and litigate their rights to be treated equally on his death certificate. The more common case is that of Plaintiff Mr. Michener who was surprised by this husband's death and who realized shortly before his deceased spouse's cremation that he needed a death certificate to proceed and he wanted that death certificate to record their marriage. Mr. Michener was only able to vindicate his rights on such short notice because there was a live case he could join, lawyers who had prepared the issue, and a temporary restraining order already in place. Without those factors, Mr. Michener would have had to find an attorney who could prepare the issue, file a motion for a temporary restraining order, and receive a temporary restraining order all within twenty-four hours while his husband's body waited to be laid to rest, and their three children waited to say goodbye. This is an incredible

burden to place on mourners and it is better asserted by the person who time and time again will be originating those third parties' death certificates.

The hindrance requirement is inherent in Mr. Grunn's work. Most people are not ready to die, and when they do, requiring that they bring an equal protection lawsuit to ensure their death certificates reflect their marriages is an enormous burden. As Mr. Grunn stated in his declaration, "[d]ue to grief and inexperience with death, my clients often do not realize the importance of death certificates until after I have filed them and returned certified copies." (Declaration of Robert Grunn, Doc. 34-1, ¶ 7).

Finally, Defendant Wymyslo asserts that Mr. Grunn failed to plead that his clients are "barred" from advocating their own interest. (Wymyslo Motion to Dismiss, Doc. 38, p. 14). Being "barred" is not the correct standard. Plaintiffs asserting third party standing need only show that the third party face some "obstacle" to litigating their rights. Mr. Grunn has done that here. Therefore Mr. Grunn has third party standing.

## C. **The Claims of Robert Grunn are Ripe.**

Defendant at p. 14 of his memorandum claims that this Court lacks jurisdiction because Mr. Grunn's claims are not "ripe." To determine if a claim is ripe, this Court is to consider three factors:

> (1) the likelihood that the harm alleged will ever come to pass; (2) whether the factual record is sufficiently developed to allow for adjudication; and, (3) hardship to the parties if judicial review is denied.

*Norton v. Ashcroft*, 298 F.3d 547, 554 (6th Cir. 2002) (citation omitted). Plaintiffs' claim easily satisfies all three factors. Mr. Grunn is an active member of the gay community, his business is gay friendly, and he has already served one same-sex couple that had been married in a state authorizing same sex marriage. Mr. Grunn has now been retained by John Arthur and

James Obergefell and will complete John's application for a death certificate. He will list John as "married" based on his Maryland marriage and list James as John's "surviving spouse" on the application for John's death certificate. James will be referring married same-sex couples to Mr. Grunn. The harm claimed is not "speculation regarding future harm" (p. 15). Rather when John dies the harm will be immediately present and for every similar case going forward there will be a clear and present risk of further harm.

Moreover the factual record is clearly sufficiently developed to address the issues raised by Mr. Grunn. His duties are already detailed in the briefing and hearing held in this case. They have been noted by Defendant Jones as she works with him and has expressed some of the same concerns. Finally, if this problem is not addressed now then the parties will scramble to litigate in a rushed manner when the next same sex married couple has a spouse die and must seek a death certificate through a funeral director as discussed, *infra*. The parties have the time and capacity to work on this issue in a measured and deliberate way now. It is a huge hardship for Mr. Grunn to litigate when the next grieving surviving spouse is in his funeral home. That client will be in distress and facing an urgent need to secure a death certificate and dispose of his/her loved one's remains. Everyone would face a hardship trying to secure that ruling under such conditions. Note that in *NRA v. Magaw*, 132 F.3d 272, 286 the Sixth Circuit held there was adequate hardship to overcome ripeness where "plaintiffs, for all practical purposes, are coerced into a particular course of conduct by the prospect of heavy civil and criminal penalties that might be visited upon them" if they did not comply with the challenged statute. Similarly here, Robert Grunn supports recognition of same sex marriage on death certificates and completes death certificates consistent with that support. However, compliance with the challenged statutes may force him to abandon that course of conduct. Finally, it is helpful to note that in *Gonzales v.*

18

*Carhart*, 550 U.S. 124, 167 (2007) the court expressed its preference for "pre-enforcement, as-applied challenges" and as such there will necessarily be some small gap between the plaintiff's conduct and actual enforcement in order that it be a "pre-enforcement challenge." Mr. Grunn's as applied claims are ripe.

**D. This Court Should Not Decline Jurisdiction over Robert Grunn's request for Declaratory Relief.**

This Court should exercise its discretion and entertain Mr. Grunn's declaratory judgment action. As set out above, he has first party standing, third party standing and the claim is ripe. The facts also show that he faces a real problem that has surfaced in his practice in the past, will surface again when John dies and will surely reappear in the future as well. Defendant Jones shares Mr. Grunn's concerns and fears and that surely removes any concern that this problem should be avoided. On the contrary Defendant Grunn is an appropriate plaintiff with a real stake in the issue and his claim should therefore be decided by this Court.

## IV. CONCLUSION

The Plaintiff respectfully requests that the motion to amend be granted.

Respectfully submitted,

| | |
|---|---|
| Lisa T. Meeks (0062074)<br>Newman & Meeks Co., LPA<br>215 E. Ninth Street, Suite 650<br>Cincinnati, OH 45202<br>phone: 513-639-7000<br>fax: 513-639-7011<br>lisameeks@newman-meeks.com<br><br>*Attorney for Plaintiffs* | /s/ Alphonse A. Gerhardstein<br>Alphonse A. Gerhardstein # 0032053<br>*Trial Attorney for Plaintiffs*<br><br>Jennifer L. Branch #0038893<br>Jacklyn Gonzales Martin #0090242<br>Gerhardstein & Branch Co. LPA<br>Attorneys for Plaintiffs<br>432 Walnut Street, Suite 400<br>Cincinnati, Ohio 45202<br>(513) 621-9100<br>(513) 345-5543 fax |

|  | agerhardstein@gbfirm.com<br>jbranch@gbfirm.com<br>jgmartin@gbfirm.com<br>*Attorneys for Plaintiffs* |
|---|---|

## CERTIFICATE OF SERVICE

I hereby certify that on October 16, 2013, a copy of the foregoing pleading was filed electronically. Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system. Parties may access this filing through the Court's system. I further certify that a copy of the foregoing pleading and the Notice of Electronic Filing has been served by ordinary U.S. mail upon all parties for whom counsel has not yet entered an appearance electronically.

/s/ Alphonse A. Gerhardstein  
Alphonse A. Gerhardstein # 0032053
