IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| JAMES OBERGEFELL, et al., | : | |
| | : | |
| Plaintiffs, | : | Case No. 13-CV-501 |
| | : | |
| v. | : | Judge Timothy S. Black |
| | : | |
| DR. THEODORE E. WYMYSLO, M.D., | : | |
| | : | |
| Defendant. | : | |

## DEFENDANT DR. THEODORE WYMYSLO'S REPLY IN SUPPORT OF HIS MOTION TO DISMISS PLAINTIFF ROBERT GRUNN

Defendant Dr. Theodore Wymyslo's Motion to Dismiss presents a facial attack, challenging the sufficiency of the Second Amended Complaint itself. The Motion to Dismiss specifically details why Robert Grunn's pleadings are insufficient to confer standing or state a justiciable claim. In responding to the Motion to Dismiss, Mr. Grunn fails to address the numerous deficiencies of Plaintiff's Second Amended Complaint. Instead he submits, and relies heavily upon, two after-the-fact declarations that are not a part of the pleadings in this case.

The problem with Mr. Grunn's approach is two-fold. First, within the context of a facial attack, the Court should not consider matters—such as the declarations of Robert Grunn and James Obergefell—outside of the Second Amended Complaint when determining whether Mr. Grunn pleaded standing with specificity. Second, and much more fundamentally, even considering the new assertions within the declarations, Mr. Grunn fails to establish standing or set forth a proper claim.

I.   **MR. GRUNN LACKS STANDING.**

   A.   **This facial attack challenges the sufficiency of the pleadings and should be evaluated based on the allegations in the complaint alone.**

Because Defendant Wymyslo is lodging a *facial* challenge to Mr. Grunn's standing, the issue before this Court is the sufficiency of the Second Amended Complaint, and the Court should not consider evidence or pleadings outside of it.  A plaintiff's threshold burden to establish standing is an "indispensable part of [his] case," *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  The burden of establishing standing differs depending upon the procedural stage of the litigation.  *Id.*  But it is well-settled that at the initial pleading stage, "[a] plaintiff bears the burden of demonstrating standing and *must plead its components with specificity*."  *Wuliger v. Manufacturers Life Ins. Co.*, 567 F.3d 787, 793 (6th Cir. 2009) (emphasis added).  Mr. Grunn fails to satisfy this burden.

In light of a plaintiff's continuous and evolving burden, challenges to jurisdiction (and standing) under Rule 12(b)(1) can take the form of either factual attacks or facial attacks.  *See McCormick v. Miami Univ.*, 693 F.3d 654, 658 (6th Cir. 2012).  A factual attack "challenge[s] the factual existence of subject matter jurisdiction[,]" *COAST Candidates PAC v. Ohio Elections Comm'n*, No. 12-4158, 2013 WL 4829216, at *3 (6th Cir. Sept. 11, 2013), and allows the Court to "consider evidence outside of the pleading . . . ." *Edizer v. Muskingum Univ.*, No. 2:11–CV–799, 2012 WL 4499030, at *4 (S.D. Ohio Sept. 28, 2012).

However, "[a] facial attack [such as this one] is a challenge to the sufficiency of the pleading itself."  *Coast*, 2013 WL 4829216, at *3 (internal quotations omitted).  A facial attack is, therefore, analogous to a motion under Rule 12(b)(6).  *See Allstate Ins. Co. v. Global Med. Billing, Inc.*, 520 F. App'x 409, 411 (6th Cir. 2013).  Because a facial attack challenges the pleadings, a court should not consider matters outside the pleadings.  *See, e.g., George v. AZ*

*Eagle TT Corp.*, — F. Supp.2d —, 2013 WL 4446543, at *1 (D. Ariz. 2013) ("Defendant brings a facial challenge to Plaintiff's standing to pursue his claims.  The motion to dismiss does not present evidence outside of the pleadings.  Therefore, the Court will not consider the affidavit under Rule 12(b)(1)."); *PennEnvironment v. PPG Ind., Inc.*, —F. Supp.2d —, 2013 WL 4045794, at *7 (W.D. Pa. 2013) (holding that the defendant's "attack on [the plaintiffs'] standing to maintain this suit is a facial one which does not require reference to materials outside the complaint"); *Hernandez v. Vallco Intern. Shopping Ctr., LLC*, No. 10–CV–02848, 2011 WL 890720, at *3 (N.D. Cal Mar. 14, 2011) ("In evaluating a facial attack, the court looks only to the pleadings.").

