UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| JAMES OBERGEFELL, *et al.*, | : | Case No. 1:13-cv-501 |
| Plaintiffs, | : | Judge Timothy S. Black |
| vs. | : | |
| THEODORE E. WYMYSLO, M.D., *et al.*, | : | |
| Defendants. | : | |

**ORDER DENYING THE MOTION TO DISMISS
OF DEFENDANT DR. THEODORE WYMYSLO**

As fully anticipated by all parties, Plaintiff John Arthur died very recently on October 22, 2013. The question now arises whether this lawsuit dies with him. Believing that courts are designed to be places of recourse, and that judges are not to duck legal questions simply because they are difficult or because the initial status quo has changed, this Court determines that this lawsuit is <u>not</u> amenable to dismissal but instead shall proceed to a full and final disposition, in the trial court, before the new year.

**Procedural Posture**

On July 19, 2013, James Obergefell and John Arthur, a same-sex couple legally married under the laws of Maryland, filed this civil lawsuit challenging Ohio's prohibitions against same sex marriages. (Doc. 1). They sought emergency relief from the Court, relating to Mr. Arthur's future death certificate, on the basis that he was terminally ill with amyotrophic lateral sclerosis and his death was imminent. (*Id.* at 6). Specifically, they sought a ruling from the Court that the Ohio Department of Vital

Statistics be required to accept a death certificate which identified Mr. Arthur as "married" at the time of his death and listed Mr. Obergefell as his surviving "spouse." Upon complete briefing and careful analysis, the Court accepted Plaintiffs' position and entered its Order requiring that Mr. Arthur's death certificate reflect that truth that he was "married" at the time of his death. The Court found that Ohio's discrimination against recognizing same sex marriages served no legitimate state purpose, other than to discriminate against gay citizens because of their status, and therefore likely violated the promise of the federal Constitution that "No State shall make or enforce any law which shall … deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV. The Court found especially compelling Ohio's long-standing history of recognizing any and all out-of-state marriages, as long as they were lawful in the state where the marriage was celebrated. The Court pointed out, as examples, Ohio's willingness to recognize out of state marriages of first cousins and those of minors, even though those unions are not authorized to be performed in Ohio under its marriage laws.

About a month later, on September 3, 2013, Plaintiffs filed a first Amended Complaint, adding the claims of Plaintiff David Michener. (Doc. 24). Mr. Michener raised a similar as-applied challenge concerning the death certificate of his husband, William Ives, who died unexpectedly on August 27, 2013. (*Id.* at ¶¶ 17, 33). While Mr. Ives awaited cremation, this Court issued its second order requiring Ohio to recognize on his death certificate his same sex marriage, legally performed out of state.

On September 26, 2013, Plaintiffs filed a Second Amended Complaint, this time adding as a plaintiff Robert Grunn, a licensed funeral director in the State of Ohio.[1] (Doc. 33). Mr. Grunn seeks to brings claims challenging the constitutionality of Ohio's same sex marriage prohibitions, both on his own behalf, and on behalf of future clients, who are surviving spouses of deceased same-sex married partners. (*Id.*)

---

[1] The following allegations appear in Plaintiffs' Second Amended Complaint (Doc. 33) and the declarations of Mr. Grunn (Doc. 34-1) and Mr. Obergefell (Doc. 48-1). The declarations are appropriately considered in ruling on Dr. Wymyslo's motion, as "it is within the trial court's power to allow or to require the plaintiff to supply, by amendment to the complaint or by affidavits, further particularized allegations of fact deemed supportive of plaintiff's standing." *Warth v. Seldin*, 422 U.S. 490, 501 (1975).

As a funeral director, one of Mr. Grunn's responsibilities is to originate death certificates. To do this, he collects personal information from the next of kin of the deceased, including whether the deceased was married, single, widowed, or divorced; and, if married, he collects the surviving spouse's name. Mr. Gunn then he enters the information into the Electronic Death Registration System ("EDRS") maintained by the Ohio Department of Health.

Mr. Grunn provides his clients with certified copies of their loved ones' death certificates, which are used to, among other things, receive life insurance payouts, claim social security survivors benefits, administer wills, and deed automobiles, real estate, and other property. Due to grief and inexperience with death, his clients often do not realize the importance of death certificates until after he has filed them and returned certified copies.

Mr. Grunn must sign every death certificate he originates, and he knows that if he purposely makes a false statement within a death certificate he may face criminal penalties.

Nevertheless, Mr. Grunn declares under oath that the next time he originates a death certificate for a decedent who was legally married to a same-sex spouse in another state, he intends to list the decedent as "married" and to list the surviving partner as the decedent's "spouse."

