```
               UNITED STATES DISTRICT COURT
                SOUTHERN DISTRICT OF OHIO
                    WESTERN DIVISION


                          - - -

JAMES OBERGEFELL, et al.,   . Case No. 1:13-cv-501
                            .
            Plaintiffs,     .
                            .
       - v -                . Cincinnati, Ohio
                            . Friday, July 19, 2013
JOHN KASICH, et al.,        . 2:29 P.M. Conference
                            .
            Defendants.     . **Informal Status Conference**
. . . . . . . . . . . . . . .
               TRANSCRIPT OF PROCEEDINGS
      BEFORE THE HONORABLE TIMOTHY S. BLACK, JUDGE
APPEARANCES:
For the Plaintiffs:   GERHARDSTEIN & BRANCH CO., LPA
                      BY:  Alphonse A. Gerhardstein, Esq.
                      and  Jennifer L. Branch, Esq.
                      and  Jacklyn Gonzales Martin, Esq.
                      432 Walnut Street, Suite 400
                      Cincinnati, Ohio  45202


For Defts. Kasich,
Dewine and Wymyslo:   OHIO ATTORNEY GENERAL'S OFFICE
                      BY:  Bridget C. Coontz, Esq.
                      and  Kristopher J. Armstrong, Esq.
                      and  Damian Sikora, Esq.
                      Constitutional Office
                      30 E. Broad Street, 16th Floor
                      Columbus, Ohio  43215


For Deft. Jones:      CITY OF CINCINNATI LAW DEPARTMENT
                      BY:  Aaron M. Herzig, Esq.
                      and  Terrance A. Nestor, Esq.
                      801 Plum Street
                      Room 241 City Hall
                      Cincinnati, Ohio  45202


Law Clerks:           Katherine Miltner, Esq.
                      Grace Cretcher, Esq.


Courtroom Clerk:      Mary Rogers


Court Reporter:       Mary Ann Ranz
```

1      FRIDAY, JULY 19, 2013
2      IN CHAMBERS CONFERENCE      (2:29 P.M.)
3          THE COURT:  This is Judge Timothy Black.  I'm in
4   chambers on the record in the presence of the court reporter.
5      We're here on the case of *Obergefell, et al. versus*
6   *Kasich, et al.*
7      As you're all well aware, a Complaint's been filed that
8   seeks, among other things, a temporary restraining order.
9      Pursuant to local rule, the Court is encouraged to
10  schedule a scheduling conference at the earliest possible
11  moment, which we have now scheduled for this moment.
12     Why don't we get appearances entered.
13     Do we have counsel on the line on behalf of the
14  plaintiffs?
15         MR. GERHARDSTEIN:  Yes, Your Honor.  Al Gerhardstein
16  for the plaintiff.
17         THE COURT:  Good afternoon.
18         MS. BRANCH:  Jennifer Branch for the plaintiff, Your
19  Honor.
20         MS. MARTIN:  Jacklyn Gonzales Martin for the
21  plaintiff.
22         THE COURT:  Good afternoon to the three of you on
23  behalf of the plaintiff.
24     Are there additional counsel on the line on behalf of the
25  plaintiffs?

1     MR. GERHARDSTEIN: No, Your Honor.
2     THE COURT: Very well.
3  Who do we have on the line on behalf of Defendant John
4  Kasich?
5     MS. COONTZ: Bridget Coontz, Your Honor, from the
6  Ohio Attorney General's Office.
7     MR. ARMSTRONG: And also Kris Armstrong from the AG's
8  Office.
9     THE COURT: Very well.
10    MS. COONTZ: We also have Damian -- excuse me --
11 Damian -- sorry, Your Honor. Damian Sikora is on the line as
12 well.
13    THE COURT: Very well.
14 Are there other attorneys on the line who have not entered
15 an appearance?
16    MR. HERZIG: Yes, Your Honor. Aaron Herzig and Terry
17 Nestor for the City, Dr. Camille Jones, the city of
18 Cincinnati.
19    THE COURT: Good afternoon to you all.
20 Do we have any other attorneys on the telephone line who
21 have not entered notices of appearance or haven't appeared on
22 this phone conference?
23   (No response.)
24    THE COURT: All right. We've got a quorum.
25 Let me make a quick opening statement and I'll hear from

1 you all in turn.

2 We're here largely for scheduling purposes. We're not
3 here for a hearing on the motion for TRO at this very moment,
4 but I've had a chance to read the motion and the pleadings
5 quickly.

