1          UNITED STATES DISTRICT COURT

2          SOUTHERN DISTRICT OF OHIO

3              WESTERN DIVISION

4                 - - -

5   JAMES OBERGEFELL, et al.,      :   CASE NO. 1:13cv501
                                   :
6                   Plaintiffs,    :   Cincinnati, Ohio
                                   :
7         - v -                    :   Wednesday, October 30, 2013
                                   :   1:30 p.m.
8   CAMILLE JONES, et al.,         :
                                   :
9                   Defendants.    :   **MOTION TO DISMISS**

10                - - -

11          TRANSCRIPT OF PROCEEDINGS
       BEFORE THE HONORABLE TIMOTHY S. BLACK, JUDGE
12                - - -

13  APPEARANCES:

14  For the Plaintiffs:        ALPHONSE A. GERHARDSTEIN, ESQ.
                               JACKLYN GONZALES MARTIN, ESQ.
15                             Gerhardstein & Branch Co. LPA
                               432 Walnut Street, Suite 400
16                             Cincinnati, OH  45202

17  For the Defendant Wymyslo:  BRIDGET C. COONTZ, ESQ.
                                ZACHARY KELLER, ESQ.
18                              Ohio Attorney General's Office
                                Constitutional Offices
19                              30 East Broad Street, 16th Floor
                                Columbus, OH  43215
20
    For the Defendant Jones:   AARON M. HERZIG, ESQ.
21                             City of Cincinnati
                               Law Department
22                             801 Plum Street, Room 214
                               Cincinnati, OH  45202
23

24  Courtroom Deputy:  Mary Rogers

25  Court Reporter:    Jodie D. Perkins, RMR, CRR

Proceedings reported by stenotype.
Transcript produced by computer-aided transcription.

1            AFTERNOON SESSION, Wednesday, October 30, 2013

2              (Proceedings commenced at 1:30 p.m.)

3         THE COURT:  Good afternoon, ladies and gentlemen.

4 Here on the record in the open courtroom in the case of James

5 -- I'm terrible on pronunciation -- Obergefell, et al.,

6 versus -- and I'll be bipartisan in mispronouncing -- Jones, et

7 al.

8         We're set for oral argument on -- here we go --

9 Defendant, Doctor Theodore Wymyslo's motion to dismiss.

10         I would like the attorneys to enter their appearances

11 for the record.  Help me with who is present with you and then

12 we'll proceed to oral argument.

13         Who appears on behalf of the plaintiffs?

14         MR. GERHARDSTEIN:  Good afternoon, Judge.  Al

15 Gerhardstein for the plaintiff.  And with me is James

16 Obergefell, Robert Grunn, who are plaintiffs.

17         And Jackie Martin, co-counsel.

18         And behind me is Adam Gerhardstein, admitted in the

19 State of Minnesota and will be taking the Ohio Bar in due

20 course.

21         THE COURT:  Congratulations across the board.  Welcome

22 on behalf of the plaintiffs.

23         Who appears on behalf of the defendants?

24         MS. COONTZ:  Good afternoon, Your Honor.  Bridget

25 Coontz with the Ohio Attorney General's Office.  Also with me

1    is Zack Keller with the Ohio Attorney General's Office.

2            THE COURT:  Good afternoon to both of you.

3            MR. HERZIG:  Good afternoon, Your Honor.  Aaron Herzig

4    for the City of Cincinnati.

5            THE COURT:  Good afternoon, Counsel.

6            Ms. Coontz, I sort of regret dragging you down from

7    Columbus for 15 minutes of oral argument, but I think I gave

8    you the option to appear by phone and, in the spirit of full

9    disclosure, I'm actually grateful and comfortable that you're

10   here live.

11           MS. COONTZ:  Thank you, Your Honor.

12           THE COURT:  I would say this to anyone in any civil

13   case:  Mr. Obergefell, on behalf of the Court and the

14   community, I express my condolences upon your loss.

15           We're here for oral argument.  Typically, the Court

16   hears first from the movant, who gets to go first and last.

17            I've asked that you try and limit your arguments to

18   15 minutes.  I've identified three issues I would like to hear

19   argued in part.  You're welcome to argue whatever you choose.

20   If you go longer than 15 minutes, so be it.

21           On behalf of the movant, do you wish to be heard?

22           MS. COONTZ:  Yes, Your Honor.  Thank you.

23           THE COURT:  Very well.

24           MS. COONTZ:  Good afternoon, Your Honor.

25           May it please the Court, Mr. Gerhardstein, Counsel.

1    The Court has asked us here today to answer three questions.

2    And the first is whether the Court can consider plaintiff's

3    declaration in this facial challenge to standing.  And the

4    simple answer is no.

5              No one can dispute that the plaintiff has to plead

6    standing with specificity, but Mr. Grunn did not do that in the

7    second amended complaint, and he admits that he didn't.

8              On page five of his response to the defendant's motion

9    to dismiss, he states that he could not allege specific facts

10   that demonstrate standing because the specific facts did not

11   exist at the time the second amended complaint was filed.  And

12   that's not only telling, but it is dispositive of his claim

13   because the plaintiff has to have standing at all stages of

14   this litigation.  And he's admitting that he didn't have it

15   when the complaint was filed.

