UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| JAMES OBERGEFELL, *et al.*, | : | Case No. 1:13-cv-501 |
| | : | |
| Plaintiffs, | : | Judge Timothy S. Black |
| vs. | : | |
| | : | **PLAINTIFFS' SUBSTIUTE MOTION FOR ATTORNEY FEES AND EXPENSES AND MEMORANDUM IN SUPPORT** |
| RICHARD HODGES, *et al.*, | : | |
| | : | |
| Defendants. | : | |

## MOTION

On February 2014, Plaintiffs filed a motion for attorney fees and expenses for work performed through December 30, 2013 in *Obergefell v. Hodges*. (Doc. 70). The parties agreed to stay the fee motion until final resolution of the case. Plaintiffs now file a substitute motion for attorney fees and expenses for all work related to the *Obergefell* case through September 10, 2015. After this court issued its injunction in the companion case, *Henry v. Hodges*, SDOH Case No. 1:14-cv-129, the parties agreed to stay the fee motion until after the appeals were concluded. After Defendant Hodges appealed the decisions in both *Obergefell* and *Henry*, the Sixth Circuit consolidated the cases on appeal. The Supreme Court consolidated the cases as well. The ACLU joined the *Obergefell* litigation team to work on the appeal. Susan Sommer, National Director of Constitutional Litigation for Lambda Legal Defense and Education Fund, Ellen Essig and Lisa Meeks were all attorneys on the *Henry* litigation team.

Once *Obergefell* and *Henry* were consolidated on appeal, the attorneys who worked on both cases billed their time to either the *Obergefell* case or the *Henry* case. The attorneys who worked on only one case billed their time to that one case. Once the cases were consolidated on appeal the legal research, legal theories, briefing, and arguments overlapped. Therefore, since

1

the work and hours expended benefited both cases, this motion seeks fees for the time spent on both *Obergefell* and *Henry* by all attorneys who worked on either or both cases.

The *Obergefell* and *Henry* Plaintiffs, pursuant to Local Rule 54.2 and 42 U.S.C. §1988, seek $ 1,096,142.50 in fees and $ $51,360.12 in expenses for a total fee request for all fees and expenses through September 10, 2015 of $1,147,502.60. In addition, the parties seek a fee enhancement of 50%. Plaintiffs seek fees only from Defendant Hodges.[1] The amounts are explained in detail in the memorandum below and in the attached declarations and exhibits.

## MEMORANDUM IN SUPPORT

For the reasons set forth more fully below, Plaintiffs respectfully submit that the hours expended in this case were reasonable given the difficulty of the case and the importance of the issues. The hourly rates requested by each attorney and staff member are reasonable given their background and experience and the market rates in Cincinnati and New York.

## I. Standard For Awarding Attorney Fees

This court, in a recent decision, succinctly summarized the purpose of awarding attorney fees in a case like this:

> Section 1983 is derived from the Civil Rights Act of 1871. Under Section 1983, every person who, under color of law, deprives persons of federal rights is liable for such deprivation. Plaintiffs' § 1983 claims in this case were brought to enforce the federal rights of equal protection and due process of law, rights that derive from the Fourteenth Amendment of the U.S. Constitution. To encourage private enforcement of federal rights like these, Congress enacted the Civil Rights attorney's Fees Awards Act, 42 U.S.C. § 1988. *Perdue v. Kenny A.*, 559 U.S. 542, 550 (2010). That Act provides that "[i]n any action or proceeding to enforce a provision of [§] 1983 . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). Thus, although the general rule in our legal system is

---

[1] Plaintiffs do not seek fees from Defendant Dr. Jones since neither she nor the City defended Article XV, § 11 of the Ohio Constitution or Ohio Rev. Code § 3101.01(C) because those laws discriminate against same-sex couples. In fact, the City of Cincinnati had proclaimed July 11, 2013 as "John Arthur and James Obergefell Day," in recognition of the Plaintiffs' marriage. (See, Dr. Jones' Memorandum in Response to Motion for Temporary Restraining Order, Doc. 10.)

2

>that each party must pay its own attorney's fees and expenses, Congress made an exception to this rule to "ensure 'effective access to the judicial process' for persons with civil rights grievances." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983).

*Hunter v. Hamilton Cnty. Bd. of Elections*, 1:10CV820, 2013 WL 5467751 (S.D. Ohio Sept. 30, 2013) *7.

The criteria for the award of attorney's fees are set forth in *Blum v. Stevenson*, 465 U.S. 886, 104 S.Ct. 1541 (1984), *Hensley v. Eckerhart* 461 U.S. 424, 103 S.Ct. 1933 (1983), *City of Burlington v. Dague*, 505 U.S. 557, 112 S.Ct. 2368 (1992), and *Northcross v. Bd. of Ed. of Memphis School District*, 611 F.2d 624 (6th Cir. 1979) (overruled on other grounds). Once a plaintiff crosses the statutory threshold and is found to be a "prevailing party," the plaintiff is "entitled to recover attorneys' fees for 'all time reasonably spent on a matter.'" *Northcross,* 611 F.2d at 636.