Mr. Grunn's citation to *Warth v. Seldin*, 422 U.S. 490, 501 (1975) must be considered in light of these general standards.  In *Warth*, the Supreme Court acknowledged that—in the context of a Rule 12(b)(1) motion to dismiss—a trial court could "allow or [] require the plaintiff to supply, by amendment to the complaint or by affidavits, further particularized allegations of fact deemed supportive of plaintiff's standing." 422 U.S. at 501.  But the Supreme Court did not relieve plaintiffs of the requirement to plead standing.  Rather, the Court explicitly stated that a "plaintiff still must allege a distinct and palpable injury to himself . . . ." *Id.*  The Court's reference to amendments or affidavits is better understood as implicitly recognizing the different types of standing challenges.  After all, a facially deficient pleading would require an amended complaint, while a factual deficiency could only be cured through the submission of evidence. *Cf. Glenn v. Holder*, 690 F.3d 417, 420 (6th Cir. 2012) ("[S]tanding cannot be inferred from averments in the pleadings; rather, it must affirmatively appear in the record from sufficient factual matter in the complaint so as to state a claim to relief that is plausible on its face.") (internal quotations omitted).

Furthermore, either course of action that *Warth* suggests—further amendment or submission of affidavits—is inappropriate under the circumstances of this case. Given that Plaintiffs have already had multiple opportunities to amend the complaint, Dr. Wymyslo opposes (and requests to be heard regarding) any further leave to amend. Moreover, given the standards described above, the Court should not allow Mr. Grunn to submit affidavits in response to a facial attack. From Dr. Wymyslo's perspective, any further amendment or conversion of the Motion to Dismiss into a factual attack would place the current case schedule in jeopardy.

Dr. Wymyslo brings a facial attack on the Second Amended Complaint. Its failure *on its face,* to allege standing with specificity is dispositive of Dr. Wymslo's Motion. Mr. Grunn bears the burden of pleading standing and cannot escape this burden by submitting the procedurally improper declarations of Mr. Obergefell and Mr. Grunn, which he has not moved for leave to file. Under these circumstances, the Court should not allow Mr. Grunn to unilaterally transform Dr. Wymyslo's Motion into a factual attack—and thus relieve Mr. Grunn of his burden to plead standing—by considering the declarations.

    **B.**    **Mr. Grunn fails to allege injury-in-fact.**

But even if this Court were to consider the new declarations as somehow supplementing the allegations in the Second Amended Complaint, Mr. Grunn's collective assertions fall far short of alleging injury-in-fact sufficient to confer Article III standing. Mr. Grunn's sole theory of harm is that "he fears criminal prosecution" for purposely providing false information on a death certificate in the event he records the desired marital status and surviving spouse information on the death certificate of a decedent who was married to a same-sex partner in a state recognizing same-sex marriage. (Mem. Opp'n 5.) Mr. Grunn concedes, however, that the risk of this theoretical prosecution depends on the chain of events that Dr. Wymyslo described in

his Motion to Dismiss. (*Id*. at 11.) And he *admits* that this chain of events "illustrate[es] a prosecution that is not 'certainly impending.'" (*Id*.)

These concessions preclude Mr. Grunn's claim to standing. Case after case confirms that "'[a] threatened injury must be certainly impending to constitute injury in fact.'" *White v. United States*, 601 F.3d 545, 553 (6th Cir. 2010) (quoting *Rosen v. Tenn. Comm'r of Fin. & Admin.*, 288 F.3d 918, 929 (6th Cir. 2002)). *Babbitt v. United Farm Works National Union*, on which Mr. Grunn relies heavily in support of his claim to standing, re-emphasizes this point. 442 U.S. 289, 298 (1979) ("If the injury is certainly impending, that is enough."); *see also Clapper v. Amnesty Intern. USA*, 133 S.Ct. 1138, 1143 (2013) (recognizing the "well-established requirement that threatened injury must be certainly impending") (internal quotations omitted). As these cases, and those discussed in Dr. Wymyslo's Motion to Dismiss demonstrate, Mr. Grunn's claim must be dismissed for lack of standing.