By doing so, Mr. Grunn fears that Ohio will initiate a criminal prosecution of him for purposely making a false statement on a death certificate.

Mr. Grunn files approximately 40 death certificates per month, and his business is growing. He has already served two same-sex couples married in other jurisdictions, including Mr. Obergefell and Mr. Arthur, and Mr. Obergefell plans to refer his friends to Mr. Grunn in the future. Mr. Grunn is gay himself, and he runs his business from the previous site of Carol's On Main, a gay-friendly bar, apparently well-known within the Cincinnati gay community. (*See* Docs. 33, 34-1, and 48-1).

## ANALYSIS

Shortly after the death of John Arthur, the state Defendant has moved to dismiss the claims against him.  The state argues that Plaintiff Grunn lacks authority to pursue this lawsuit, either on his own behalf or on behalf of future same sex marriage widows or widowers.  The legal attack raises hard questions regarding sophisticated legal concepts like standing and ripeness.  In simplified sum, Defendant argues that now that Messers. Arthur and Ives have died, there exists no live controversy for the Court to adjudicate and that Mr. Grunn's attempt to take up the challenge is without legal basis.  Upon close review and careful analysis, the Court disagrees.

**A.     First-Party Claim**

A plaintiff cannot sue based on "a generalized grievance against [assertedly] illegal government conduct[.]"  *United States v. Hayes*, 515 U.S. 737, 743 (1995).  "The rule against generalized grievances applies with as much force in the equal protection context as in any other."  *Id.* at 743-44 (recognizing that the injury from discrimination relates to the person actually denied equal treatment); *see also Parker v. Ohio*, 263 F. Supp. 2d 1100, 1103 (S.D. Ohio 2003).

Therefore, to properly plead a first-party claim on his own behalf, Mr. Grunn must allege that he himself has actually suffered the deprivation of constitutional rights alleged in the Complaint.  *See, e.g., LaFountain v. Harry*, 716 F.3d 944, 950 (6th Cir. 2013); *Loesel v. City of Frankenmuth*, 692 F.3d 452, 461 (6th Cir. 2012).

On the record before this Court, Mr. Grunn has <u>not</u> met these requirements as he fails to plead a violation of his own right to equal protection of law, or any other claim

based on a violation of his own constitutional rights. The only claim brought in the Second Amended Complaint is a 42 U.S.C. § 1983 claim based on the alleged violation of the constitutional rights of same-sex couples married in other jurisdictions. Mr. Grunn is not asking for relief that will remedy any alleged unconstitutional treatment that he himself has suffered at the hands of anyone acting under color of state law.

Consequently, Mr. Grunn has failed to meet pleading requirements to state a claim on his own behalf, and his attempt to do so must be dismissed.

### B. Third-Party Claim

But Mr. Grunn also seeks to bring claims on behalf of his clients and future clients, whose rights to equal protection of law (and to due process of law) are allegedly violated by Ohio's prohibitions against recognition of same sex marriages.

#### 1. Article III Standing

"The doctrine of standing serves to identify those disputes which are appropriately resolved through the judicial process." *Whitmore v. Arkansas*, 495 U.S. 149, 154 (1990). The doctrine is an evolving body of law with its "core component" being "the case-or-controversy requirement of Article III," but "some of its elements express merely prudential considerations that are part of judicial self-government." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (1992). As Justice Scalia explained in *Lujan*:

> Over the years, our cases have established that the irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of – the injury has to be fairly traceable to the challenged action of the defendant, and not the result

5

of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Id.* at 560-61. Mr. Grunn satisfies all three of these elements.

### a. Injury in Fact

Mr. Grunn alleges that the injury he endures is a well-founded fear of criminal prosecution.

Fear of criminal prosecution is one category of injury recognized under the standing doctrine, and "one does not have to await the consummation of threatened injury to obtain preventative relief." *Babbit v. United Farm Workers Nat. Union*, 442 U.S. 289, 298 (1979) (internal citation omitted). More specifically, according to the Supreme Court, "[i]t is not necessary that the plaintiff first expose himself to actual arrest or prosecution to be entitled to challenge the statute that he claims deters the exercise of his constitutional rights." *Id.* (internal citation omitted). Instead, to state a claim based on fear of criminal prosecution, Mr. Grunn must show that he was or is threatened by prosecution, or that a prosecution is likely, or that it is at least remotely possible. *Id.* at 298-99.