6 We're now convened, and I want to understand what presents
7 and what -- how you all see this playing out.

8 Typically, the Court would hear first from the plaintiff
9 and then the respondents.

10 So from plaintiffs' perspective, what presents and how do
11 you propose that this should play out?

12 MR. GERHARDSTEIN: Judge, as in all our cases, this
13 is a simple case. We've got a situation where we're simply
14 trying to get same-sex married couples, who have been married
15 in states where it's legal, to have their marriages recognized
16 on an equal basis with opposite-sex married couples who are
17 married in other states.

18 There's an urgency in this case because one of our
19 plaintiffs, John Arthur, has Lou Gehrig's disease, and he's
20 bedridden and he is in hospice care and he may not last much
21 longer.

22 And one of the many harms that this situation visits on
23 same-sex married couples is the death certificate. And your
24 status at the time of death has to be determined as of the
25 time of death under Ohio law. And if we don't get relief

1  before he dies, then this important document that memorializes
2  the life of this man on Earth will say nothing.  It will be
3  blank under the portion that says married or not and the box
4  for surviving spouse will also be blank, and this couple,
5  that's been together for 20 years and recently married, can't
6  tolerate that.  That's just totally a denial of equal
7  protection and discriminatory.  So that brings us to the TRO
8  issue.
9      And then after he passes, they'll want to file a joint tax
10 return like married couples who are opposite sex that come
11 back to Ohio, and there'll be other benefits and remedies that
12 would be important that flow from recognizing their marriage
13 as valid in Ohio, and those can be taken up in due course.
14 But the emergent -- the emergent issue is the death
15 certificate.
16     So what we were hoping, Judge, is that maybe we could --
17 however you want to do a TRO hearing, maybe we could do that
18 on Monday, and then do some post-trial briefing and perhaps
19 oral argument for a preliminary injunction something like
20 August 7th.  But that's our wish list.
21          THE COURT:  Very well.
22    I'm going to hear from the defendant, but I do want to
23 circle back after I've heard from them.  I have an
24 overwhelming question for you.  I mean, I'll ask it right this
25 minute.

1  As to the death certificate and the irreparable harm and
2  the immediacy of this, can't a death certificate be changed
3  after the fact?
4      MR. GERHARDSTEIN:  The cause of death can be.  I
5  mean, we've been involved in that kind of litigation because
6  we do taser cases, and Taser International runs around and
7  sues coroners over that.  But not status at the time of
8  marriage.  I mean, this is either valid or invalid.
9  And there's a couple things going on here.  Even if you
10 were to seek an agreement from the city that they could hold
11 it open because of the registrar's willingness to be
12 sympathetic, or from the state, there's a bigger issue here.
13 And the importance of being treated equally for these clients
14 really is -- is -- is symbolized by the death certificate, but
15 it's bigger than that.  And we think it's important enough
16 that while he's still alive, he ought to be able to know
17 whether Ohio recognizes his loving relationship with his
18 spouse or not.
19     THE COURT:  And do you think there's case law out
20 there that would help pin down that the notion of status,
21 marital status, has to be determined at the time of death and
22 can't be amended?
23     MR. GERHARDSTEIN:  We can work on that.  I think it's
24 pretty straightforward from the materials that we've collected
25 and we can put that into the record, so I appreciate the

1  highlight of that.
2       THE COURT:  Very well.
3       MR. GERHARDSTEIN:  As we reviewed the issue, it's
4  pretty straightforward, but we'll make sure the record
5  includes that, Judge.
6       THE COURT:  Very well.
7     Well, let me hear the defendants' perspectives, and
8  perhaps we can start with the Ohio Attorney General's Office.
9       MS. COONTZ:  Thank you, Your Honor.
10    Your Honor, at this point we're still reviewing whether
11 the Ohio Attorney General is a proper party in this matter.
12    As counsel alluded, whether this Court leaves the death
13 certificate open at the time of death is a matter to be taken
14 up with the city.  The AG is still examining what, if any,
15 authority over a death certificate that's issued by the city
16 of Cincinnati that it has.  We're also examining the issue as
17 to whether there are any state requirements with respect to
18 whether marital status is issued -- is on the death
19 certificate at all.  At this point, our perspective is that's
20 a matter of local concern.  There's no requirement that we are
21 aware of in the state law that requires that this even be on a
22 death certificate.  So at this point we are examining those
23 issues -- essentially the same issues with respect to the
24 governor's office -- whether the governor is a proper party in
25 this matter.