16             THE COURT:  That's interesting.  I was prepared to

17   launch on you.  I have a Supreme Court case that says that the

18   court, in its discretion, can ask for an amendment of the

19   pleadings or affidavits to clarify standing.

20             MS. COONTZ:  And certainly, the Court does have the

21   discretion to request amendments to pleadings and the plaintiff

22   has the ability --

23             THE COURT:  It talks about affidavits too.

24             MS. COONTZ:  The Court does talk -- is the Court

25   referring to *Warth versus Seldin*?

1          THE COURT:  Yes, a Supreme Court case.

2          MS. COONTZ:  And in *Warth versus Seldin*, what the

3     Court said is that affidavits can be offered in a factual

4     challenge to standing to offer further particularized

5     allegations of standing.  Further particularized allegations of

6     fact to support standing presupposes that there are some

7     allegations in the complaint supportive of standing, and we

8     simply don't have that in this situation.

9          What we have is a plaintiff who filed a defective

10    complaint who later went out and established the facts in order

11    to support his standing, filed declarations after the fact to

12    try to somehow amend the complaint without getting leave from

13    the court to do so --

14         THE COURT:  Well, leave to amend the complaint is

15    freely granted if justice so requires it.  I can just grant him

16    leave to amend the complaint.

17         MS. COONTZ:  Well, at this point, the Court can

18    certainly grant leave to amend the complaint if the Court is so

19    inclined. But the plaintiff offers no authority for the

20    proposition that he can file the complaint, get the facts to

21    support standing after the fact, file the declarations and

22    essentially use the complaint as a placeholder.  That's not

23    what the complaint is.

24         THE COURT:  And that's the piece that's now caught my

25    attention.  You're telling me that at the time that the second

1  amended complaint was filed, he didn't have the factual basis

2  for standing, went out and created it thereafter, and put it in

3  an affidavit explaining what has now occurred?

4         MS. COONTZ:  On page five of his response, plaintiff

5  alleges that he could not allege the specific facts to

6  demonstrate standing because the specific facts did not exist.

7  The specific facts present in the declarations did not exist

8  when the second amended complaint was filed.

9         THE COURT:  And under that theory, what newly

10  developed facts now exist, post-filing of the complaint?

11         MS. COONTZ:  The facts as stated in the declaration is

12  moot.  It is the relationship between Mr. Arthur and Mr. Grunn,

13  the funeral director, and the client relationship that are set

14  forth in the declarations.  Which, even if the Court considers

15  the declarations, are insufficient to confer standing.

16         Which takes us to the Court's second question, which

17  goes to the -- whether a close relationship exists between

18  Mr. Grunn and the parties whose rights he's trying to

19  vindicate.

20         So even if the Court considers these declarations in

21  conjunction with this complaint, they still don't establish

22  this close relationship.

23         And, you know, the Sixth Circuit has not looked

24  favorably upon third-party standing, which is why prospective

25  and hypothetical relationships are insufficient to sustain

 1  third-party standing.

 2       Mr. Grunn does not allege that he has a close

 3  relationship with anyone whose rights he's trying to vindicate,

 4  much less this hypothetical class of clients that he purports

 5  to represent, because that's essentially what this is.  This is

 6  an end run around Civil Rule 23, an end run around class

 7  certification.

 8       If Mr. Grunn went for class certification, he would

 9  have to prove numerosity, and he can't do that when he can't

10  even identify one client with whom he has this close

11  relationship.

12       What he's really asking for is relief that's broad and

13  narrow.  He wants it narrow, because he wants it to apply to

14  him, but he wants it broad because he wants it to apply to all

15  of this hypothetical class of clients that he purports to

16  represent.

17       THE COURT:  Who better to raise this issue as to the

18  death certificate of the same-sex couple than a funeral

19  director who services, in large part, the gay community?

20       MS. COONTZ:  The individual plaintiffs who are

21  applying for the death certificate.

22       THE COURT:  So you do it one by one.  As people die,

23  they rush into court within 24 hours and that's the only way we

24  can surface whether or not -- what presents presents?

25       MS. COONTZ:  And I think the Court's question goes to

1   two different issues:  The prudential limitations on standing

2   and pleading those facts with specificity.  And that's the

3   issue that we have here is -- if the Court's position is that

4   Mr. Grunn is in the best position to represent --

5           THE COURT:  I'm asking.

6           MS. COONTZ:  Is he in the best position to represent

7   those interests?  No, and he has not alleged that he is in the

8   complaint.

9           Third-party standing requires not only this close

10  relationship and, again, in this situation we're talking about

11  hypothetical clients --

12          THE COURT:  Speculative future clients.

13          MS. COONTZ:  -- speculative future clients.

14          THE COURT:  Like the lawyer cases.

15          MS. COONTZ:  Correct, like the lawyer cases.

16          But what's notably absent from both the declarations,

17  as well as the complaint, is any allegation of hinderance.  The

18  close relationship alone is not enough.  And the declarations

19  and the complaint and the attempt to fix this third-party

20  standing problem are all geared toward this relationship, which

21  is why the plaintiff cites *Craig* and cites the cases in which

22  close relationship is found.