To be a prevailing party, a party must "succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Phelan v. Bell*, 8 F. 3d 369 (6th Cir. 1993). "A plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar v. Hobby,* 506 U.S. 103, 111–12 (1992). The Supreme Court in *Farrar* went on to clarify that "[n]o material alteration of the legal relationship between the parties occurs until the plaintiff becomes entitled to enforce a judgment, consent decree, or settlement against the defendant." *Id.* at 113. The Sixth Circuit accords considerable deference to a district court's determination of whether a plaintiff is a prevailing party because the district court has "a ring-side view of the underlying proceedings." *McQueary v. Conway,* 614 F.3d 591, 604 (6th Cir. 2010).

3

This Court entered judgment for the *Obergefell* Plaintiffs and permanently enjoined Defendants from enforcing Ohio Const. Art. XV, §11 and Ohio Rev. Code § 3101.01(C) as applied to Plaintiffs.  (*Obergefell* Judgment Doc. 67).  The Court also declared Ohio Const. Art. XV, § 11 and Ohio Rev. Code. § 3101.01(C) unconstitutional as applied to Plaintiffs. (*Obergefell* Declaratory Judgment and Permanent Injunction Doc. 66).

In *Henry*, this Court entered a final declaratory judgment and permanent injunction.  The Court found that Ohio Const. Art. XV, §11 and Ohio Rev. Code § 3101.01(C) violated rights secured by the Fourteenth Amendment to the United States Constitution.  The Court declared those portions of Ohio Const. Art. XV, §11 and Ohio Rev. Code § 3101.01(C) and any other provisions of the Ohio Revised Code that may be relied on to deny legal recognition to the marriages of same-sex couples validly entered in other jurisdictions, violate rights secured by the Fourteenth Amendment.  The Court permanently enjoined Defendants from enforcing these unconstitutional laws to deny recognition of same sex marriages outside Ohio.

On appeal the Sixth Circuit reversed the judgment in both cases.  Plaintiffs filed petitions for certiorari in both cases.  The Supreme Court accepted certiorari and entered judgment for Plaintiffs in these Ohio cases and the consolidated marriage cases from Kentucky, Michigan, and Tennessee.  The Supreme Court reversed and held that the Fourteenth Amendment requires states, including Ohio, to recognize valid out of state same sex marriages.  On appeal, Plaintiffs secured all the relief they requested and were granted by the district court.  Therefore it is undisputed that the *Obergefell* and *Henry* Plaintiffs are prevailing parties in this Section 1983 action.  Attorney fees and costs are authorized pursuant to 42 U.S.C. §1988, which provides that the Court may award "a reasonable attorney's fee" to prevailing parties as part of costs.  *Hensley v. Eckerhart* 461 U.S. 424, 103 S.Ct. 1933 (1983) ("The standards set forth in this opinion are

generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party'").

## II. The Hours Expended By Plaintiffs' Counsel Were Reasonable

The Supreme Court has recognized the method for calculating an appropriate award of attorney fees is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. This is known as the Lodestar calculation.

> The result of this calculation "produces an award that *roughly* approximates the fee that the prevailing party would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." *Perdue v. Kenny A.*, 559 U.S. 542, 551 (2010) (emphasis in the original). The lodestar usually is strongly presumed to yield a reasonable fee. *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992). A reasonable fee is one which is adequate to attract competent counsel, but does not produce a windfall to attorneys. *See Gonter v. Hunt Valve Co., Inc.*, 510 F.3d 610, 616 (6th Cir. 2007).

*Hunter v. Hamilton Cnty. Bd. of Elections*, 1:10CV820, 2013 WL 5467751 (S.D. Ohio Sept. 30, 2013) *14.

The Court should indicate on the record the number of hours it finds the prevailing party's attorneys have expended on the case. This finding must first take into account the affidavits of counsel. The hours claimed need not be automatically accepted by the court, but to the extent that hours are rejected, the court must indicate some reason for its action. Hours may be cut for duplication, padding or frivolous claims. If a court decides to eliminate hours of service adequately documented by the attorneys, it must identify those hours and articulate its reasons for their elimination. *See Northcross*, *supra*.

The time spent on this action is reasonable:

> The question is not whether a party prevailed on a particular motion or whether in hindsight the time expenditure was strictly necessary to obtain the relief achieved. Rather, the standard is whether a reasonable attorney would have believed the work to be reasonably expended in pursuit of success at the point in time when the work was performed.

5

*Wooldridge v. Marlene Industries Corp.*, 898 F.2d 1169, 1177 (6th Cir. 1990) *abrogated on other grounds by Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598 (2001). Under this test, all hours expended in this action by all Plaintiffs' attorneys were reasonable. However, all hours worked are not included in this motion. All attorneys exercised billing judgment and eliminated unnecessary, excessive, or duplicate hours. In fact the ACLU did not bill for hundreds of hours several of its attorneys put into the case.