Admittedly unable to satisfy this well-established principle of Article III standing, Mr. Grunn instead suggests that somehow the standards do not apply to him merely because the future fear he hypothesizes happens to be criminal sanctions. (*See* Mem. Opp'n 7) ("Perhaps because criminal prosecutions are such a serious injury, the bar to achieve standing appears to have been set quite low."). No such exemption to the Article III requirements exists. To the contrary, a plaintiff seeking pre-enforcement review must still satisfy the injury-in-fact requirement. *See Coast*, 2013 WL 4829216 at *8 (holding that a "chain of events" was "too attenuated to confer standing" within the pre-enforcement context). A "general fear of prosecution under an unchallenged federal law" is "clearly" insufficient to establish standing. *Adult Video Assoc. v. Newsom*, 71 F.3d 563, 566 (6th Cir. 1995).

Mr. Grunn relies on two cases as purported support for his contention that he has suffered or is about to suffer injury-in-fact: *Babbitt* and *Planned Parenthood v. Taft*, 337 F.Supp.2d 1040 (S.D. Ohio 2004). Neither case stands for the proposition that a plaintiff has standing where, as here, a plaintiff does nothing more than profess a subjective fear of a theoretical risk of criminal prosecution.

In *Babbitt*, the Court held the plaintiffs had standing to challenge a provision of an Act that made it a crime to engage in "dishonest, untruthful, and deceptive publicity" to induce or encourage a consumer to refrain from purchasing or using a product. 442 U.S. at 301. The plaintiffs demonstrated that they had actively engaged in boycott activities and intended to continue in the future. *Id.* Because "erroneous statement is inevitable in free debate," it was likely that the intended conduct would directly run afoul of the statute, rendering plaintiffs' fear of prosecution under the statute sufficiently immediate to satisfy Article III. *Id.* at 301-03.

Similarly, in *Planned Parenthood,* the plaintiff doctor alleged that he routinely performed an abortion procedure that was indisputably prohibited by the challenged act. 337 F.Supp.2d at 1044. Because the plaintiff "face[d] a direct risk of enforced prosecution by Defendants under the Act," his fear of prosecution was sufficiently credible to satisfy Article III standing. *Id.* (reversed in part on other grounds, 439 F.3d 304 (6th Cir. 2006)).

As these cases illustrate, the standing inquiry hinges not on the severity of the threatened harm, as Mr. Grunn suggests, but on the likelihood that such the threatened harm will actually materialize. In stark contrast to the "inevitable" and "direct" risks the plaintiffs confronted in *Babbitt* and *Planned Parenthood*, the risk that Mr. Grunn alleges here—that he will be prosecuted for purposely making a false statement on a death certificate for recording the out-of-state marital status of a decedent married to a same-sex partner—is purely conjectural. Mr.

6

Grunn himself only speculates as to whether anyone would ever construe such conduct as a violation of Ohio Rev. Code § 3705.29(A)(1). He asks: "Is it accurate to label John as 'married' when he was married to a same-sex partner in a state where such marriage is legal but when he dies in Ohio?" and "If Robert Grunn fills out John's death certificate application in that manner will he be protected from prosecution?" (Mem. Opp'n 2.) His desire for an advisory legal opinion from this Court does not confer standing.

Further compounding the speculative nature of Mr. Grunn's alleged harm is the fact that Dr. Wymyslo has no authority to prosecute Mr. Grunn under Ohio Rev. Code § 3705.29(A)(1). *See* Ohio Rev. Code § 3701.58 ("The prosecuting attorney shall prosecute all violations of section[] . . . 3705.29 of the Revised Code."). Consequently, even if Mr. Grunn made a statement on a death certificate that was construed as a false statement made purposefully, Mr. Grunn's harm would materialize only if a county prosecutor—not before this Court—were to receive a referral and decide to prosecute Mr. Grunn for the alleged violation. Notably, Mr. Grunn does not allege that he or anyone else has ever been prosecuted for such conduct or even that prosecution has ever been threatened.