In *Babbit*, the Supreme Court determined that the farm worker plaintiffs had standing to challenge a state statute criminalizing the use of false statements to dissuade consumers from buying products, even though the plaintiffs had no intention of making false statements, but had engaged in consumer publicity campaigns in the past and intended to continue boycott activities in the future. *Id.* at 301-02. The Court found standing on the theory that the potential for prosecution impeded the full exercise of the

6

workers' First Amendment rights -- despite the government's insistence that the "criminal penalty provision ha[d] not yet been applied and may never be." *Id.* at 302. The Court found that the threat of criminal prosecution was "not imaginary or wholly speculative" and that "the State ha[d] not disavowed any intention of invoking the criminal penalty provision." *Id.*

The same is true here. Mr. Grunn fears prosecution under a statute that the State of Ohio has declined to disavow the intention to enforce against him. The statute giving rise to the injury specifically targets funeral directors, Mr. Grunn has submitted evidence showing perceptible harm, his prosecution is possible, and he has expressed the intent to continue engaging in conduct that could trigger a prosecution. In fact, because of Mr. Grunn's expressed intent to continue recognizing out-of-state gay marriages on death certificates, the threat he faces is even less "imaginary or wholly speculative" than the one faced by the farm workers in *Babbit*, who had no intention of violating the statute in question. Moreover, that the threat Mr. Grunn faces is neither imaginary nor speculative is also demonstrated by the fact that Defendant Dr. Camille Jones shares the same fear of prosecution. (Doc. 10 at ¶¶ 7, 11).

Thus, Mr. Grunn has evidenced the first prerequisite to Article III standing.

### b. Fairly Traceable to Challenged Action

Standing also requires "a causal connection between the injury and the conduct complained of – the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560.

7

Mr. Grunn's fear of prosecution is fairly traceable to Dr. Wymyslo. Mr. Grunn has a duty to originate death certificates by collecting the personal information of decedents and then registering that information with the Ohio Department of Health. Ohio Rev. Code § 3705.16(B). If he "purposefully make[s] any false statement" on a death certificate, he could be prosecuted and, if convicted, incarcerated for up to five years and fined up to $10,000. Ohio Rev. Code. §§ 3705.29(A)(1), 3705.99(A). Under Ohio law, "all prosecutions and proceedings by the Department of Health for the violation of section[…] 3705.29[…] of the Revised Code[…] shall be instituted by the director of health," *i.e.*, Dr. Wymyslo. Ohio Rev. Code § 3701.57.

Mr. Grunn's fear of prosecution is also fairly traceable to Ohio's marriage laws, which are the basis for his belief that Dr. Wymyslo will see his recognizing of out-of-state gay marriages on death certificates as purposefully making false statements on those death certificates in violation of Ohio law.

Thus, Mr. Grunn has met the second prerequisite for Article III standing.

### c. Likely to be Redressed

Finally, to accomplish Article III standing, Mr. Grunn's injury must be capable of being redressed by this Court. *Lujan*, 504 U.S. at 561. This requirement is satisfied because if this Court were to make its temporary injunction permanent, and issue a declaratory judgment setting out Mr. Grunn's rights with regard to filling out death certificates for decedents who were in out-of-state same-sex marriages, his fear of prosecution would disappear (if sustained upon appeal).

8

Based on the foregoing, Mr. Grunn has adequately satisfied all the Article III standing requirements.

### 2. Third-Party Standing

"Ordinarily, one may not claim standing […] to vindicate the constitutional rights of some third party." *Singleton v. Wulff*, 428 U.S. 106 (1976). However, this general rule can be overcome where a plaintiff (1) "shows that he himself is injured by its operation," *Barrows v. Jackson*, 346 U.S. 249, 255 (1953), (2) "has a close relationship with the person who possesses the right," and (3) where "there is a hindrance to the possessor's ability to protect his own interests." *Kowalski v. Tesmer*, 543 U.S. 125, 129-130 (2004). As established above, Mr. Grunn has demonstrated a cognizable injury, and, as discussed below, he is able to satisfy the remaining two elements as well.

### a. Close Relationship to Possessors of Right

The reason courts require "a close relationship" is to ensure that the challenger has the "appropriate incentive to challenge (or not challenge) governmental action and to do so with the necessary zeal and appropriate presentation." *Id.* at 129. The question thus arises whether Mr. Grunn has the appropriate incentive to challenge Ohio's same sex marriage ban and whether he will pursue that challenge appropriately and zealously. That is not a hard question, here.