1    It's our position, with respect to the case law that the
2 Court mentioned, determining the status of the marriage at the
3 time of death is not implicated really with respect to the
4 death certificate. The death certificate doesn't have legal
5 significance with respect to whether somebody is married or
6 not.
7    So, there're a number of issues that we're looking at with
8 respect to the propriety of issuing a temporary restraining
9 order in this matter, as well as the case on the merits.
10         THE COURT: Given the urgency that the plaintiffs'
11 lawyer alludes to, what's your opening bid in terms of getting
12 me something in writing reflecting your position?
13         MS. COONTZ: We could have something to the Court
14 Tuesday.
15         THE COURT: I may have to accelerate it more, but I
16 thought I would at least inquire in the first instance as to
17 your opening suggestion.
18    Is it the -- well, let me hear on behalf of City
19 defendants. Counsel?
20         MR. HERZIG: Thank you, Your Honor. Aaron Herzig for
21 the City.
22    We also are at the very beginning of trying to understand
23 exactly the significance of the -- listing the marital status
24 on the death certificate. We have some of the same questions
25 the Attorney General raises, you know --

```
                                                                9
 1        Did we lose somebody?
 2             THE COURT:  No, just thunder.  Pay no attention.
 3             MR. HERZIG:  I'm hearing the same.
 4      We also, in part, may just be acting in only a ministerial
 5   capacity, but some over here from the AG might suggest
 6   otherwise and we would need to look into that as well.
 7      If there was an opportunity to fashion an agreement that
 8   left the issue open while the Court had a chance to hear it
 9   completely, we certainly would be open to accommodating
10   something like that, contingent upon what Al and Jennifer
11   find.
12             THE COURT:  And what's your opening bid on when you
13   can present to me in writing your party's position?
14             MR. HERZIG:  If we have much of one, and I'm really
15   not certain whether we will, we'll get it to you as quickly as
16   possible.  Given the circumstances, you know, early next week
17   makes -- makes good sense.
18             THE COURT:  Very well.
19      Having heard all this, I'll circle back around the table.
20      What do you make of the defendants' response and what do
21   you propose that the Court do, Mr. Gerhardstein?
22             MR. GERHARDSTEIN:  Judge, it doesn't sound like
23   there's anything we can't address on Monday.  I think we
24   should have maybe mutual filings that address these issues.
25      This is why these phone calls are good, because they do
```

1  highlight the issues.  And I think we can all respond by
2  Monday and give the Court a chance to rule, if the Court's
3  available.
4          THE COURT:  Well, the Court's gonna make itself
5  available.  The question is, what's manageable?  And given the
6  significance and the immediacy that apparently at first blush
7  attaches, I want to have a hearing on this on Monday such that
8  these chambers can act Monday if we choose to do so.
9     How long do you think we would -- a hearing would consume
10 from the plaintiffs' perspective?  It's mostly briefing.  If
11 I'm going to have a hearing on Monday, the briefs are gonna
12 have to come in early Monday.
13    But in terms of a hearing or argument on the record or
14 whatever it is that's proposed for Monday, how much time do
15 you suggest would be consumed from the plaintiffs'
16 perspective?  And I'll hear from the defendants as well.
17         MR. GERHARDSTEIN:  Judge, I know that Jim Obergefell
18 would want to be heard briefly, and then we may need to
19 examine Dr. Jones, if we haven't worked out some stipulations.
20    So, I would say 45 minutes to an hour, depending on the
21 extent.  And we'd want time for oral argument and questions
22 from the bench.  So 45-minutes to an hour.
23         THE COURT:  For the entire -- for the whole fell
24 swoop?
25         MR. GERHARDSTEIN:  I think so.