23          But if we look at the *Smith versus Jefferson County*

24  *Board of Commissioners* case from the Sixth Circuit, where the

25  teachers were found to have a close relationship with the

1    students whose rights they were attempting to vindicate, but

2    the failure to allege or assert or prove or provide any factual

3    basis for establishing that those students or parents had any

4    hindrance, there was any obstacle, to prevent them from

5    vindicating their own rights, was fatal to the claim of

6    third-party standing.  And that's the situation that we have

7    here.

8         The declarations that were filed after the fact are an

9    obvious attempt to fix this third-party standing problem, but

10   they still don't address the hindrance.

11        THE COURT:  The hindrance?  I mean, I respect you.  I

12   mean, aren't you -- a person who has a spouse die and needs a

13   death certificate, within 24 hours or so, faces no hindrance if

14   the only way to get an accurate one is to come to court within

15   those 24 hours during a period of intense grief?

16        MS. COONTZ:  Well, that's certainly not what the

17   complaint alleges and that's certainly not what the

18   declarations -- what the declarations allege.

19        Is it a tough time period?  Absolutely.  Is it a time

20   of grief?  Yes.  But there's no allegation in the complaint and

21   there's no allegation in the declarations that these

22   individuals whose rights Mr. Grunn is attempting to vindicate

23   can't do that.  And the existing plaintiffs in this case

24   demonstrate that they can.

25        THE COURT:  Well, Mr. Obergefell could do it because

1    his partner was dying slowly from a terminal disease and they

2    could see it coming and they had time to plan it and they went

3    out and hired a lawyer and they brought it to the Court's

4    attention.

5            The new plaintiff, the only reason he was able to do

6    what he did was the case was in place.  The hindrance argument

7    doesn't cause me a great deal of pause.  The close

8    relationship, I'm working on.

9            MS. COONTZ:  And the close relationship -- whether the

10   Court focuses on the close relationship or the hindrance, both

11   are problematic for the plaintiffs in their ability to provide

12   or to demonstrate third-party standing because the Sixth

13   Circuit is specific.  It's not hypothetical future clients.

14           And I think the courts -- the Eastern District of

15   Michigan decision from October of 2012, the *Suciu versus*

16   *Washington* case, is very instructive on this point.  In that

17   situation, you had attorneys who were challenging, on a

18   constitutional basis, the Michigan's prison system's new

19   restricted hours on visiting inmates, and the allegation was

20   this violated their First and Sixth Amendment rights.

21           And what the court said, focusing on *Kowolski*, is the

22   fact that there were no existing clients.  Just like Mr. Grunn,

23   the attorneys in the *Suciu* case did not identify any existing

24   client with whom they had to -- with whom they had a close

25   relationship whose rights they had to vindicate.

1              And the Court specifically held that a close

2      relationship exists only between the plaintiffs and existing

3      clients.  And without those existing clients, the plaintiffs

4      had failed to demonstrate third-party standing.

5              We have an identical situation in this particular

6      case.  The plaintiff does not allege that there's a close

7      relationship with anybody whose rights he has to vindicate.

8      He's attempting to vindicate these rights in the abstract and

9      the Sixth Circuit demands more.

10             THE COURT:  So we never get to the issue?

11             MS. COONTZ:  It's not that we'll never get to the

12     issue, it's that the Court should restrain from getting to this

13     issue in a situation, in this particular case, in the abstract

14     where there is no close relationship.

15             It is not that no one will ever get to this issue.

16     It's that we can only reach this issue when the close

17     relationship exists.  And the plaintiff has failed to plead

18     anything with specificity to demonstrate that that close

19     relationship exists.

20             THE COURT:  But you're never going to have a close

21     relationship with a funeral director except at the moment of

22     death.

23             MS. COONTZ:  But if that's what's required for

24     standing, then that is what is required for standing.  As harsh

25     as it may sound, if that's what the Sixth Circuit requires,

1  that close relationship, as opposed to the hypothetical

2  relationship.  You know, it is harsher than in the context of

3  an attorney-client relationship, and I'm cognizant of that

4  fact.  It's hard to say that somebody has to die before that

5  existing close relationship exists.  But that's, I believe,

6  what the Sixth Circuit has set out for us with respect to the

7  close relationship.

8       THE COURT:  And then you have to act on it within 24

9  hours and find the lawyers capable of drafting pleadings to

10  that effect in that period of time, and a judge who responds

11  that quickly?

12       MS. COONTZ:  For prudential limitations on standing,

13  yes, for that close relationship --

14       THE COURT:  Okay.

15       MS. COONTZ:  -- to exist.

16       The Court's other question that the Court wanted -- or

17  that you asked the parties to address today relates to whether

18  Mr. Grunn can state a first-party 1983 claim based on his own

19  rights.  And he can't in this situation.  He has no Article III

20  first-party standing because he's not alleged an injury in

21  fact.  Mr. Grunn does not allege in the second amended

22  complaint that he fears prosecution.  He alleges in the

23  declarations that he fears prosecution.  And he states that he

24  fears he'll be prosecuted by Doctor Wymyslo for listing

25  same-sex couples as married.