     Mr. Gerhardstein, Ms. Branch, and their staff recorded their time contemporaneously with the service. The compilation of attorneys' time records from Gerhardstein & Branch Co., LPA is attached to the Gerhardstein Declaration as Exhibit 1. The ACLU hours are attached to Mr. Essek's declaration. Ms. Meeks, Ms. Essig and Ms. Summer attached their hours to their respective declarations. Plaintiffs' attorneys exercised billing judgment at the time of entry of the times and did not record every minute spent on the case. The hours and work performed are explained in the declarations and attachments thereto.

     Alphonse Gerhardstein, the lead attorney in these cases, has considerable background, experience, and skill in representing plaintiffs in civil rights cases in federal court. (See Gerhardstein Declaration (Doc. 70-2 Ex. 1). Alphonse A. Gerhardstein is a graduate of the New York University School of Law and has been admitted to practice in Ohio and the federal courts since 1976. He was admitted to practice before the U.S. Supreme Court in 1984. For the past 39 years, most of his practice has been devoted to civil rights litigation. He has been counsel or co-counsel on hundreds of civil rights cases filed in the state and federal courts. Based on Mr. Gerhardstein's background, experience and skill, the hours requested in the fee application have been necessarily expended. The fees requested comport with and are reasonable in light of the factors contained in Ohio Rule of Professional Conduct 1.5 insofar as they accurately reflect the

time and labor required in the prosecution of this matter, the difficulty of the questions involved, the skill required to perform the work properly, they comport with the fees customarily charged by others for similar legal services, and they are appropriate in light of the results obtained.

      Mr. James Esseks was the lead attorney for the ACLU.  The ACLU came into the *Obergefell* case on appeal as additional co-counsel.  Mr. Esseks is Litigation Director of the ACLY Foundation's Lesbian, Gay, Bisexual, Transgender, and HIV Project, based in New York, New York.  As Director, he oversees both the project's legal program and other aspects of its advocacy, including lobbying, administrative advocacy, organizing, and education of the public about issues affecting lesbian, gay, bisexual, or transgender ("LGBT") people or people living with HIV.  Mr. Esseks concentrates his practice in constitutional litigation generally and specifically in constitutional claims about the rights of LGBT people. He has been counsel in numerous constitutional cases about the freedom to marry for same-sex couples, including *United States v. Windsor*, 133 S. Ct. 2675 (striking down the Defense of Marriage Act); *Bostic v. Schaefer*, 760 F.3d 352 (4th Cir. 2014), *cert. denied* 2014 WL 3924685 (Oct. 6, 2014) (striking down Virginia's ban on marriage for same-sex couples); *Baskin v. Bogan*, 766 F.3d 648 (7th Cir. 2014), *cert denied* 2014 WL 3924685 (Oct. 6, 2014) (striking down Indiana's ban on marriage for same-sex couples) (I was counsel in *Fujii v. Commissioner*, which was consolidated with *Baskin* on appeal), among others.  He has also been counsel in cases challenging state laws barring lesbians and gay men from being adoptive or foster parents.  Along with his co-counsel Chase Strangio, and numerous other attorneys from the ACLU, Mr. Esseks worked on both the *Obergefell* appeal and the *Bourke v. Beshear* and *Love v. Beshear* marriage equality cases in Kentucky.

      Susan Sommer was the lead attorney for Lambda Legal Defense and Education Fund.

7

Ms. Sommer, along with Ms. Meeks and Ms. Essig were co-counsel on the *Henry* case. Ms. Sommer is the National Director of Constitutional Litigation for Lambda Legal Defense and Education Fund. Lambda Legal is the nation's oldest and largest national organization committed to achieving full recognition of the civil rights of lesbian, gay, bisexual, and transgender ("LGBT") people, and those with HIV through impact litigation, education, and public policy work. Ms. Sommer is also co-head of Lambda Legal's Families Program Priority Area, having also served as head of its Parents and Children Program Priority Area and its Youth in Out-of-Home Care Program Priority Area. She has considerable experience as party and amicus counsel in U.S. Supreme Court LGBT civil rights cases, including *Lawrence v. Texas*, 539 U.S. 558 (2003) (striking down state laws criminalizing sexual intimacy between consenting adults); *United States v. Windsor*, 133 S. Ct. 2675 (2013) (striking down Section 3 of the federal Defense of Marriage Act), and *Christian Legal Soc'y v. Martinez*, 561 U.S. 661 (2010) (upholding public university non-discrimination policy).

Ms. Sommer also has extensive experience litigating and briefing state and federal cases seeking marriage rights, recognition of marital and other same-sex relationships, and recognition of the parental rights of LGBT parents. Ms. Sommer's experience and knowledge in marital and parenting cases was invaluable to the *Henry* litigation team. And she had extensive responsibility for drafting briefs in the case at the District Court, Circuit Court, and Supreme Court phases. She worked closely with the Kentucky, Tennessee and Michigan litigation teams, leading coordination of amicus briefing on behalf of the *Henry* Plaintiffs in the Supreme Court and assisting with preparation of the attorneys who argued in the Sixth Circuit and Supreme Court.