In other words, Mr. Grunn's theory of harm amounts to a claim that *if* he records the marital information of a decedent as married to a same-sex partner; and *if* the local registrar to whom the death certificate is submitted, or the Ohio Department of Health, deems the information to be a "false," and determines that Mr. Grunn purposely made the false statement in violation of Ohio Rev. Code Section 3705.29(A)(1); and *if* the matter is referred to a county prosecutor with jurisdiction over the offense for prosecution and the county prosecutor exercises his or her discretion and decides to prosecute the case; and *if* a grand jury votes to indict Mr. Grunn for the offense, *then* Mr. Grunn could be prosecuted for his conduct. Such a speculative

7

theory of harm does not satisfy the standing requirement. *See also, e.g.*, *White v. United States*, 601 F.3d 545, 554 (6th Cir. 2010) (deeming plaintiffs' fear of criminal prosecution insufficient to satisfy Article III where it depended on a chain of events that "veer[ed] into the area of speculation and conjecture"); *Adult Video Assoc.*, 71 F.3d at 567 ("At best, Adult Video alleges a hypothetical harm *if,* at some point in the future, its members decide to distribute 'After Midnight' in the Western District of Tennessee; the government decides to prosecute for that distribution; and *if* a jury subsequently finds the film to be constitutionally protected material. This is precisely the sort of hypothetical future harm prohibited by current standing requirements.") (emphases in original).

In sum, Mr. Grunn's highly speculative theory of harm does not satisfy Article III's standing requirements, even if this Court were to consider the new declarations in addition to the Second Amended Complaint. Because Mr. Grunn has not alleged a sufficient injury-in-fact, he cannot meet his burden of providing standing on his own behalf or on behalf of third parties. His claim must therefore be dismissed.

    **C.    Mr. Grunn lacks standing to sue on behalf of third parties.**

Even apart from his lack of injury-in-fact, Mr. Grunn fails to establish third-party standing for the additional and independent reasons that he demonstrates neither: (1) a close relationship with the future clients he desires to represent nor (2) that such clients face a hindrance in pursuing their own rights. *See Boland v. Holder*, 682 F.3d 531, 537 (6th Cir. 2012) ("First, we have asked whether the party asserting the right has a 'close' relationship with the person who possesses the right. . . . Second, we have considered whether there is a 'hindrance' to the possessor's ability to protect his own interests."); (*see also* Mot. Dismiss 10-14).

Through his Memorandum in Opposition and declarations, Mr. Grunn attempts to alter his theory of third-party standing. Mr. Grunn now purports to sue on behalf of an existing client base, apparently consisting of Plaintiffs Mr. Arthur and Mr. Obergefell. Regardless of whether the Court considers Mr. Grunn's new theory or the theory he actually pled, Mr. Grunn fails to satisfy the requirements of third-party standing.

Mr. Grunn cannot rely on his newly-formed relationship with Mr. Arthur and Mr. Obergefell to establish third-party standing. To begin with, "[a] plaintiff's standing to sue is determined as of the time the complaint is filed." *Coast*, 2013 WL 4829216, at *5 (internal quotations omitted). Although Mr. Grunn entered this action on September 26, 2013, through the Second Amended Complaint, Mr. Obergefell states that he did not retain the services of Mr. Grunn until October 14, 2013. (Obergefell Decl. ¶ 5.) Accordingly, such a relationship does not allow Mr. Grunn to participate in the current lawsuit.

Moreover, even if a close relationship between Mr. Grunn and those Plaintiffs were found to exist, Mr. Grunn has not pleaded facts to demonstrate that Mr. Obergefell and Mr. Arthur require his legal assistance. They already have sued for the relief they desire. Thus, the Court should not allow Mr. Grunn to use these other Plaintiffs as proxies for his litigation.