In *Craig v. Boren*, 429 U.S. 190 (1976), the Supreme Court found that a licensed vendor of 3.2% beer properly possessed third-party standing to vindicate the rights of all 18 to 21 year-old men who might have wanted to purchase beer from her. Much like Mr. Grunn, she was "obliged to either heed the statutory discrimination […] or disobey the

9

statutory command and suffer […] sanctions." *Id.* at 194. Such challengers are "entitled to assert those concomitant rights of third parties that would be diluted or adversely affected should [the challenger's] constitutional challenge fail and the statutes remain in force." *Id.* at 195.

In challenging the close relationship alleged by Plaintiffs, Defendants rely on *Kowalski*'s holding that "no relationship at all" existed between the putative plaintiff attorneys in that case and the "hypothetical future clients" whose rights they were seeking to represent. 543 U.S. at 125, 131. *Kowalski* and similar cases have little application to the case at hand, however, as the parties whose rights Mr. Grunn is attempting to vindicate are not "hypothetical future clients," but rather are members of a specific population from a community of which Mr. Grunn himself is a part, and other members of which have retained his services in the past, and additional members of which will without question continue to retain his services in the future. At the time of the filing of the Second Amended Complaint, Mr. Grunn alleged that he had already served at least one same-sex couple married in another jurisdiction, and the fact that Mr. Arthur and Mr. Obergefell have retained him since that time further evidences the obvious likelihood that similarly situated couples will continue to do so in the future.

Mr. Grunn's clients rely on him to originate and register death certificates. They do not have access to the state EDRS, nor do they have the statutory authority to register deaths with the local registrar of vital statistics. Mr. Grunn's clients are completely reliant on him to fulfill this function. <u>The services of a funeral director, unlike those of an attorney, are services every one of us will inescapably require one day</u>. The attorneys

10

in *Kowalski*, however, could not demonstrate a close relationship (or indeed any relationship) with hypothetical future clients who might never retain their services at all. Conversely, Mr. Grunn can evidence a close relationship with future clients, given that he is acquainted with same-sex couples legally married in other states who wish to have their Ohio death certificates reflect their marriages, he has already worked with multiple such clients professionally, Mr. Obergefell will be referring his friends to Mr. Grunn, and Mr. Grunn is a gay man running his business from the site of a former gay bar. Clearly, Mr. Grunn's relationship to this constituency is neither prospective nor hypothetical but rather current and certain to continue.

Given his own position as both a member of the gay community and a professional serving it, Mr. Grunn has not only a reasonable certainty that similarly situated clients will inevitably continue to retain his services, but also a clear personal investment in challenging the unconstitutional discrimination alleged in this case "with the necessary zeal and appropriate presentation." *Kowalski*, 543 U.S. 125 at 129. In fact, Mr. Grunn is uniquely situated to be responsive to the very concerns the "close relationship" requirement is designed to address.

### b.     Hindrance to Possessors' Ability to Protect Their Own Interests

For Mr. Grunn to have third-party standing, his clients must be hindered in some way from "litigating their rights themselves." *Smith v. Jefferson Cnty. Bd of Sch. Comm'rs*, 641 F.3d 197, 207 (6th Cir. 2011). If there is some "genuine obstacle" to a third party's own standing, "the third party's absence from court loses its tendency to suggest that his right is not truly at stake, or truly important to him, and the party who is

in court becomes by default the right's best available proponent." *Singleton*, 428 U.S. at 116.

In *Craig*, the obstacle faced by the affected class was their fluid membership – the young men lost their live claims upon turning twenty-one. 429 U.S. at 194. Thus, "if the assertion of the right is to be representative […] there seems little loss in terms of effective advocacy from allowing its assertion by [the licensed vendor]." *Id*. In other words, the obstacle was that the first-party claims were "imminently moot," *Smith*, 641 F.3d at 209, just as they are here.

In the Second Amended Complaint, Mr. Grunn explains that he entered the case because "[b]y approaching the issue through his perspective, there [would] be no potential mootness argument that could stop the litigation upon the death of John Arthur." (Doc. 29 at 2). This is a recognized obstacle to an injured party's ability to vindicate his or her own constitutional rights. *See*, *e.g.*, *Craig*, 429 U.S. at 194. Moreover, Mr. Arthur was exceptional in his ability to bring this suit. He was dying of a terminal illness, and his slow decline allowed him and Mr. Obergefell to thoughtfully forecast, plan, and litigate their rights to be treated equally on the death certificate.