1    THE COURT: Okay. Ms. Coontz, what's your reaction
2  to that?
3    MS. COONTZ: Well, if Mr. Gerhardstein wants --
4  intends to put on evidence, you know, that's obviously up to
5  him. It's our position that oral argument may not even be
6  necessary, that we could simply submit this on the brief, that
7  the issues are purely legal. But if that is necessary, I
8  would say maybe a half an hour, 45 minutes as well for our
9  portion.
10   THE COURT: Very well.
11   And what do you make of the scheduling issues, Mr. Herzig?
12   MR. HERZIG: Your Honor, the biggest question right
13 now seems to be whether there is in fact a state requirement
14 to identify marriage or not. If it's solely in the city, that
15 may affect how we proceed, and I need to look at that further.
16   The only witness I could see, if at all, is Dr. Jones who
17 Al mentioned, and I can't imagine it would be for very long.
18   So, you know, we wouldn't -- we wouldn't need much more
19 time than what's already there. We may in fact just be able
20 to question during other people's presentation, if there is
21 any need for evidence at all.
22   THE COURT: Very well. I'm looking at the --
23   MR. COONTZ: Your Honor --
24   THE COURT: Go ahead.
25   MS. COONTZ: If I may, if the City -- and I know that

1  this is just a suggestion that might have been made in
2  passing, but if the City agreed to leave the death certificate
3  open, is there a need for a TRO at all at this point?
4          THE COURT:  Does the plaintiff have a response to
5  that at this point?
6          MR. GERHARDSTEIN:  Yes, Judge.  We do believe that a
7  marriage ruling, even at the TRO stage, is important.  And I
8  think we need to all review as to whether the City is free to
9  leave a death certificate open.
10     As we understood -- and this is stuff that we can address
11 offline with counsel -- but as we understood it, these are
12 rules dictated and already in place by the Ohio Department of
13 Health and by the statute.  So I think it's -- I think it's
14 problematic.  But, you know, we'll talk to counsel.
15         THE COURT:  Very well.
16     Well, I would propose to set this for oral argument and
17 hearing at 1:30 this Monday, July 22nd.  We'll memorialize
18 that after we've got everybody signed off on it.
19     And if we're proceeding at 12:30, you know, I think we
20 need to see briefs by --
21     Give me just a moment.
22     (The Court and his staff confer privately.)
23         THE COURT:  -- you know, 11 o'clock at the latest.
24 And before I simply order that, I'll give you one last chance
25 to moan and groan.

1   The plaintiff can live with the schedule as proposed by
2   the Court?
3           MR. GERHARDSTEIN:  Yes, Your Honor.
4           THE COURT:  And you'll file something as well by 11
5   o'clock on Monday to supplement, particularly given the
6   Court's inquiry on the irreparable harm and the immediacy
7   issue?
8           MR. GERHARDSTEIN:  Right.  We will.
9           THE COURT:  Very well.
10     Ms. Coontz, you want to moan and groan about the Court's
11  proposed calendar?
12          MS. COONTZ:  I'm not going to moan and groan, Your
13  Honor, as long as --
14     We obviously are driving down.  Is it okay if we either
15  fax or email it by 11 o'clock if we can't get up on ECF.
16          THE COURT:  Yes.  I mean, just get it to us and we'll
17  get it filed if need be.
18          MS. COONTZ:  Okay.  Thank you, Your Honor.
19          THE COURT:  And, Mr. Herzig, you weren't doing
20  anything this weekend, were you?
21          MR. HERZIG:  You've heard my typical moaning and
22  groaning.  I'll just stipulate the same.
23          THE COURT:  Very well.
24     Well, I think we have a plan to move ahead.  We're gonna
25  have a hearing at 1:30, and briefs are due by 11 o'clock on

1  Monday and we will proceed accordingly.  If it requires the
2  Court's attention or consideration before that, just
3  communicate with chambers and we'll make ourselves available.
4      That may be all we can do at this moment.  If there's
5  more, tell me.  If not, perhaps we simply adjourn and get on
6  with what's required.
7      Is there more today from the plaintiffs' perspective,
8  Mr. Gerhardstein?
9           MR. GERHARDSTEIN:  No, Your Honor.
10          THE COURT:  From the governor or Attorney General's
11 Office?
12          MS. COONTZ:  No, sir.  Thank you.
13          THE COURT:  And the City defendant?
14          MR. HERZIG:  No, Your Honor.  Thanks.
15          THE COURT:  Very well.  We'll proceed accordingly.
16     I'm going to adjourn by thanking you for calling in
17 timely, saying good-bye, and hanging up.
18     Thank you, Counsel.  Good-bye.
19          MS. COONTZ:  Thank you.
20          MR. GERHARDSTEIN:  Thank you.
21          MR. HERZIG:  Good-bye.                  (2:47 P.M.)
22                       -  -  -
23                  PROCEEDINGS CONCLUDED
24                       -  -  -
25

C E R T I F I C A T E

    I, Mary Ann Ranz, the undersigned, certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.


s/Mary Ann Ranz
Official Court Reporter