1       This statement is still insufficient for two reasons:

2  Number one, Doctor Wymyslo is not responsible for prosecuting

3  violations of the section of Ohio law that Mr. Grunn fears

4  being prosecuted under.

5       THE COURT:  You have to find a county prosecutor

6  willing to do it.

7       MS. COONTZ:  Exactly.

8       THE COURT:  And you think that would be a challenge?

9       MS. COONTZ:  Whether it would be a challenge is not

10 necessarily an issue for Doctor Wymyslo.  It is not something

11 that he's ever, to my knowledge, referred anybody for

12 prosecution.  A county prosecutor would have the ability to

13 prosecute this case -- prosecute such a violation independent

14 of Doctor Wymyslo.

15      This is a situation that's very analogous to the *COAST*

16 case in the Sixth Circuit where the Ohio Elections Commission

17 would refer violations, upon a finding of probable cause, to

18 the county prosecutor for prosecution.

19      Doctor Wymyslo has only the authority to refer

20 violations to the county prosecutor.  And absent that county

21 prosecutor, as in the *COAST* case, there is no injury in fact.

22 There is no credible threat of prosecution in this particular

23 case.

24      THE COURT:  But in the *COAST* cases, one of which

25 originated out of my courtroom, the folks were not saying that

1  they were going to file false statements, they weren't going to

2  violate the statute.

3         Here, Mr. Grunn said outright, I believe, that if he

4  has a same-sex couple come to him, he's going to list that

5  they're married and list the surviving spouse.  Doesn't that

6  distinguish it?

7         MS. COONTZ:  But I think the Court's question raises

8  some interesting issues within the context of this particular

9  statute.  There are no annotations analyzing this particular

10  statute as to whether the activity that Mr. Grunn intends to

11  engage in is a violation of that particular statute.  And

12  that's a decision for the county prosecutor to make.  This is a

13  section of Ohio law that has not been enforced against anyone,

14  to the State's knowledge.

15         THE COURT:  Has anybody been violating it?

16         MS. COONTZ:  Has anybody -- I can't answer that

17  question, Your Honor.  I simply don't know the answer.

18         THE COURT:  Mr. Grunn says he's done it.

19         MS. COONTZ:  Has Mr. Grunn done it?  Yes.  Has he been

20  prosecuted for it?  Not to my knowledge.  He has not.

21         So the interpretation of Ohio law -- he's interpreting

22  this to be a violation of Ohio law.  Is it a violation of Ohio

23  law?  That's for the county prosecutor to decide, not for

24  Doctor Wymyslo to decide.

25         THE COURT:  Is the State in the position to disavow

1  the intention to prosecute people if they say that a gay

2  couples' surviving spouse is their gay partner?

3          MS. COONTZ:  That's not Doctor Wymyslo's decision.

4  Doctor Wymyslo doesn't have the authority to prosecute someone

5  criminally for that.  I can't answer for the 88 county

6  prosecutors.

7          THE COURT:  Could the Attorney General answer that

8  question?

9          MS. COONTZ:  In an opinion?

10         THE COURT:  Yeah.

11         MS. COONTZ:  An Attorney General Opinion could be

12  sought with respect to that issue.

13         THE COURT:  I mean, the State does not disavow any

14  intent to criminally prosecute.

15         MS. COONTZ:  The Attorney General doesn't have the

16  authority to prosecute.  Doctor Wymyslo doesn't have the

17  authority to prosecute.

18         Can the State affirmatively disavow any intent to

19  refer anybody for a violation of 3705.29?  No, the State cannot

20  disavow any such intention.

21         THE COURT:  Very well.

22         MS. COONTZ:  So going back to why Mr. Grunn has failed

23  to state a first-party claim based on his own right, the mere

24  possibility of a criminal sanction does not amount to a case of

25  controversy, and that's essentially what we have, is Mr. Grunn

1    saying that I fear that I'm going to be criminally prosecuted

2    in this situation.

3            Again, there's no authority for the proposition that

4    this is something that a county prosecutor would actually take

5    up and prosecute.  That is not a decision that Doctor Wymyslo

6    has the authority to make.  That is not a decision that Doctor

7    Wymyslo controls.

8            There is, as I'm sure the Court is aware, a long chain

9    of speculative events listed in the plaintiff's brief that

10   would have to happen for Mr. Grunn to be prosecuted for the

11   facts that he's alleged in the complaint.

12           But because he's not alleged a credible threat of

13   prosecution by Doctor Wymyslo, and that's what he has to

14   allege, that the defendant is going to take some action against

15   the litigant to demonstrate an injury in fact.  And that is

16   from *Morrison versus Board of Education of Boyd County* from the

17   Sixth Circuit.  There is no allegation that the defendant, that

18   Doctor Wymyslo, is going to take any action against Mr. Grunn,

19   in the complaint or in the declarations.

20           Because he's not alleged that Doctor Wymyslo is going

21   to take any action against him -- excuse me.  He's not alleged

22   that Doctor Wymyslo is going to take any action against him.

23   And in his reply, he actually admits that prosecution is

24   certainly not impending.

25           And again, the Sixth Circuit demands more, demands

1    credible threat of prosecution.  When the plaintiff is

2    admitting that prosecution is certainly not impending, he can't

3    demonstrate first-party injury in fact.