Once the Sixth Circuit ruled on November 6, 2015, Plaintiffs had a very short time to file

a cert petition if there was any hope the Supreme Court would decide the case in the 2014 term. The petition for writ of certiorari was filed eight days later on November 14, 2014. A flurry of litigation ensued. Multiple lawyers with varying areas of expertise were needed to draft the certiorari petition and reply, research the ever changing law on marriage equality, draft the merits brief, create the appendix, read analyze and respond to over 130 amicus briefs, file the reply brief and prepare for oral argument in the course of five short months. During the litigation of these cases, from the filing of *Obergefell* on July 19, 2013 immediately after *United States v. Windsor*, 133 S. Ct. 2675 (2013) was decided, to April 28, 2015 when the case was argued, the state of the law dramatically changed. Plaintiffs' counsel needed to keep up to date on the law, analyze each court decision, and adjust arguments and legal theories throughout the litigation.

Once the cases were consolidated on appeal the legal research, legal theories, briefing, and arguments overlapped. The work all the attorneys did on both cases was necessary. Legal work was divided among team members so that the person best suited for the assignment was responsible for the work. For example, Ms. Sommer of Lambda took the lead on drafting the *Henry* briefs in the Sixth Circuit given her writing skills and experience. The ACLU took the lead on drafting the Obergefell briefs in the Sixth Circuit. The petition for certiorari, and the merits briefing in the Supreme Court also reflects very heavy input from the excellent attorneys at LAMBDA and the ACLU. Law clerks were given tasks best suited for their skill level. Each of the attorneys was incredibly efficient in their billing practices, minimizing duplication when all attorneys need to communicate together or participate in drafting, editing, and strategizing on the case.

At the Supreme Court level there was a significant amount of work to do in a very short period of time given that our petition for certiorari needed to be filed within eight days of the

9

Sixth Circuit issuing its decision if we were going to obtain Supreme Court review during the 2014 term.  At times multiple attorneys were in communication with each other via phone calls and emails.  Much of the time for these communications was not even billed, but all of it was necessary.  Multiple attorneys participated in drafting and editing critical documents and in preparing for oral argument.  All of this time was necessary as well given the wide range of expertise among the ACLU and Lambda attorneys and the rapidly evolving state of the law.  During the pendency of the appeals state court judges, district court judges and circuit court judges were issuing decisions all over the country.  As these cases were analyzed by our team, our strategy and theories were amended to incorporate or respond to the evolving law.  Given the amount of work that needed to be done in such a short amount of time the hours put in by the attorneys and staff in *Obergefell* and *Henry* were all very reasonable.  For all these reasons, the hours requested by counsel are reasonable.

### III.     Calculation of Fees Under 42 U.S.C. § 1988

The first step in determining a reasonable fee is to determine the hourly rate to be used. The Supreme Court held that attorney's fees are to be "calculated according to the prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or nonprofit counsel." *Blum v. Stevenson*, 465 U.S. 886, 895, 104 S.Ct. 1541 (1984).

> To arrive at a reasonable hourly rate, courts use as a guideline the prevailing market rate, defined as the rate that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." *Geier v. Sundquist,* 372 F.3d 784, 791 (6th Cir.2004). In determining the reasonable rate, the Court has the discretionary authority to consider a party's submissions, awards in analogous cases, and its own knowledge and experience from handling similar requests for fees. *Project Vote,* 2009 U.S. Dist. LEXIS 34571, at *5 (citing *Johnson v. Connecticut Gen. Life Ins. Co.* 2008 LEXIS 24026, at * 14 (N.D.Ohio Mar. 13, 2008)).

*Ne. Coal. for Homeless v. Brunner*, 2:06-CV-896, 2010 WL 4939946 at *7 (S.D. Ohio Nov. 30, 2010).  The hourly rates requested by Plaintiffs meet this standard.

Plaintiff seeks fees based on an hourly rate of $475 for Alphonse A. Gerhardstein (Admitted 1978), $700 for James Esseks (Admitted 1992), $450 for Susan Sommer (Admitted 1988), $425 for Jennifer Branch (Admitted 1987), $350 for Lisa Meeks (Admitted 1993) and Ellen Essig (Admitted 1986), and $250 for associate Jacklyn Gonzales Martin (Admitted 2010) and $215 for associate Adam Gerhardstein (admitted 2013). These rates are consistent with rates recently found by federal courts to be reasonable for attorneys in the Southern District of Ohio. For example, in *Williamson v. Recovery Ltd. Partnership*, No. 2:06–cv–292, 2013 WL 3222428 (S.D. Ohio June 25, 2013), the court awarded a Columbus attorney with experience comparable to Mr. Gerhardstein's $520 per hour. Mr. Gerhardstein was awarded fees at $400 per hour in the *Hunter* case, but subsequent to the filing of the fee motion in *Hunter* in April 2012, Mr. Gerhardstein increased his rate to $450 per hour and has settled cases at that rate since April 2012. He increased his rate to $475 on May 1, 2015. Gerhardstein Declaration.

Ms. Gonzales Martin has over 5 years of experience. In *Williamson*, an attorney with less experience was awarded $220 per hour. *See also Rist v. Hartford Life & Acc. Ins. Co.*, No. 1:05–cv–492, 2011 WL 6101633 (S.D. Ohio Nov. 14, 2011) (approving fees of $200 per hour and $225 per hour for Cincinnati attorneys with less experience than Ms. Gonzales Martin).