Any claim based on Mr. Grunn's unidentified past client fails on similar grounds. Mr. Grunn's allegations do not provide any information regarding this client's circumstances (beyond generalized categorizations). There is no indication that this surviving client (or Mr. Grunn) faces any impending harm with regard to the unspecified circumstances involving a death certificate.

Despite Mr. Grunn's current suggestion, the pleadings make clear that he is pursuing the rights of hypothetical future clients. Specifically, Mr. Grunn alleges that he is representing a

9

class of same-sex couples (married in other jurisdictions) "*who will be* his clients and customers . . . ." (Second Am. Compl. ¶ 49 (emphasis added).) The relief Mr. Grunn seeks confirms the future clientele he is attempting to represent. He does not request relief specifically relating to Mr. Arthur or some past client. Instead, he requests a declaration affecting all "same-sex couples married in jurisdictions that authorize same-sex marriage *who become* [his] clients . . . ." (Compl. VII.B (emphasis added).) Given Mr. Grunn's broad request for prospective relief, his contention that he represents an existing class of clients is inaccurate.

Considering the putative group of future hypothetical clients Mr. Grunn is actually claiming to represent, he fails to satisfy either the close relationship requirement or the hindrance prerequisite. With regard to the close relationship requirement, *Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004), is directly on point. The Supreme Court held that a hypothetical client relationship does not satisfy the close relationship component of third-party standing. *Kowalski*, 543 U.S. at 130-31. Like Mr. Grunn, the plaintiffs in *Kowalski* were attempting to invoke the rights of unascertained clients "who will" require assistance in the future. *Id.* at 130. Facing such circumstances, the Court concluded that the hypothetical scenario constituted "no relationship at all[,]" let alone the necessary close one. *Id.* at 131.

Contrary to Mr. Grunn's suggestion, the facts of *Craig v. Boren*, 429 U.S. 190 (1976), are entirely distinguishable from the facts of this case. *Craig* involved the third-party relationship between a beer vendor and a class actively seeking access to the vendor's services, males between the ages of 18 and 21 year old. *Id.* at 193. That relationship was not hypothetical, but one of current fact. Here, on the other hand, no one is being denied access to Mr. Grunn's services. Rather, Mr. Grunn seeks relief for an unascertained and speculative future set of clients that he postulates will require his services in the future. Mr. Grunn does not know when such

10

clients will form the relationship on which he seeks to predicate his claim. In light of these circumstances, Mr. Grunn's relationship with the class he seeks to represent is hypothetical. Consequently, he cannot rely on *Craig* to avoid the binding precedent of *Kowalski*.

Finally, Mr. Grunn does not demonstrate a hindrance. Importantly, Mr. Grunn fails to assert facts addressing the hindrance requirement within the Second Amended Complaint. The belated declarations also fail to address the issue. Given Mr. Grunn's burden to plead standing requirements with specificity, this failure again negates any claim to third-party standing. And in addressing hindrance within his opposition memorandum, Mr. Grunn relies solely on speculation regarding obstacles future same-sex couples might face. The problem with such an approach, however, is that it forces the Court to guess regarding the circumstances of unknown future clients. Moreover, the other Plaintiffs in this case are pursuing their own claims concerning their asserted rights, further demonstrating that Mr. Grunn fails to satisfy the hindrance requirement for third-party standing. *See e.g., Boland*, 682 F.3d at 536-37.

## II.     MR. GRUNN'S CLAIM IS NOT RIPE FOR ADJUDICATION.

Even if Mr. Grunn could overcome the obstacles to standing, his claim must be dismissed because it is not ripe for adjudication. As previously explained, Mr. Grunn alleges only an abstract and theoretical fear of future prosecution. Ripeness demands more.

A claim is not ripe if it rests on contingent future events that may not occur as anticipated, or indeed may not occur at all. *Texas v. United States,* 523 U.S. 296, 300 (1998). Mr. Grunn's claim—whether it is compliance with a law with which he disagrees or fear of prosecution—is not ripe where, as here, it rests on a purely speculative chain of events premised on a theoretical future application of the law. *See Norton v. Ashcroft*, 298 F.3d 547, 554 (6th Cir. 2002). Rather, to establish a justiciable controversy, the complaint must allege "concrete facts"

that do not require this Court to speculate concerning how the law might be applied to Mr. Grunn. *See Lawrence v. Welch*, 531 F.3d 364, 373 (6th Cir. 2008) (Sutton, J., concurring).