The second-added Plaintiff, Mr. Michener, presents a more common case in that he was surprised (actually stunned) by his husband's death. Mr. Michener was only able to vindicate his rights on such short notice because there was a live case he could join, lawyers who had prepared the issue, and a temporary restraining order already in place. Had that not been the case, Mr. Michener would have had to find an attorney who could prepare the necessary briefing, file a motion for a temporary restraining order, and obtain

12

a temporary restraining order all within the few hours while his husband's body waited to be cremated. <u>The need to file a lawsuit to ensure that a loved one's death certificate accurately reflects their marriage is an *incredible* burden to place on grieving spouses</u>. Thus with respect to the hindrance requirement, Mr. Grunn is uniquely situated to be responsive to the very concerns that third-party standing is designed to address.

All said and done, Mr. Grunn has third party standing to proceed as a Plaintiff in this lawsuit.

**C.  Ripeness**

Defendant also claims that this lawsuit must be dismissed because it is not "ripe."

To determine if a claim is ripe, three factors are considered: (1) the likelihood that the harm alleged will ever come to pass; (2) whether the factual record is sufficiently developed to allow for adjudication; and (3) hardship to the parties if judicial review is denied. *Norton v. Ashcroft*, 298 F.3d 547, 554 (6th Cir. 2002) (citation omitted). Mr. Grunn's claim satisfies all three factors.

First, Mr. Grunn is an active member of the gay community, his business is publicly gay friendly, and he has already served two same-sex couples who were married in states authorizing same-sex marriages. Moreover, Mr. Obergefell will be referring married same-sex couples to Mr. Grunn. Thus, the harm claimed is not "speculation regarding future harm" but rather is already present, and there also exists a clear and present risk of further harm.

Second, the factual record is sufficiently developed here to address the issues raised by Mr. Grunn. His duties are already detailed in the pleadings, and they have also

13

been raised by Defendant Jones, who works with him and has expressed some of the same concerns.

Finally, if judicial review is denied, the parties will need to scramble to litigate in a rushed manner when the next same-sex married couple has a spouse die and must seek a death certificate through a funeral director. There would be a significant hardship for Mr. Grunn to litigate this issue when the next grieving surviving spouse retains his services, as that client will be in distress and facing an urgent need to secure a death certificate and dispose of his or her loved one's remains. Moreover, in the absence of a live case with a temporary restraining order already in place, obtaining the necessary relief within the short period of time in which a death certificate must issue may well be logistically impossible.

In *NRA v. Magaw*, 132 F.3d 272, 286 (6th Cir. 1997), the Sixth Circuit held that there was adequate hardship to sustain ripeness where "plaintiffs, for all practical purposes, are coerced into a particular course of conduct by the prospect of heavy civil and criminal penalties that might be visited upon them" if they did not comply with the challenged statute. In the same way, Mr. Grunn is currently being coerced to leave valid same-sex marriages off death certificates because of the prospect of criminal sanctions.

For these reasons, Mr. Grunn's claim is ripe.

**D.    Declaratory Judgment Jurisdiction**

Defendant argues further that the Court, in its discretion, should simply avoid resolving the issues presented.

It is true that a court may decline to "entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *Travelers Indem. Co. v. Bowling Green Professional Assoc., PLC*, 495 F.3d 266, 271 (6th Cir. 2007). In this context, when deciding whether to exercise jurisdiction, the following factors are considered:

> (1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of 'procedural fencing' or 'to provide an arena for a race for res judicata'; (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

*Grand T.W.R. Co. v. Consolidated Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1994).

As has been established, a declaration of same-sex married couples' rights to recognition on death certificates would dispose of Mr. Grunn's fear of prosecution completely. The record shows that he faces a real problem that has surfaced in his practice in the past and will inevitably resurface in the future, that he has standing to bring his claim, and that this case is ripe. Although this case presents a potential conflict between federal and state law, it does not represent any improper encroachment upon state jurisdiction as Mr. Grunn is seeking vindication of federal constitutional rights appropriately enforced in federal court.[2] And, there is no better or more effective remedy.

---

[2] Despite the fact that voters may support a given law, rights protected by the U.S. Constitution can never be subordinated to the vote of the majority. While at times this may *seem* unfair, especially when deeply emotional issues are involved, indeed it is the fairest, and most deeply rooted, of all of this Nation's rich traditions.

15

As a result, the Court appropriately exercises its discretion to entertain Mr. Grunn's suit for a declaratory judgment.

## CONCLUSION

Accordingly, based on the foregoing, Dr. Wymyslo's Motion to Dismiss (Doc. 38) is hereby **DENIED**. The Court anticipates that this case will be ripe for full and final resolution in late December 2013.

**IT IS SO ORDERED.**

Date: 11/1/13                                                                                   *s/ Timothy S. Black*
                                                                                                Timothy S. Black
                                                                                                United States District Judge