4         Finally --

5         THE COURT:  Moreover, he doesn't allege any

6    constitutional violation of his own.

7         MS. COONTZ:  Correct.  Correct.  And that's the next

8    point that I'm going to get to with respect to the equal

9    protection claim and the possibility of an equal protection

10   claim.  Mr. Grunn doesn't state any sort of equal protection

11   claim in the complaint, in the declarations, or anywhere,

12   because he doesn't allege that he's being treated differently

13   from anyone.

14        He also does not allege that he actually fits into the

15   classification at issue, that is, the same-sex couples married

16   in other jurisdictions that recognize same-sex marriage.

17        What he's asking the Court for is actually an order

18   that allows him to be treated differently than any other

19   funeral director in the state of Ohio.  He's asking for an

20   order that allows him to write down same-sex marriages on death

21   certificates but is not asking that that be granted to any

22   other funeral director.

23        THE COURT:  I thought he was asking that all funeral

24   directors in Ohio be directed to do that.

25        MS. COONTZ:  In the complaint, what he's asking for is

1    declaratory judgment.

2          THE COURT:  Okay.

3          MS. COONTZ:  So you know, we have some issues there

4    with respect to the merits brief which, admittedly, I have not

5    gotten all the way through since having received it yesterday,

6    and the complaint, because in the complaint, this is a

7    declaratory judgment action and he's not asking for injunctive

8    relief.  But in the merits brief, he seems to be asking for

9    some form of injunctive relief.

10         But what he wants is an order that says any same-sex

11   couple that comes to his funeral home can get something that no

12   one else in the state can be afforded.

13         And just to re-affirm, the plaintiff has to plead

14   standing with specificity and he hasn't done so in this case.

15   That's why these declarations were filed.  He cannot fix -- he

16   cannot file an after-the-fact declaration to fix the many

17   problems within his complaint.  And this Court should decline

18   to allow him to file these declarations after the fact and

19   grant the motion to dismiss.

20         THE COURT:  And what happens if the Court grants the

21   motion to dismiss?  What happens to this litigation?  Does it

22   die along with Mr. Arthur?

23         MS. COONTZ:  No, it does not.

24         THE COURT:  What happens?

25         MS. COONTZ:  Plaintiffs' merits brief was filed

1  yesterday.  The defendant has the intention to respond and,

2  obviously then, if there's any additional responsive briefing.

3  But this case will still be very much alive and pending in this

4  courtroom.

5       THE COURT:  The question will be whether the Court's

6  order becomes a permanent injunction as to these two couples?

7       MS. COONTZ:  Correct.  At this point, we're just at

8  the temporary injunctive relief phase.

9       THE COURT:  And, you know, the death certificate

10  becomes an issue pursuant to the Court's order.

11       MS. COONTZ:  In my knowledge, it has never happened.

12  But it is my understanding that by Ohio law, death certificates

13  are amendable.  I'm not saying that that would happen.  I'm not

14  aware of any situation in which that has happened.

15       But I stood before this Court back in July and made

16  the argument that a death certificate is amendable.  And

17  because that's the position that the State has, and that's what

18  Ohio law provides for, Mr. Arthur's death does not affect the

19  future of this litigation.

20       THE COURT:  Very well.  I don't know whether I'm

21  allowed to say it, but you're a good lawyer.

22       MS. COONTZ:  Thank you, Your Honor.

23       THE COURT:  Very well.  Do you want some rebuttal

24  time, having chewed up 22 minutes?

25       MS. COONTZ:  Twenty-two?  Wow.

1          THE COURT:  Perhaps?

2          MS. COONTZ:  Perhaps.

3          THE COURT:  Let see how much the other lawyer chews

4    up.  It's been helpful to the Court.  I'm glad you came.

5          MS. COONTZ:  Thank you, Your Honor.

6          MR. GERHARDSTEIN:  Good afternoon, Judge.

7          THE COURT:  Good afternoon.

8          MR. GERHARDSTEIN:  Counsel.

9          Judge, let me start with first-party standing, the

10   issue that chewed up probably ten of those minutes.

11         THE COURT:  Okay.

12         MR. GERHARDSTEIN:  Because there really is a fear of

13   prosecution that's real and immediate.  And forget the extra

14   affidavits that were filed.  Let's just go with the complaint.

15          Paragraphs 41 and 47 say that Mr. Grunn is a licensed

16   funeral director.  And under 3705.16(B), the complaint goes on

17   to say he has the duty to obtain personal information.  He's a

18   statutory recorder.

19         And under Paragraph 46, it says that includes whether

20   the decedent is married and who his surviving spouse is.

21         Paragraph 42, we say that he has to sign the death

22   certificate.

23         Paragraphs 43 to 45, we say that he has served

24   same-sex couples who are married in the past and that he will

25   do so in the future.

 1          Paragraph 49, he says that he's going to be listing

 2     these couples as married and listing their surviving spouses by

 3     name.

 4          Paragraph 39, he says that when this identical issue

 5     arose with respect to the death of William Ives, Defendant

 6     Jones, and I'll quote, requested through her counsel that she

 7     be given direction from this Court on how to respond.  The

 8     Court subsequently issued the temporary restraining order.

 9          And then, not to bring in things outside the

10     complaint, but she did admit that allegation when she answered

11     in document 36.