In 2013 Ms. Branch's rate was *sua sponte* increased from $300 to $385 by the District Court for work done in 2010 through 2012. *See Hunter v. Hamilton Cnty. Bd. of Elections*, 1:10CV820, 2013 WL 5467751 at *17 (S.D. Ohio Sept. 30, 2013) (Dlott, C.J.). Having been awarded a rate by another court is one indicia that a rate is reasonable. *Ne. Coal. for the Homeless v. Brunner*, No. 2:06cv896, 2010 WL 4939946, at *7 (S.D. Ohio Nov. 30, 2010) ("In determining the reasonable rate, the Court has the discretionary authority to consider a party's submissions, awards in analogous cases, and its own knowledge and experience from handling

11

similar requests for fees."). Ms. Branch increased her rate to $425 in May 2015. Branch Declaration.

Ms. Branch's rate of $425 and Ms. Meek's and Ms. Essig's rates of $350 are comparable to other attorneys in the Cincinnati market with their experience of 29 years to 22 years, respectively. *See*, *U.S. ex rel. Ellison*, 2010 WL 2854137, at *2 (awarding fees from $425 to $500 per hour for attorneys with between eighteen and twenty-seven years of experience in 2010).

Additional support for plaintiffs' attorney's rates can be found in Judge Rubin's 1983 committee's determination of reasonable attorney fee rates for the Southern District. Courts in the Southern District still use Judge Rubin's rates, adjusting the rates for cost of living at 4% per year. *See*, *Hunter at *17*; *Georgia-Pacific LLC v. Am. Intern. Specialty Lines Ins. Co.*, 278 F.R.D. 187, 192 (S.D. Ohio 2010); *West v. AK Steel Corp. Ret. Acc. Pension Plan*, 657 F. Supp. 2d 914, 932 (S.D. Ohio 2009). *Fredericks v. Potter*, Case No. 1:06-CV-113, Doc. 123 (S.D. OH 2009), *Lee v. Javitch, Block & Rathbone LLP,* 568 F. Supp. 2d. 870 (S.D. Ohio 2008) (C. J. Beckwith) (merits decision later reversed); *Kindel v. Continental Casualty Co.*, 2005 WL 1241975 (S.D. Ohio 2005) (C. J. Beckwith).

Under Judge Rubin's rubric, the rates requested are comparable. The chart below summarizes the current rates compared to Judge Rubin's rubric using 1983 rates calculated for 2015 rates, after applying a 4% annual cost-of-living allowance to measure the reasonableness of the fees requested. (Branch Declaration). Applying the Rubin Rate as of 2015, the rates for all the attorneys except the associates would be $450 per hour.

| Name | Hourly Rate | Year Admitted | Years in Practice | Rubin Rate as of 2015 |
|---|---|---|---|---|
| Al Gerhardstein | $475 | 1976 | 39 | $450 |
| James Esseks | $700 | 1992 | 23 | $450 |

12

| Susan Sommer | $450 | 1988 | 27 | $450 |
| Jennifer Branch | $425 | 1987 | 28 | $450 |
| Lisa Meeks | $350 | 1993 | 22 | $450 |
| Ellen Essig | $350 | 1986 | 29 | $450 |
| Chase Strangio | $325 | 2010 | 5 | $289 |
| Associate Attorney | $250 | 2010 | 5 | $289 |
| Associate Attorney 2 | $215 | 2013 | 2 | $216 |
| Paralegals | $100 | | | $132 |
| Law Clerk | $85 | | | $84 |

In addition, the market rates in the Cincinnati market are comparable to the rates being charged by Plaintiffs' attorneys. Other Cincinnati litigators with similar years of experience as the lead attorneys in this case bill at higher rates:

| Attorney Name (date of admission) | Awarded rate (year of award) |
|---|---|
| David Altman (1974) | $390 (2004)[2] |
| David M. Cook (1978) | $450 (2008)[3] |
| Jim Helmer (1975) | $420 (2004)[4] |
| | $498 (2010)[5] |
| Paul Martin (1979) | $375 (2004)[6] |
| Frederick Morgan, Jr. (1983) | $500 (2010)[7] |
| Julie Popham (1992) | $425 (2010)[8] |
| Jennifer Verkamp (1996) | $450 (2010)[9] |

These Cincinnati market rates are equal to or higher than the rates Plaintiffs request in this case, except Mr. Essek's rate. For additional comparison of court awarded Cincinnati market rates, *see West v. AK Steel Corp. Ret. Accumulation Pension Plan*, 657 F. Supp. 2d 914, 934 (S.D. Ohio 2009) (approving experienced counsel rates for $351 to $497 in an ERISA case). A