Mr. Grunn does not even try to argue that the Second Amended Complaint alleges any such concrete facts; his Memorandum in Opposition attempts to rest on an amalgam of assertions drawn from the new declarations. (*See* Mem. Opp'n 2-4.) Further, his improper reliance on declarations outside the four corners of the Complaint does not render his fear of prosecution less abstract. Although the declarations state that Plaintiffs Arthur and Obergefell retained Mr. Grunn's services after this lawsuit was filed, this relationship does not eliminate the chain of events that would need to occur in order for Mr. Grunn to face prosecution for completing Mr. Arthur's death certificate in the fashion he proposes. *Cf. SBA List v. Driehaus,* Nos. 11–3894, 11–3925, 2013 WL 1942821, at *4-7 (6th Cir. May 13, 2013) (table); *Warshak v. United States*, 532 F.3d 521, 525 (6th Cir. 2008).

Nor is Mr. Grunn aided by his allegation that he already served a surviving spouse who was in a same-sex marriage. (Mem. Opp'n 3.) The fact that Mr. Grunn has previously served clients who were same-sex couples married in other jurisdictions, yet does not allege that he has ever been prosecuted, only bolsters Dr. Wymyslo's position. The absence of past sanctions arising from such clients only confirms the purely conjectural nature of any future harm.

Simply put, Mr. Grunn does not allege a concrete application of Ohio Rev. Code § 3507.29 against him, or anyone else, by Dr. Wymyslo. He instead theorizes, and asks this Court to theorize, about how Ohio law may be applied in a hypothetical future case. *SBA List,* 2013 WL 1942821, at *4-7 (a concrete application of state law or imminent threat of future enforcement is necessary to render claims sufficiently ripe for review); *see also Brown v. Hotel & Restaurant*, 468 U.S. 491, 512 (1984) ("Because the Commission never imposed this sanction

on Local 54, we are presented with no concrete application of state law. The issue is hence not ripe for review . . . .").

Mr. Grunn's Memorandum in Opposition also fails to point to any allegation in the Second Amended Complaint regarding hardship *to the parties* of withholding court consideration. For the first time in his Memorandum in Opposition he asserts that it is a "huge hardship" to litigate this issue "when the next grieving surviving spouse is in his funeral home." (Memo Opp'n 18.)   No such person is identified, and the procedural history in this case belies this assertion.

Even if the Court overlooks Mr. Grunn's failure to allege hardship in the Second Amended Complaint, which it should not, a "conceivable" theory of harm in the abstract does not justify review. In *Cooley v. Granholm*, 291 F.3d 880, 883 (6th Cir. 2002), the Court considered a challenge to a statute that prohibited a category of "physician-assisted suicide." The plaintiffs alleged that the restriction was unconstitutional as applied to "competent, terminally ill patients suffering irremediable pain" whose euthanasia request could not be met by one of the permitted methods of euthanasia, but did not "clearly describe" any such patient. *Id*. at 883. Although the plaintiffs' theory of harm was "conceivable," and despite the evident risk of hardship, the court refused to adjudicate the plaintiff's constitutional claims in the abstract. *Id.* This Court should similarly "hesitate to lay down abstract principles" based solely on the theorized hardship to hypothetical future clients. *Id.*; *see also Catholic Diocese of Nashville v. Sebelius*, No. 3–12–0934, 2012 WL 5879796, at *4 (M.D. Tenn. Nov. 21, 2012) ("Considerations of hardship that might result from delaying review will rarely overcome the finality and fitness problems inherent in attempts to review tentative positions.").

### III. EVEN IF MR. GRUNN'S CLAIM WERE JUSTICIABLE, THE COURT SHOULD DECLINE JURISDICTION OVER HIS DECLARATORY JUDGMENT ACTION.