12          So, we have an allegation that was placed in the

13     second amended complaint because the funeral director is just

14     like Doctor Jones, which is something that Doctor Wymyslo has

15     totally failed to address.  They're both -- Doctor Jones and

16     Mr. Grunn are both statutory reporters with duties set out in

17     3705.16.

18          And like Jones, Mr. Grunn is so concerned about the

19     tension between accurately reporting what his clients bring to

20     him -- we are married in another jurisdiction, I want my

21     marriage on the death certificate and I'm the surviving spouse,

22     I want my name there -- he's so concerned about accurately

23     serving his clients and the criminal penalties associated with

24     false reports, that he needs a court order to protect him from

25     prosecution.

1       And that is the same argument that Defendant Jones

2  made in her response to the original TRO request, and that's at

3  pages two and three of document 10.

4       So if a defendant views this problem as imminent

5  enough to require court direction, certainly another mandatory

6  reporter, the funeral director, has standing to raise the same

7  argument.

8       And that is just like *Babbitt*, a Supreme Court case

9  where the farm worker protesters said, well, we aren't really

10  intending to give false statements when we go out and protest,

11  but that's a pretty broad statute and we're not sure what to do

12  so we need court protection in order to make sure that we don't

13  have to face prosecution for exercising our rights.  And as

14  long as --

15       THE COURT:  How do you square that and these *COAST*

16  cases?

17       MR. GERHARDSTEIN:  Well, I think there is a continuum

18  of the types of conduct that are involved.

19       But you actually asked the best question to sort that

20  out.  And that is:  Okay.  Is the state going to disavow

21  prosecution?  And while counsel was very careful to say that

22  you need 88 prosecutors to get onboard with that, the fact is

23  that under 3710.57, Director Wymyslo has the duty to institute

24  any criminal prosecution.  So Director Wymyslo is the gate

25  through which any criminal prosecution gets.

```
 1            THE COURT:  How?

 2            MR. GERHARDSTEIN:  Well, it says -- 3710.57 says:  Any

 3   prosecutions, quote, shall be instituted by the director of

 4   health.

 5            I think that's more than just a referral.  It's like,

 6   you don't get to first base unless the director of health says

 7   to one of those 88 prosecutors, we have a violation hearing.

 8            And so he's the gatekeeper.  And the director has

 9   not -- let me go back to Babbitt because your question is how

10   do I parse that out with COAST.  In Babbitt, the Supreme Court

11   said the state has not disavowed any intention of invoking the

12   criminal penalties.  So it's like, well, if I have to err one

13   way or the other, I'll give it to the plaintiff who fears

14   prosecution because the other side is hiding the ball.

15            And here, Director Wymyslo, and you've just heard in

16   your dialogue with counsel, has similarly not disavowed any

17   intention of invoking, or of triggering, of instituting, to use

18   the words of the statute, any criminal prosecution.

19            And I think that settles it.  And when you combine

20   that with Doctor Jones feeling the same way as another

21   mandatory reporter, as another statutory reporter?  I mean,

22   we've had argument, we had 46 pages of briefing, and then we

23   had statements saying:  Well, I guess we can't promise not to

24   prosecute.  But it is speculative to think that it will ever

25   happen.  Well, you can't have it all of those ways.  And I
```

1    think that that does settle the issue of whether the

2    prosecution is imminent enough.

3           THE COURT:  So you think that settles the question of

4    injury in fact?

5           MR. GERHARDSTEIN:  Well, there's two other things we

6    have to establish:  One is whether the marriage recognition ban

7    is the source of this fear of prosecution, and it is.  Doctor

8    Jones agrees with that as well.

9           And then, third, we have to show that a court ruling

10    will solve the problem.  And that's exactly what happened when

11    Mr. Ives died.  Doctor Jones contacted counsel, went to the

12    court, said, well, I need protection, and the TRO was issued in

13    part because of that.

14           So -- so the Court ruling does solve the problem.  It

15    does say that the marriage recognition ban will be declared

16    unconstitutional as applied to these movants and, therefore,

17    the TRO was issued.

18           So, yes, all three of those things together, the fear

19    of prosecution, the connection to the marriage recognition ban,

20    and the fact that a court ruling solves the problem, gives him

21    first-party standing.

22           THE COURT:  Well, the problem with first-party

23    standing is not injury in fact, it is that he hasn't alleged

24    any constitutional violations as to him.

25           MR. GERHARDSTEIN:  Well, he is, though, because the

1   combination of these statutes present him with a criminal

2   prosecution for something that is constitutionally protected,

3   that is, the right for same-sex couples' marriages to be

4   recognized.

5           So if he's going to be prosecuted by declaring that

6   right in the course of his duties, that's a constitutional

7   violation.

8           THE COURT:  Forgive me, help me through it.  What

9   constitutional right would be violated by being prosecuted

10  for  --

11          MR. GERHARDSTEIN:  Well, first of all --

12          THE COURT:  -- unconstitutional --

13          MR. GERHARDSTEIN:  -- he will be articulating that --

14  if we are pursuing this line, which I'm happy to do --

15          THE COURT:  Well, we have to for first-party standing,

16  don't we?