---

[2] Opinion and Order awarding fees (Judge Spiegel Aug. 23, 2005) in *Unites States of America v. Sierra Club*, Case No. C-1-02-107 and affidavit of Helmer in support thereof (Aug. 6, 2004).
[3] *Bailey v. AK Steel Corp.*, 2008 WL 553764 (S.D. OH 2008).
[4] Opinion and Order awarding fees (Judge Spiegel Aug. 23, 2005) in *Unites States of America v. Sierra Club*, Case No. C-1-02-107 and affidavit of Helmer in support thereof (Aug. 6, 2004).
[5] *U.S. ex rel. Ellison v. Visiting Physicians Association, P.C.* 2010 WL 2854137 (S.D. OH 2010).
[6] Doc. 177, Order granting fees (Judge Black June 1, 2004) in *Estate of Roger Owensby, Jr. v. City of Cincinnati* (and Doc. 133, Declaration of Paul Martins in support thereof).
[7] *U.S. ex rel. Ellison v. Visiting Physicians Association, P.C.* 2010 WL 2854137 (S.D. OH 2010).
[8] *U.S. ex rel. Ellison v. Visiting Physicians Association, P.C.* 2010 WL 2854137 (S.D. OH 2010).
[9] *U.S. ex rel. Ellison v. Visiting Physicians Association, P.C.* 2010 WL 2854137 (S.D. OH 2010).

decision from the Northern District of Ohio in which the court approved rates ranging from $250 to $450 per hour, depending on each attorney's experience, was affirmed on appeal. *Van Horn v. Nationwide Prop. and Cas. Ins. Co.,* 436 F. App'x 496, 499 (6th Cir.2011).

Mr. Esseks' rate is much higher than the Cincinnati market for a litigator with 23 years of experience. However, Mr. Esseks and Mr. Strangio work for the national ACLU in New York, New York and have developed an expertise in federal constitutional law and LGBT rights. Mr. Esseks litigates cases all over the country. It is appropriate to use the market rate in New York to determine the reasonableness of his hours. New York Attorney Ann L. Clark, a partner with the firm Vladeck, Raskin & Clark, P.C, submitted an affidavit in the Kentucky case in support of Mr. Esseks' work. (Esseks Declaration Ex. D). Ms. Clark has worked directly with Mr. Esseks and is familiar with his work, which is outstanding. His billing rate of $700 per hour is reasonable for an attorney with his level of skill and expertise in the New York, New York market. *Id.* Cincinnati market rates should not apply to the ACLU or Lambda attorneys. The Sixth Circuit has observed that "[w]hen fees are sought for an out-of-town specialist, courts must determine (1) whether hiring the out-of-town specialist was reasonable in the first instance, and (2) whether the rates sought by the out-of-town specialist are reasonable for an attorney of his or her degree of skill, experience, and reputation." *Hadix v. Johnson*, 65 F.3d 532, 535 (6th Cir. 1995) (citing *Chrapliwy v. Uniroyal, Inc*., 670 F.2d 760, 768-69 (7th Cir. 1982)). Other circuits have used a similar approach. *See Zolfo, Cooper & Co. v. Sunbeam-Oster Co.*, 50 F.3d 253, 259-60 (3d Cir. 1995); *Casey v. City of Cabool, Mo.,* 12 F.3d 799, 805 (8th Cir. 1993); *Nat'l Wildlife Fed'n v. Hanson*, 859 F.2d 313, 317 (4th Cir. 1988); *Maceira v. Pagan*, 698 F.2d 38, 40 (1st Cir. 1983); *Donnell v. United States,* 682 F.2d 240, 252, 220 U.S. App. D.C. 405 (D.C. Cir. 1982).

Plaintiff's requested rates are consistent with the rates in the above cases. This court should therefore award Plaintiff attorneys' fees as set forth below.

**FEES**

| Name or Position | Total Obergefell Hours[10] | Henry Hours | Total Hours | Hourly Rate | Lodestar |
|---|---|---|---|---|---|
| Alphonse A. Gerhardstein[11] | 410.60 | 442.00 | 852.60 | $475 | 404,985.00 |
| Jennifer L. Branch | 58.05 | 4.50 | 62.55 | $425 | 26,583.75 |
| Associate Attorney | 335.80 | 118.58 | 454.38 | $250 | 113,595.00 |
| Associate Attorney 2 | 12.20 | 2.20 | 14.40 | $215 | 3,096.00 |
| G&B Law Graduate | 272.50 | 93.50 | 399 | $130 | 47,580.00 |
| G&B Paralegal I | .90 | 4.40 | 5.3 | $100 | 530.00 |
| G&B Paralegal II | 1.40 | 0 | 1.40 | $100 | 140.00 |
| G&B Law Clerks | 172.85 | 10.40 | 183.25 | $85 | 15,576.25 |
| Lisa Meeks | 10.90 | 19.50 | 30.4 | $350 | 10,640.00 |
| Ellen Essig | 0 | 67.75 | 67.75 | $400 | 27,100.00 |
| Susan L. Sommer | 0 | 550.95 | 550.95 | $450 | 247,927.50 |
| James Esseks | 159.10 | 0 | 159.10 | $700 | 111,370.00 |
| Chase Strangio | 257.40 | 0 | 257.40 | $325 | 83,655.00 |
| Joshua Block | 8.41 | 0 | 8.41 | $400 | 3,364.00 |
| Total | | | | | 1,096,142.50 |

## IV.    A Fee Enhancement is Appropriate in These Cases

*Obergefell* and *Henry* are the rare cases that require Plaintiffs' counsel's loadstar fee be enhanced because of the results, the unpopularity of the case, and fee awards in other cases.