This Court should decline to entertain Mr. Grunn's request for a declaratory judgment even if it finds that Mr. Grunn's claim is justiciable. Under the Declaratory Judgment Act, the Court has discretion, based on a multi-factor test, to decline jurisdiction. *See Travelers Indem. Co. v. Bowling Green Professional Assoc., PLC,* 495 F.3d 266, 271 (6th Cir. 2007); *Grand T.W.R. Co. v. Consolidated Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1994). Dr. Wymyslo has explained why these factors militate against exercising jurisdiction over Mr. Grunn's declaratory action.[1] (Mot. Dismiss 15-18.) Mr. Grunn does not address this analysis, but instead conflates the issue with standing and ripeness concerns. Although such areas involve related considerations, the Court must undertake an independent analysis to determine whether it is appropriate to consider Mr. Grunn's claim.

Perhaps of greatest importance to this case, the Court must consider "whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach on state jurisdiction . . . ." *Travelers*, 495 F.3d at 271. Here, Mr. Grunn's entire connection to this case is based on his professed fear of a future criminal prosecution for making a purposefully false statement under Ohio Rev. Code Section 3705.29(A)(1) in some future hypothetical situation, but he identifies no Ohio court decision reflecting imminence. This Court should not undertake the task of interpreting a state law on a matter of significant importance before the State has itself had an opportunity to do so. Considering this and the other

---

[1] Within his responsive briefing, Mr. Grunn implies that he is seeking both declaratory relief and an injunction. (Mem. Opp'n 1.) The Second Amended Complaint does not support this representation. With regard to Mr. Grunn, the Second Amended Complaint only requests declaratory relief. (Second Am. Compl. VII.B.) Although the other Plaintiffs do seek an injunction, the requested injunction would apply under and in the terms of the *Second Amended Complaint* to "each married plaintiff[]" only- not to Mr. Grunn. (*Id.* at VII.C.)

discretionary factors, the Court should not jump into this area—which shares a close nexus with state law and policy—based on such loose footing.

### IV. MR. GRUNN FAILS TO STATE AN EQUAL PROTECTION CLAIM ON HIS OWN BEHALF

Finally, Mr. Grunn's attempt to pursue relief "on his own behalf" (Second Am. Compl. ¶ 1) must fail for the additional reason that Mr. Grunn fails to state a claim. Within his Motion to Dismiss, Dr. Wymyslo addressed why Mr. Grunn fails to state any equal protection, or other claim, based on his own rights. (Mot. Dismiss 18-20.) Although Mr. Grunn attempts to respond to Dr. Wymyslo's other points, he does not even try to explain how he states any independent claim. Instead, the Memorandum in Opposition confirms that Mr. Grunn is attempting to bring an equal protection claim based on the hypothetical situations of third parties. In particular, every one of Mr. Grunn's arguments rests on the underlying premise that Mr. Grunn should be allowed to advocate the equal protection rights of others.

In light of these circumstances, the Court must dismiss the claim Mr. Grunn purports to bring on his own behalf. He states no such claim. Moreover, because Mr. Grunn is actually trying to assert a third-party claim he must satisfy *both* Article III *and* prudential third-party standing requirements. As discussed above, Mr. Grunn fails to do so.

### V. CONCLUSION

For the above reasons, and those set forth in Dr. Wymyslo's Memorandum in Support of his Motion to Dismiss, this Court should dismiss in its entirety the claim of funeral director Robert Grunn and his corresponding request for broad-sweeping declaratory relief.

        Respectfully submitted,

        MICHAEL DeWINE
        Ohio Attorney General

        /s/ *Bridget E. Coontz*
        BRIDGET E. COONTZ (0072919)*
            *Lead and Trial Counsel
        ZACHERY P. KELLER (0086930)
        Assistant Attorneys General
        Constitutional Offices Section
        30 East Broad Street, 16th Floor
        Columbus, Ohio 43215
        Tel: (614) 466-2872; Fax: (614) 728-7592
        bridget.coontz@ohioattorneygeneral.gov
        zachery.keller@ohioattorneygeneral.gov

        *Counsel for Dr. Wymyslo*

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was filed electronically on October 21, 2013. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

s/ *Bridget E. Coontz*
BRIDGET E. COONTZ (0072919)*
Assistant Attorney General