17          MR. GERHARDSTEIN:  Then he's saying that these

18  statutes are vague as applied to him because, in fact, he's got

19  a situation where he's told he has to provide accurate

20  information or he'll be prosecuted.  And then he goes to do it

21  by submitting this accurate information about marriages in

22  another state and then he gets whacked.

23          So, that's -- that's a vague statute.  He shouldn't be

24  prosecuted under that.  And while I have not briefed it in our

25  merits brief, if that's a central issue, I'm happy to, because

1    we're focused on marriage recognition.  But you know, we can

2    certainly do that.

3           THE COURT:  Well, can't we just proceed with third-

4    party standing and not get into that mess?

5           MR. GERHARDSTEIN:  We can, but he has to be injured to

6    have third-party standing, and we have shown the injury.  And

7    with respect to third-party standing, you know, he's on solid

8    footing.

9           THE COURT:  I thought the law disfavored third-party

10   standing.

11          MR. GERHARDSTEIN:  Well, it does.  But this is just

12   the kind of situation where the doctrine got created.  I also

13   do a lot of abortion cases, and this is reminiscent of that in

14   the sense that you have a core injured party that comes and

15   goes very quickly.  A plaintiff who is in a crisis, has a need,

16   goes to the court to get that need satisfied, goes to a doctor

17   in that situation to get it satisfied, and then is gone.  You

18   know, there's just no ongoing relationship.

19          Similarly, here you have to show three things for

20   third-party standing:  That the person asserting the standing

21   was injured by operation of law, which we just did; there's a

22   close relationship; and then you have the hindrance.

23          Now, we certainly have a close relationship here.  You

24   can't get a death certificate without going to somebody

25   recognized in the statute, and the funeral director is one of

1    those reporters, who will then -- he even has a special

2    database in his office provided by the State to provide the

3    personal information needed to get the death certificate.

4          And it's a close relationship, both in terms of the

5    way the statute is set up, but also in terms of the service

6    that's provided.  It's regulated by the State because these

7    people are grieving.

8          THE COURT:  But there's no existing vendor-vendee

9    relationship.  There are no clients yet, so how can we have a

10   close relationship with a hypothetical client?

11         MR. GERHARDSTEIN:  Well, it is not hypothetical.  It

12   is certain to happen.  He's had three experiences with this

13   already.  He alleged in his complaint -- and I thought we had

14   notice pleading once upon a time -- so he alleges in the

15   complaint that he served same-sex couples in other states

16   before and that he's going to do it in the future, that should

17   be enough.

18         Just in case there was any question, yes, we did

19   provide additional information.  Most of that, by the way, came

20   after our conference.  And up until that telephone conference,

21   counsel had been getting along real well.  And then we learned

22   that there's going to be a motion to dismiss one of the

23   plaintiffs that had been proposed, so, yes, we did provide

24   additional information before they ever filed their motion, in

25   the interest of getting as much information out there as

1   possible.

2           And one of those facts is, in fact, that he has

3   serviced same-sex couples in the past.  There is no funeral

4   director in the state that's better situated to say he's going

5   to see this again.  I mean, his place of business is in an old

6   gay bar that people had a great time in.  He is gay himself.

7   He's well connected in the gay community.  And Mr. Obergefell

8   is going to be referring him to all of his friends, and he

9   knows a lot of people who are married in other states, and

10  everybody dies.

11          So, at some point, we know this is going to happen.

12  It is not speculation, nothing like the lawyer-visiting cases.

13  You may never get another prisoner, that prisoner may never be

14  in that prison.  You may not want to see him, you may want to

15  do everything by mail.

16          Everybody dies.  Everybody needs a death certificate

17  and they need it now.  They need it when they're in their

18  moment of crisis.  So there's certainly a hindrance if you

19  don't have this figured out before people come in.

20          And the prospect of having every one of those

21  individual surviving spouses have to jump through a court hoop

22  in order to get this relief is outrageous.  And that's why this

23  is a particularly appropriate third-party standing case.

24          And the other thing, I think we need to step back and

25  rather than deal with it as an algebra problem, also think

1  about what we're trying to do.  We're trying to make sure that

2  the party in front of the Court is going to be a vigorous

3  advocate for this physician, that has enough stake in the

4  position that he's going to be a zealous advocate and do a

5  vigorous job.

6       Mr. Grunn certainly wants to do that, for his own

7  personal reasons as alleged originally in the complaint, and

8  for his business reasons.  He wants to serve everybody

9  appropriately.  He doesn't want to be the face of the State to

10  these people and say, by the way, you're going to have to wait

11  for a long time because I don't know what to do with you since

12  you were married somewhere else.

13       He's a perfect candidate to meet the purpose of

14  third-party standing.  And in that sense, it is totally

15  appropriate.

16       You know, this whole case, Judge, is a situation that

17  we came to the Court in its equity status to solve what is

18  essentially a dynamic problem.  We have two married same-sex

19  spouses that have died so far and found their way to the Court

20  to seek help with their death certificates.  The orders of this

21  Court changed the last record of their life on this earth, and

22  but for the orders of this Court, the State of Ohio would be

23  forcing married couples to be treated as strangers with respect

24  to their deaths.