In *Perdue v. Kenny*, the Supreme Court reaffirmed that a court may grant a fee enhancement for superior attorney performance in rare and exceptional cases only in which the fee applicant has produced specific evidence supporting the enhancement. *Perdue v. Kenny*, 130 S.Ct. 1662, 1672-1674 (2010). In reversing the lower court's fee enhancement for failure to provide adequate justification for the enhancement, the Court reaffirmed a prior holding that the "novelty and complexity of a case generally may not be used as a ground for an enhancement

---

[10] These hours include the hours requested in the first fee motion, Doc. 70.
[11] G&B attorney and paralegal rates increased on May 1, 2015. The rates shown here are current hour rates.

15

because these factors presumably are fully reflected in the number of billable hours recorded by counsel and normally are reflected in the reasonable hourly rate." *Id.* (citing *Burlington v. Dague*, 505 U.S. 557, 562-63 (1992)).

However, *Perdue* recognized that in rare and exceptional circumstances enhancements may be appropriate. In holding that enhancements may be appropriate in certain circumstances, the Court emphasized that enhancements must be calculated using a method that is "reasonable, objective, and capable of meaningful appellate review." *Id.* at 1674.

Prior to *Perdue*, this Circuit had recognized and applied 12 *Johnson* factors.[12] See, *Barnes v. City of Cincinnati*, 401 F.3d 729 (6th Cir. 2005) (affirming award of 75% multiplier to attorneys Gerhardstein and Branch in a transgender discrimination case few lawyers would have taken and the immense skill requisite to conducting the case properly); *Geier v. Sundquist,* 372 F.3d 784, 792-796 (6th Cir. 2004) (permitting upward adjustment because desegregation case was "pathbreaking and of great social import,"); *Brotherton v. Cleveland,* 141 F.Supp.2d 907, 913 (S.D. Ohio 2001) (awarding 50% adjustment for solo practitioner who took an unpopular case others turned down, achieved exceptional results, and brought to light a novel cause of action); *Meredith v. Jefferson County Bd. of Educ.,* No. 3:02-cv-620-H, 2007 WL 3342282, *12-13 (W.D.Ky. 2007) (awarding 75% multiplier in undesirable and difficult discrimination case where counsel was "vilified" and suffered "adverse public and personal criticism" and succeeded "more upon a conviction than skill").

*Perdue* reserved four *Johnson*[13] factors for use to justify the upward departure from the lodestar: 1) amount in controversy and results obtained; 2) undesirability of case within legal community; 3) nature and length of professional relationship between attorney and client; and 4)

---

[12] *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717019 (5th Cir. 1974).
[13] *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717019 (5th Cir. 1974).

16

attorney's fee awards in similar cases." *McAfee v. Boczar*, 738 F.3d 81, 89 (4th Cir. 2013), *as amended* (Jan. 23, 2014) (citing *Perdue*, 130 S. Ct. at 1673). *Perdue* reasoned that the remaining *Johnson* factors should have already been analyzed in the lodestar calculation.

Three of these factors support an enhancement of 50% in these cases: 1) results obtained; 2) undesirability of case within the legal community; and 3) fees in similar cases. First, "superior results" in the lawsuit may support an enhancement insofar as "it can be shown that they are the result of superior attorney performance." *Perdue*, 559 U.S. at 565-567. There is no question that Mr. Gerhardstein, Ms. Sommer, and Mr. Esseks, are superior LGBT civil rights litigators who, when working together, were able to achieve superior results. These attorneys, working with the entire *Obergefell* and *Henry* legal teams, have advanced the marriage equality law in this country for all married same sex couples and their children. A fee enhancement is appropriate in this case because of the results achieved in *Obergefell* and *Henry*, which resulted in a landmark Supreme Court decision holding that the Fourteenth Amendment to the U.S. Constitution prohibited states, including Ohio, from recognizing same sex marriages. The same arguments that supported reversal in *Obergefell* and *Henry* supported the second holding that the Fourteenth Amendment requires states, including Ohio, to license same sex marriages. These results were life changing for Jim Obergefell and David Michener who wanted their marriages to be valued after their husband's death. The results were life changing for the parents and children in the Henry case. More importantly, *Obergefell* changed the lives of thousands of parents and their children throughout Ohio and the entire country. These extraordinary results were achieved through the superior work the lead attorneys on the cases.