25       And we know that more married couples are going to

1    reach this point.  I mean, everybody dies.  So, they should not

2    have to file a federal lawsuit.

3            And that was an interesting exchange.  I mean, counsel

4    basically admitted that everybody has to come to court

5    separately and file federal lawsuits in order to get an

6    adequate record of their life on earth.  That can't be right.

7    We ought to be more creative, flexible and sensitive to the

8    needs of people at the point of their spouse's death to solve

9    this problem in a more comprehensive way.  And recognizing the

10   standing of the plaintiff, Robert Grunn, is the solution to

11   that problem.

12           So, we would ask that you deny the motion to dismiss.

13           And whether you consider the affidavits or not, you

14   can deny their motion to dismiss, but I think you have

15   everything you need to do so.

16           THE COURT:  You're a good lawyer, too.  Thank you.

17           MR. GERHARDSTEIN:  Thank you, Judge.

18           THE COURT:  You came all the way from Columbus.

19   Typically, there is a brief rebuttal or reply, if you wish.  If

20   not, so be it.

21           MS. COONTZ:  Yes, Your Honor.  And I will not chew up

22   much time.

23           THE COURT:  All right.

24           MS. COONTZ:  Not everyone has to come to court to be

25   able to sue in this context.  But what Article III prudential

1    standing requires is that for an individual to assert

2    third-party standing, they need to do so with an existing

3    client with whom they have that close relationship -- not that

4    everybody has to come to court individually.  It's that in

5    order for Mr. Grunn to have third-party standing, he has to

6    have an existing client.

7            THE COURT:  But if they're going to get their death

8    certificate to reflect what they think the law should require,

9    they're going to have to come to court.

10           MS. COONTZ:  Absolutely.  And if Mr. Grunn is here --

11   either the individual plaintiffs come through court on the

12   first-party standing, or Mr. Grunn comes to court with an

13   existing client with whom he has that close relationship.  And

14   we simply don't have that in this situation in this case.

15           THE COURT:  So if you're not an existing client of

16   Mr. Grunn's, you have no recourse?

17           MS. COONTZ:  Once you have the standing, once you have

18   the injury in fact, you have recourse.  But we simply don't

19   have that in this situation with hypothetical future clients.

20           THE COURT:  So after your spouse dies, if you get

21   hooked up with Mr. Grunn, then you can run to court in the 24

22   hours of immediate grief?

23           MS. COONTZ:  Or the individual can come to court on

24   their own, yes.

25           THE COURT:  What do you mean, pro se?

 1          MS. COONTZ:  No, in terms of on their own asserting

 2     their first-party rights like the other plaintiffs in this case

 3     have.

 4          And I just wanted to briefly draw the Court's

 5     attention to 3701.57 with respect to prosecution of these

 6     offenses.

 7          THE COURT:  Yes.

 8          MS. COONTZ:  What that statute says is all

 9     prosecutions and proceedings by the Department of Health -- and

10     it has a laundry list of violations of Ohio law -- not all of

11     those violations of Ohio law are criminal statutes.  Some are

12     actually civil statutes.

13          And the interpretation of that is there can be a civil

14     prosecution for a Department of Health violation or Department

15     of Health rule.  3701.58 specifically says that the prosecuting

16     attorney shall prosecute violations of 3705.29.  And the

17     specific is going to control the general.

18          And the reference to prosecution doesn't necessarily

19     mean criminal prosecution.  It can mean civil prosecution, as

20     is evidenced by 3701.571, which talks about the director of the

21     Department of Health getting administrative fines from license

22     holders for individuals with violations of ODH rules.

23          And the statute says:  On the request of the director,

24     the Attorney General shall bring and prosecute to judgment a

25     civil action.

```
1              So the use of the word "prosecution" doesn't mean

2       criminal prosecution in 3701.57.  The specific statute

3       controls, and only the 88 county prosecutors have the authority

4       to prosecute 3705.29.

5              THE COURT:  And forgive me, is your client prepared to

6       disavow any intention to refer to the county prosecutors'

7       events such as these?

8              MS. COONTZ:  I have not asked my client that question,

9       Your Honor.

10             THE COURT:  Very well.

11             MS. COONTZ:  Thank you.

12             THE COURT:  Thank you.

13             Well, oral argument actually has been very helpful.

14      It's helping me get focused.  I am not going to have a decision

15      by 5 o'clock today but I will act expeditiously.

16             I think we've accomplished what we can do.  It's been

17      of help to me.  The Court prepares to recess.

18             THE COURTROOM DEPUTY:  All rise.

19                 (The proceedings concluded at 2:13 p.m.)

20                              - - -

21

22

23

24

25
```

1                    C E R T I F I C A T E

2            I, Jodie D. Perkins, RMR, CRR, the undersigned,

3    certify that the foregoing is a correct transcript from the

4    record of proceedings in the above-entitled matter.

5

6                                    s/Jodie D. Perkins
                                     _____
                                     Jodie D. Perkins, RMR, CRR
7                                    Official Court Reporter

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25