A second relevant factor is the undesirability of the case within the legal community. Marriage equality has had a long and tortious path in this country until *Windsor*. The first

17

successful marriage equality case, which Lambda Legal worked on, was when the Hawaii Supreme Court in 1993 held that excluding same-sex couples from marriage was discrimination. This case "unleashed one of the most profound examples of backlash in our movement's history." (Lambda Legal website: http://www.lambdalegal.org/in-court/cases/baehr-v-miike). The federal defense of marriage act followed in 1996, as did Ohio's marriage bans. It was not until *Windsor* that the legal tide turned. When *Windsor* was decided on June 26, 2013, same sex marriage was legal in 10 states. [14] Ohio was not one of those states; nor was it a state that could pass a voter referendum to overturn the marriage bans in the Ohio Constitution. Mr. Gerhardstein has represented LGBT people for over 30 years. This is not easy work. While he may be used to representing unpopular people, these cases attract negative attention and are undesirable to many litigators. His office received negative hate mail during the litigation, including from supporters of LGBT rights who were angry the Plaintiffs had appealed. There was a concern the Supreme Court would rule against the Plaintiffs and thus un-do all the positive results across the circuits. Thus, the undesirability of these cases also supports a 50% fee enhancement.

Finally, fees awarded in similar cases supports the enhancement. In *Love v. Beshear*, the district court awarded Plaintiffs' fees and a "bonus" of 17 % because they undertook a "difficult, unpopular case and achieved remarkable success." *Love v. Beshear,* WDKY Case No. 3:13-cv-750. In *Barnes v. City of Cincinnati*, the court awarded a 75% enhancement, which the Sixth Circuit upheld the enhancement because the jury returned a verdict for Officer Barnes in her transgender sex discrimination case. The court found the attorneys showed that this was a highly controversial case and an extraordinary result was achieved. The attorneys also stated that few lawyers locally or nationally would take such a case. Therefore, the enhancement was held to be proper. Plaintiffs anticipate that while this motion is pending, other enhancements may be

---

[14] http://www.hrc.org/state_maps

awarded since the Plaintiffs in *Bourke* and *DeBoer* have filed motions seeking an enhancement. In addition, attorney fee litigation is pending in other circuits. For all these reasons, Plaintiffs request an enhancement of 50% of the fees awarded.

## V.     **Litigation Costs**

Plaintiffs are entitled to an award of costs for expenses that would normally be billed to fee-paying clients. This includes filing fees, long distance phone charges, copy costs, and travel expenses, expert fees and transcript costs. 42 U.S.C. § 1988 (b); *Northcross*, 611 F.2d at 639; *See also* Fed. R. Civ. P. 54(d)(1) ("Unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party."). Plaintiff has incurred a total of $51,360.12 in expenses related to the case. (See Gerhardstein Declaration, Ellen Essig Declaration, and Exhibit E to James Essex Declaration).

## **CONCLUSION**

Plaintiffs respectfully request they be awarded attorney fees in the amount of $1,096,142.50, plus a 50% enhancement, pursuant to 42 U.S.C. §1988. In addition, Plaintiffs request an enhancement of 50% of the fees awarded. Finally, Plaintiffs should be awarded their expenses in the amount of $51,360.12.

                                                                Respectfully submitted,

| | |
|---|---|
| Susan L. Sommer<br>Lambda Legal Defense & Education Fund, Inc.<br>120 Wall Street, 19th Floor<br>New York, New York 10005<br>212-809-8585; 212-809-0055 fax<br>ssommer@lambdalegal.org<br><br>*Attorney for Henry Plaintiffs* | /s/ Jennifer L. Branch<br>Alphonse A. Gerhardstein # 0032053<br>Trial Attorney for Plaintiffs<br>Jennifer L. Branch #0038893<br>GERHARDSTEIN & BRANCH CO. LPA<br>Attorneys for Plaintiffs<br>432 Walnut Street, Suite 400<br>Cincinnati, Ohio 45202<br>(513) 621-9100<br>(513) 345-5543 fax<br>agerhardstein@gbfirm.com<br>jbranch@gbfirm.com |

19

*Attorneys for Obergefell and Henry Plaintiffs*

| | |
|---|---|
| Ellen Essig<br>105 East 4th Street<br>Suite 400<br>Cincinnati, OH 45202<br>Phone: 513.698.9345<br>Fax: 513.345.2588<br>ee@kgnlaw.com<br><br>*Attorney for Henry Plaintiffs* | Lisa T. Meeks (0062074)<br>Newman & Meeks Co., LPA<br>215 E. Ninth Street, Suite 650<br>Cincinnati, OH 45202<br>phone: 513-639-7000<br>fax: 513-639-7011<br>lisameeks@newman-meeks.com<br>*Attorneys for Obergefell and Henry Plaintiffs*<br><br>James Essex<br>Chase Strangio<br>American Civil Liberties Union Foundation<br>125 Broad St.<br>New York, NY 10004<br>Phone (212) 549-2650<br>Fax (212) 549-2650<br>Jesseks@aclu.org<br>cstrangio@aclu.org<br>*Attorneys for Obergefell Plaintiffs* |

## CERTIFICATE OF SERVICE

I hereby certify that on September 11, 2015, a copy of the foregoing pleading was filed electronically. Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system. Parties may access this filing through the Court's system. I further certify that a copy of the foregoing pleading and the Notice of Electronic Filing has been served by ordinary U.S. mail upon all parties for whom counsel has not yet entered an appearance electronically.

/s/ Jennifer L. Branch
Jennifer L. Branch